UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-----------------------------------------------------------------X

JONATHAN NNEBE,

                                                Plaintiff,

-Against-

MATTHEW DAUS, CHARLES FRAZIER, JOSEPH
ECKSTEIN, ELIZABETH BONINA, THE NEW
YORK CITY TAXI AND LIMOUSINE
COMMISSION, AND THE CITY OF NEW YORK

                                             Defendants.

X-----------------------------------------------------------------X

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

**JURY TRIAL DEMANDED**

      Plaintiff Jonathan Nnebe, by his attorney, Daniel L. Ackman, as and for complaint alleges as follows:

## INTRODUCTION

      1.      On or around May 30 of this year, the defendant New York City Taxi and Limousine Commission (TLC) summarily suspended the taxi license of plaintiff Jonathan Nnebe without a hearing of any kind. The suspension was of indefinite duration, and the TLC threatened that his license might be revoked as well. The TLC told Mr. Nnebe that if wanted the suspension "reviewed," he would have to request a hearing, which would be conducted by a TLC Administrative Law Judge. Mr. Nnebe did request a hearing and appeared at it *pro se*. Despite the fact that the TLC presented no evidence, and offered no witnesses apart from Mr. Nnebe himself, the TLC ALJ ordered that his suspension be continued, again indefinitely, based on "sufficient allegations" that Mr. Nnebe may have

committed a misdemeanor assault violation, for which he had been arrested and given a Desk Appearance Ticket, but not charged, nor convicted. This action has no statutory basis and deprived him of a crucial property right without due process of law

2.     Plaintiff brings his claim pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the New York State Constitution.  He seeks redress for defendants' deprivation, under color of state law, of their rights, privileges, and immunities secured by the Constitution and laws of the United States and by the New York State Constitution.

## JURISDICTION AND VENUE

3.     This action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the New York State Constitution, Article 1, § 12.

4.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, 2201.

5.     The acts complained of occurred in part the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b). The Taxi and Limousine Commission maintains its headquarters in the Southern District of New York.

## JURY DEMAND

6.     Plaintiff demand trial by jury in this action.

## PARTIES

7.     Plaintiff Jonathan Nnebe has been a New York City Taxi Driver since 1992. His license was revoked by suspended by defendant TLC on May 30, 2006.  He is a resident of Queens County.

8. Defendant Matthew Daus is chairman of the Taxi and Limousine Commission. He has overall responsibility for TLC policy and its enforcement. He is responsible for implementing and overseeing the policies of the commission and for ensuring that TLC personnel obeyed the Constitution and laws of the United States and of the State of New York.

9. Defendant Charles Frazier is a deputy commissioner and general counsel of the TLC.

10. Defendant Joseph Eckstein is a deputy commissioner of the TLC in charge of its Adjudications Department.

11. Defendant Elizabeth Bonina is the Chief Administrative Law Judge of the TLC.

12. Defendant Taxi and Limousine Commission is an agency of the City of New York charged with licensing taxi and limousine drivers and regulating the taxi industry. The TLC is a non-mayoral agency, meaning it is insulated by the City Charter from direct mayoral control. It is empowered by the Charter to act by a majority of its members.

13. Defendant City of New York is a municipality for which the TLC is an administrative agency.

## FACTS

TLC Suspension Policy:

14. The TLC maintains a policy (TLC Rule 8-16) by which it claims the right to summarily suspend a taxi driver license without a hearing simply upon the chairman's determination that a suspension is necessary to insure "public health, safety or welfare" pending "revocation proceedings." There are no other published standards determining

whether or when a taxi driver may be summarily suspended. (TLC Rules do provide for defined suspension periods *following* adjudication on the merits and a finding of violation of certain TLC rules.)

15. The same rule requires that revocation proceedings be initiated within five days of the summary suspension (TLC Rule 8-16B).

16. In contradiction to the five-day hearing rule, the TLC routinely extends the summary suspension period for much longer periods.

17. Although by rule the TLC must hold a revocation hearing within five days, it permits itself five days, also by rule, to notify the suspended taxi driver of the fact of his suspension (TLC Rule 8-16C). At that point, it permits the taxi driver to request a hearing concerning his suspension. Such hearings are conducted by TLC ALJs. TLC ALJs are supposed to consider "relevant evidence." But the TLC imposes no burden of proof on itself in determining whether to continue the summary suspension. (TLC Rule 8-16D). In fact, TLC ALJs regularly accept the statements of TLC lawyers as sufficient proof at such hearings and do not require TLC lawyers to present evidence or testimony in support of allegations that supposedly have led to the summary suspension.

