UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN NNEBE,

                Plaintiff,

-v-

MATTHEW DAUS, CHARLES FRAZIER, JOSEPH ECKSTEIN, ELIZABETH BONINA, THE NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, AND THE CITY OF NEW YORK,

                Defendants.

Case No. 06-CV-4991 (KMK)

ORDER

KENNETH M. KARAS, District Judge:

       On June 29, 2006, Jonathan Nnebe, Plaintiff, filed a Motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction. The Court held a conference on June 29, 2006, but reserved decision until the issue had been fully briefed. After a hearing on July 7, 2006, the Court denied Plaintiff's Motion. Thereafter, Plaintiff submitted a letter on July 12, 2006. In that letter, Plaintiff argues that based on *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), he has a right to a meaningful hearing before the Taxi and Limousine Commission of the City of New York ("TLC"), Defendant, could suspend his license. Plaintiff requests a reargument of his TRO Motion or a conference to discuss filing a motion for preliminary injunction. The Court construes Plaintiff's letter on July 12 as a Motion for Reconsideration.

I. Standard of Review

Motions for reconsideration are governed by Local Civil Rule 6.3 and can be made pursuant to either Rule 59(e) or Rule 60 of the Federal Rules of Civil Procedure. Plaintiff does not specify under which rule its motion was made. However, Plaintiff submitted his letter within ten days after the entry of the Order dismissing his Motion, thus the Motion for Reconsideration is timely filed under all the above-mentioned rules. As a result, the Court must decide which rule applies.

Rule 60 only applies to a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Both a TRO and a preliminary injunction are interlocutory, thus neither is a "final judgment, order, or proceeding." *Cmty. Protestant Church of Co-op City v. Riverbay Corp.*, No. 91 Civ. 4887, 1991 WL 258731, at *1 (S.D.N.Y. Oct. 22, 1991). Rule 60 is inapplicable in this case.

Rule 59(e), on the other hand, applies to interlocutory judgments and orders. *See Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 400 (2d Cir. 2000). "Motions for reconsideration under Fed. R. Civ. P. 59(e) are governed by the same standards governing reconsideration under Rule 6.3 of the Local Rules for the United States Courts for the Southern and Eastern Districts of New York." *Zinnamon v. Bank of New York*, No. 06 Civ. 1805, 2006 WL 1652662, at *1 (E.D.N.Y. June 8, 2006); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1987). It is within this court's discretion to grant the motion for reconsideration. *Dweck Law Firm, LLP v. Mann*, No. 03 Civ. 8967, 2004 WL 2202587, at *1 (S.D.N.Y. Sept. 30, 2004). Pursuant to Rule 59(e), "[a] court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes

necessary to remedy a clear error of law or to prevent obvious injustice." *Marino v. United States*, No. 97 Civ. 1884, 1998 WL 512958, at *1 (S.D.N.Y. Aug. 18, 1998) (quotations omitted). The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied" unless the moving party can show that the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Zinnamon*, 2006 WL 1652662, at *1. The moving party cannot introduce arguments "not made in the challenged proceeding" in his motion for reconsideration. *Marino*, 1998 WL 512958, at *2. However, the moving party can introduce "additional relevant case law" to prove that the Court has made a clear error of law. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

II. Discussion

Plaintiff does not allege any "intervening change in the controlling law." *Marino*, 1998 WL 512958, at *1. Neither does Plaintiff provide any "new evidence not previously available." *Id.* As a result, Plaintiff has to prove that the Court made a "clear error of law" in order to win his Motion for Reconsideration. *Id.* Plaintiff bases his argument in favor of reconsideration on *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002). Plaintiff has the burden to prove that this case "compels a conclusion different from the one this Court reached" in prior hearings. *NYSA-ILA Med. and Clinical Servs. Fund v. Salco Trucking Corp.*, No. 90 Civ. 5949, 1993 WL 119702 (S.D.N.Y. Apr. 15, 1993). For the reasons stated below, Plaintiff fails to meet his burden.