18. Based on information from lawyers who regularly appear before the TLC tribunal and a review of hundreds of summary suspension hearings, the results of the summary suspension hearings are pre-ordained. The TLC ALJ always orders that the suspension be continued.

19. Consistent with TLC policy, Mr. Nnebe's license was suspended without a hearing of any kind by letter on May 30, 2006. After a perfunctory hearing on June 8, 2006, the TLC ordered that his suspension be continued.

20. At no time did the TLC present any evidence of Mr. Nnebe's alleged wrongdoing. Nor was Mr. Nnebe permitted to confront his accusers or cross-examine witnesses. The record indicates that TLC never contacted or interviewed Mr. Nnebe's accuser. No one from the TLC ever contacted the detective who made the arrest and filled out the Desk Appearance ticket. There was no suggestion that Mr. Nnebe has any record of misconduct—as he has no such record—or that his continuing to drive a taxi is somehow a "threat" to public safety.

21. The TLC Rules contain no legal standard for determining whether a summary suspension should continue or for how long it may continue.

22. Based on information concerning TLC practice, the TLC has informed its ALJs on an ex parte basis that they should always rule that suspensions should continue following the summary suspension hearing.

Events Leading to Mr. Nnebe's Suspension:

23. *The following narrative is based on the report and recommendation of the TLC ALJ*: On or around May 6, 2006 at 3 o'clock in the morning, Mr. Nnebe, who was driving the nightshift, picked up a man and a woman at the Port Authority Bus Terminal on 41st Street and 8th Avenue in Manhattan. The passengers asked to make two stops, the first at 23rd Street and the FDR Drive in Manhattan, the second in the Bronx. Because Mr. Nnebe was near the end of his shift, he told the passengers (who have not been identified and who remain unknown to plaintiff) that he could not wait long at the first stop.

24. Despite assurances that the stop would be brief, the male passenger entered an apartment building at the initial stop and did return for at least 20 minutes. Mr. Nnebe asked the female passenger to telephone her friend to advise him that Mr. Nnebe could not wait any

longer.  The male passenger still did not return, the female refused to leave the cab, and a dispute arose.

25. Complying with TLC Rule 2-39A, Mr. Nnebe began driving to the nearest police precinct in an effort to secure his fare then on the meter and to resolve the dispute.  At a red light the female jumped out of the cab with three bags, dropping one.  Mr. Nnebe picked up the bag and returned to his taxi.  When the female demanded the bag be returned, the dispute continued.  A passer-by (who has not been identified and who remains unknown to plaintiff) drove by, counseled Mr. Nnebe to return the bag and forget the fare, which he did.

26. Several weeks later, Mr. Nnebe received a call from NYPD Detective Michael Paul, who told him that an assault complaint had been made against him.  Mr. Nnebe offered to meet the detective at the precinct to discuss the matter.  On May 29, at the end of the conversation, the detective told Mr. Nnebe that he had to place him under arrest, which he did.  The detective gave Mr. Nnebe a Desk Appearance Ticket (DAT), citing PL 120 (misdemeanor assault in the third degree) and released him.

27. Mr. Nnebe, to date, has not been indicted nor informed of the specifics of the charges against him.  The DAT requires he appear in Manhattan Criminal Court on June 29.

<u>The TLC Suspension</u>:

28. On May 30, a TLC prosecutor named Mark Hardekopf wrote a letter to Mr. Nnebe advising him that his taxi license had been suspended based on his arrest.  If Mr. Nnebe wanted a hearing concerning the suspension, he would have to request one within 10 days, Mr. Hardekopf advised.  The letter also threatened Mr. Nnebe with license revocation.

29. A hearing was held on June 8 before TLC ALF Frank Fioramonti.

30. Like all TLC ALJs, Mr. Fioramonti is a lawyer in private practice. (Mr. Fioramonti's specializes in lobbying and has does no litigation in his private practice.) He is an at-will employee of the TLC, working on a per diem basis.