First, Plaintiff argues that the decision reached in *Krimstock* dictates that the TLC is required under due process to give him a pre-deprivation hearing. In *Krimstock*, however, the

3

Court ordered post-deprivation hearings. In that case, the City seized and retained individuals' motor vehicles as alleged instrumentalities of crimes when drivers of those motor vehicles were arrested for driving while intoxicated ("DWI"). 306 F. 3d, at 44-45. Under New York law, if an owner of a seized motor vehicle makes a formal demand for the return of the vehicle, the City has twenty-five days either to initiate a civil forfeiture proceeding or to release the vehicle. *Id.* The plaintiffs in *Krimstock* demonstrated that the City usually waited for the conclusion of all criminal proceedings before holding a forfeiture proceeding to determine the legality of the seizure and retention of the vehicles, meaning that seized vehicles often were not returned for months or years. *Id.* The court in *Krimstock* held that plaintiffs should be given a prompt post-seizure hearing before a neutral arbitrator to determine whether the City was likely to succeed on the merits of the forfeiture action. *Id.* at 70-71.

*Krimstock*, however, is not controlling. Unlike the plaintiffs in *Krimstock*, Plaintiff here received a prompt post-deprivation hearing in which the Administrative Law Judge ("ALJ") upheld the suspension of Plaintiff's license. Therefore, the decision in *Krimstock* does not support Plaintiff's argument in favor of a pre-deprivation hearing.

Second, Plaintiff argues that a pre-deprivation hearing is required under the test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). There are three factors in the *Mathews* test: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards; and (3) the government's interest." *Id*.

As to the first factor, there is no dispute that the private interest affected here is great. Plaintiff depends on his license to provide for himself and his family. (Mem. of Law in Supp. of Pl.'s Mot. for a TRO and a Prelim. Inj. 9 ("Pl.'s Mem.")) Plaintiff was deprived of his livelihood

because of the suspension. *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 277 (E.D.N.Y. 2002) ("Suspending [taxi drivers'] licenses . . . deprives them of their very livelihood."). This factor weighs in favor of Plaintiff.

As to the second factor — risk of erroneous deprivation — the risk is relatively low here because "the arrest and the filing of charges" provide reasonable grounds to support a suspension. *Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (recognizing that even though "there is more reason to believe an employee has committed a felony when he is indicted rather than merely arrested and formally charged, . . . arrest and charge . . . serve to assure that the state employer's decision to suspend the employee is not 'baseless or unwarranted'");[1] *see e.g. FDIC v. Mallen*, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunities to be heard until after the initial deprivation.").

During oral argument and in his letter submitted on July 12, 2006, Plaintiff urges this Court to draw a distinction between misdemeanor and felony charges in evaluating the risk of erroneous deprivation. Plaintiff suggests that the risk of erroneous deprivation is higher in situations involving misdemeanor charges than felony charges, and therefore, the second *Mathews* factor should weigh in favor of Plaintiff. However, the court's conclusion in *Krimstock*

---

[1] In his letter on July 12, 2006, Plaintiff claimed that "*Gilbert* has been limited to the arrest of police officers (or other law enforcement officials), and almost always to situations involving the filing of serious felony charges." However, several cases citing *Gilbert* involve situations other than law enforcement officials or felony charges. *See e.g. Sonnleitner v. York*, 304 F.3d 704, 707 (7th Cir. 2002) (involving a nurse employed by state psychiatric facility violating work rule); *Mustafa v. Clark County School District*, 157 F.3d 1169, 1172 (9th Cir. 1998) (involving a teacher accused of sexual misconduct by his student).