31. Mr. Nnebe appeared pro se. Mr. Hardekopf appeared for the TLC. Neither Mr. Hardekopf nor TLC ALJ Fioramonti advised Mr. Nnebe of his right to remain silent given the possibility of criminal charges against him.

32. The only submission Mr. Hardekopf made at the hearing was the DAT.

33. The TLC made no effort to hear testimony from the complaining witness. It did not contact the detective who issued the DAT.

34. Mr. Nnebe denied the charges and recounted then events of the early morning of May 6.

35. Following the hearing, TLC ALJ Fioramonti ruled the suspension should continue.

36. In his "recommendation" to Chairman Daus, TLC ALJ Fioramonti stated initially that the standard was "whether sufficient credible evidence was presented to support the continued suspension of Mr. Nnebe."

37. But in the end, he recommended a continued suspension based on "sufficient allegations." He cited no evidence—as there was no evidence presented—that the alleged assault had ever occurred.

38. As a result, Mr. Nnebe's taxi license—the basis of his livelihood—remains on indefinite suspension.

### FIRST CLAIM FOR RELIEF / 42 U.S.C. § 1983

39. Plaintiff repeats and realleges paragraphs 1 through __ as if the same were fully set forth at length herein.

40. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily suspended and revoked based on a unproven allegations and in the absence of evidence, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

41. All defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

42. Defendants' actions were deliberate, reckless and indifferent to plaintiff's constitutional rights.

### SECOND CLAIM FOR RELIEF/ New York State Constitution Art. 1, § 6

43. Plaintiff repeats and realleges paragraphs 1 through 91 as if the same were fully set forth at length herein.

44. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily suspended and revoked based on an allegation of refusing service, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the State of New York in violation of the New York State Constitution, Article 1, § 6. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

45. All defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights secured by the New York State Constitution, Article 1, § 6.

46. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

### THIRD CLAIM FOR RELIEF / CAPA

47. Plaintiff repeats and realleges paragraphs 1 through __ as if the same were fully set forth at length herein.

48. The enactment of the TLC's summary suspension policy without a compliance with the City Administrative Procedure Act (CAPA) was in contravention of the New York City Charter. As such the policy was void from the outset and all penalties administered thereunder are also void and of no force or effect.

49. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## FOURTH CLAIM FOR RELIEF / CAPA – EX PARTE CONTACTS

50. Plaintiff repeats and realleges paragraphs 1 through __ as if the same were fully set forth at length herein.

51. The TLC systemically and specifically with regard to its summary suspension policy engaged in ex parte contacts with TLC judges. These contacts were in violation of CAPA as well as principles of legal ethics. The results of all adjudications contaminated by such contacts are void and any penalties proscribed as a result of such adjudications are void and of no force or effect.

52. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## IRREPARABLE HARM

53. If defendants' policy, practice and custom of summarily suspending taxi driver licenses based on a mere allegations of wrongdoing is not enjoined, the named plaintiff and the members of the plaintiff class will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article 1, § 12 of the New York State Constitution.

## RELIEF REQUESTED

WHEREFORE, plaintiff asks this Court:

A. To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) for the plaintiff class described herein and naming plaintiff as the class representatives.

B. To enter a judgment declaring that defendants' policy, practice and custom summarily suspending and based on mere allegations of wrongdoing service is unconstitutional.

C. To issue an order enjoining defendants' policy, practice and custom of summarily suspending taxi driver licenses based on mere allegations of wrongdoing.

D. To enter a judgment declaring that defendants' policy, practice and custom of summarily suspending taxi driver licenses based on mere allegations of wrongdoing an is unconstitutional.

E. To issue an order requiring defendants to reinstate the license of every taxi driver whose license has been suspended based on mere allegations of wrongdoing.

F. To award the named plaintiff and members of the class compensatory damages in an amount to be determined at trial.

G. To award the named plaintiff and members of the class punitive damages in an amount to be determined at trial.

H. To award the named plaintiff and members of the class reasonable attorney's fees and costs.

      I.      To grant such other and further relief as this Court shall find just and proper.

Dated: June __, 2006
New York, New York

_____
Daniel L. Ackman (DA-0103)
1 Liberty Place, 23rd Floor
New York, NY  10006
(917) 282-8178

Attorney for Plaintiff