does not support Plaintiff's argument. Similar to the case at bar, *Krimstock* involves misdemeanor charges against drivers. 306 F.3d at 45-47. There, the court recognized that unlike felony charges, "a misdemeanor charge of DWI requires no post-arrest determination of probable cause." *Id.* at 44. Moreover, the City had a pecuniary interest in the outcome of the forfeiture proceedings. *Id*. Nonetheless, the court in *Krimstock* concluded that the second *Mathews* factor narrowly weighed in favor of the City. *Id.* The court reasoned that "the risk of erroneous seizure and retention of a vehicle is reduced in the case of a DWI owner-arrestee, because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate." *Id.*

Here, while Plaintiff's guilt has yet to be determined, the risk of erroneous deprivation is reduced because a trained officer from New York City Police Department ("NYPD") interviewed the alleged victim and a witness and swore out a complaint under penalty of perjury to a judge of the New York City Criminal Court. (Def.'s Reply to Pl.'s Mot. for Recons. 2 ("Def.'s Reply Letter")) Moreover, unlike the situation in *Krimstock*, the TLC has no pecuniary interest suspending Plaintiff's license. The second *Mathews* factor thus weighs in favor of the TLC.

As to the third *Mathews* factor, the government must articulate the interest it is protecting. *Krimstock*, 306 F. 3d at 64-65. In considering this factor, courts also contemplate the means by which the government protects its interest. *Id*. Here, suspending Plaintiff's license furthers the TLC's interest in protecting the taxi-riding public, and there are no better means for accomplishing the TLC's goal. In *Krimstock*, on the other hand, the court found that the City has other means to achieve its three articulated goals. *Id.* at 65. First, the City claimed that retention was to "prevent a vehicle from being sold or destroyed before a court can render judgment in

6

future forfeiture proceedings." *Id.* at 64. However, the court found that this interest could be protected by forcing owners of the vehicles to post a bond on the seized vehicles. *Id.* at 65. The second principal interest the City claimed was to preserve its *in rem* jurisdiction. *Id. In rem* jurisdiction is established at the time of seizure. *Id.* Thus, the court found that the retention was unnecessary. The final interest the City claimed was to "prevent the offending *res* — here, the seized vehicle — from being used as an instrumentality in future acts of driving while intoxicated." *Id*. at 66. The court reasoned that such interest was not urgent. *Id.* Even if such interest was considered urgent, it lost "its basis in urgency once the individual has regained sobriety on the morrow." *Id.* Furthermore, the interest was weakened by the City's own practice of retaining only cars that "might yield an attractive price at auction." *Id.* at 66-67.

In the case at bar, the City's interest is in protecting the taxi-riding public from a driver who has been charged with assaulting passengers. The Second Circuit has recognized "the threat to the safety of drivers and pedestrians" and "the pendency of charges of misbehavior by police officers" as justifications for the absence of a pre-deprivation hearing. *See Pordum v. Bd. of Regents*, 491 F.2d 1281, 1284 (2d Cir. 1974) (providing a list of governmental interests that justify postponing the hearing until after the deprivation). The City's interest in protecting the taxi-riding public from being assaulted is at least as significant as maintaining highway safety. Similar to police officers, taxi drivers "occupy positions of great public trust and high public visibility." *Gilbert*, 520 U.S. at 932. People choosing to take a taxi trust the driver not to endanger their safety. "An employee's suspension pending disposition of the criminal charges thus safeguards the public interest by removing the employee from a position where he or she might repeat the alleged misconduct and thereby impede the lawful functioning of the agency and

7

destroy public confidence in the agency." *Brown v. Dep't. Of Justice*, 715 F.2d 662, 667 (D.C. Cir. 1983) (involving border guards who had been suspended following indictments on charges of conspiring to defraud the government).

Third, Plaintiff argues that his "ability to file an Article 78 post-seizure did not absolve the City from the obligation" of providing him a meaningful post-deprivation hearing. (Letter from Pl. to the Court, July 12, 2006, at 2) Plaintiff relies on *Krimstock*, where the court reasoned that "[r]equiring plaintiffs to resort to an Article 78 proceeding . . . would place the onus on each plaintiff to bring a separate civil action." 306 F. 3d at 59. The court thus concluded that Article 78 proceedings failed to provide "a prompt and effective means for claimants to challenge the legitimacy of the City's retention of their vehicle *pendente lite*." *Id*. at 60. However, unlike *Krimstock*, the City here has fulfilled its obligation by providing Plaintiff a meaningful post-deprivation hearing. Pursuant to its own rule, the TLC gave Plaintiff a summary suspension hearing before an ALJ within ten days after his suspension to determine whether continued suspension is "required to insure public health, safety or welfare." (TLC Rule, ch. 8, § 8-16, http://www.nyc.gov/html/tlc/downloads/pdf/adjrules.pdf (last visited Aug. 1, 2006)). At the hearing, Plaintiff was permitted to "have legal representation, present evidence, and call witnesses on [his] behalf." (Letter from TLC to Pl., June 1, 2006 ("TLC Letter I")) Plaintiff chose to appear without an attorney. (Letter from TLC to Pl., July 3, 2006, at 1 ("TLC Letter II")) The Commission "introduced an arrest notification from the Division of Criminal Justice Services indicating that on May 29, 2006 [Plaintiff] was arrested for Assault in the Third Degree." (TLC Letter II, at 1) The ALJ evaluated the evidence presented and issued a written Recommended Decision to the Chairperson, upholding the suspension. (TLC Letter II, at 1) The

8

Chairperson responded on July 3 and accepted the ALJ's recommendation. (TLC Letter II, at 2) There is nothing in the record to suggest that the summary suspension hearing Plaintiff had was meaningless or biased.

Even if the Court considers the summary suspension hearing meaningless, the City provides other proceedings to safeguard Plaintiff's property interest. Article 78 is just one of them. According to TLC Rule § 8-14(k), the next procedural step available to Plaintiff is to appeal the Chairperson's decision to the TLC Commissioners. In the alternative, Plaintiff could file an Article 78 proceeding in the state court pursuant to N.Y. C.P.L.R. § 7803. Courts have required plaintiffs to avail themselves of state proceedings before bringing a federal action. *See e.g. Gabris v. New York City Taxi and Limousine Comm'n*, No. 05 Civ. 8083, 2005 WL 2560384, at *3 (S.D.N.Y. Oct. 12, 2005) ( "[A] due process claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest."). In *Padberg v. McGrath-McKechnie*, plaintiff taxi driver whose license was suspended without a pre-deprivation hearing sought injunctive relief to direct the TLC to reinstate his license. 108 F. Supp. 2d 177, 181-82 (E.D.N.Y. 2000). The court denied Padberg's request because he failed to file an administrative appeal of his license revocation and thus did not avail himself of the state procedure available to him. *Id.* at 190. Here, similar to the plaintiff in *Padberg*, Plaintiff has not utilized the TLC appellate procedure available to him. Thus, the Court did not make a clear error of law in denying Plaintiff's request for a Temporary Restraining Order/Preliminary Injunction.

III. Conclusion

Motions for reconsideration are narrowly construed "to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Range Road Music Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). "It is not enough, . . ., that the [moving party] now make[s] a more persuasive argument." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981). Plaintiff has failed to prove that this Court overlooked controlling authorities that would compel a different ruling. For the reasons stated above, Plaintiff's Motion for Reconsideration is DENIED.

SO ORDERED.

Dated: August 7, 2006
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

Daniel L. Ackman, Esq.
1 Liberty Plaza - 23rd Flr
New York, NY 10006
Fax: (917)-591-8300
*Counsel for Plaintiff*

Mary M O"Sullivan, Esq.
NYC Law Department, Office of the Corporation Counsel
100 Church Street
New York, NY 10007
Fax: (212) 791-9714
*Counsel for Defendants*