UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------X

JONATHAN NNEBE, ALEXANDER KARMANSKY,
EDUARDO AVENAUT, KHAIRUL AMIN and the NEW
YORK TAXI WORKERS ALLIANCE individually and
on behalf of all others similarly situated,

**SECOND AMENDED
COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
DAMAGES**

Plaintiffs,

-Against-

**JURY TRIAL DEMANDED**

**06-CV-4991 (KMK)**

MATTHEW DAUS, CHARLES FRASER, JOSEPH
ECKSTEIN, ELIZABETH BONINA, THE NEW
YORK CITY TAXI AND LIMOUSINE
COMMISSION, AND THE CITY OF NEW YORK

Defendants.

X------------------------------------------------------------X

Plaintiffs Jonathan Nnebe, Alexander Karmansky, Eduardo Avenaut, Khairul Amin
and the New York Taxi Workers Alliance, individually and on behalf of all others similarly
situated, by their attorney, Daniel L. Ackman, as and for their complaint, allege as follows:

**NATURE OF THE ACTION**

1.      The New York City Taxi and Limousine Commission (TLC) maintains an
unwritten policy of summarily suspending any taxi driver who is arrested on a criminal
charge. Though there is no written statute or ordinance mandating such suspensions, the
TLC orders them routinely. The TLC acts without hearings and without even knowing the
substance of the allegations supporting the arrest. The TLC then holds "summary suspension
hearings" to "review" the suspensions. But in fact, the review is fictional and the TLC
invariably continues these suspensions for an indefinite period. The suspensions are relaxed

only when the criminal charge incident to the arrest is resolved in the taxi driver's favor.  (If the criminal charge leads to a conviction at trial or by plea, the TLC reserves the right to revoke the taxi driver's license, though this practice, too, is not authorized by law.)

2.     The summary suspension hearings, conducted by a TLC Administrative Law Judges (TLC judges), are a sham.  The TLC's practice at such hearings is to call no witnesses and  present no evidence apart from a copy of an "arrest notification" form, which states only the fact and date of the arrest and the related charges.  Among other defects, the TLC makes no effort to sustain its burden of proof at such hearings.  Nevertheless, the outcomes of such hearings are preordained.

3.     At the conclusion of the summary suspension hearings, the TLC judge, guided by *ex parte* contacts, resting on the allegations alone, invariably "recommends" to the TLC chairperson that the suspension be continued.  The chairperson invariably accepts that recommendation.  Thus the suspended taxi drivers are never afforded a meaningful hearing prior to their suspensions, which can last many months.

4.      Plaintiffs bring their claims pursuant to the United States Constitution, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983, the New York State Constitution, and New York law.  They seek redress for defendants' deprivation, under color of state law, of their rights, privileges, and immunities secured by the Constitution and laws of the United States and by the New York State Constitution.  As the TLC's practice has no basis in state or city law, and indeed violate state law, plaintiffs seek redress under state law as well.

**JURISDICTION AND VENUE**

5.     This action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and under the New York State Constitution, Article 1, § 12.

6.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, 2201.

7.     The acts complained of occurred in part the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).  The Taxi and Limousine Commission maintains its headquarters in the Southern District of New York.

**JURY DEMAND**

8.     Plaintiffs demand trial by jury in this action.

**PARTIES**

9.     Plaintiff Jonathan Nnebe has been a New York City Taxi Driver since 1992. His license was suspended by defendant TLC on May 30, 2006.  He is a resident of Queens County.

10.     Plaintiff Alexander Karmansky has been a New York City Taxi Driver since 1988.  He is a resident of Kings County.

11.     Plaintiff Eduardo Avenaut is a New York City Taxi Driver and a resident of Westchester County.

11A.   Plaintiff Khairul Amin is a New York City Taxi Driver and a resident of Queens County

12.     The New York Taxi Workers Alliance is a membership organization devoted to preserving the rights of taxi drivers and improving working conditions for taxi drivers in

New York City.  Among other activities, it aids and represents taxi drivers facing charges in TLC courts.  It has been harmed by being forced to expend scarce resources to defend individual members in TLC hearings, thus diverting resources from more broad-based efforts to improve working conditions in the taxi and limousine industry

11.     Defendant Matthew Daus is chairperson of the Taxi and Limousine Commission.  He has overall responsibility for enforcing TLC policy.  He is responsible for implementing and overseeing the policies of the commission and for ensuring that TLC personnel obey the Constitution and laws of the United States and of the State of New York.

12.     Defendant Charles Fraser is a deputy commissioner and general counsel of the TLC.

13.     Defendant Joseph Eckstein is a deputy commissioner of the TLC in charge of its Adjudications Department.

14.     Defendant Elizabeth Bonina is the Chief Administrative Law Judge of the TLC.

15.     Defendant Taxi and Limousine Commission is an agency of the City of New York charged with licensing taxi and limousine drivers and regulating the taxi industry.  The TLC is a non-mayoral agency, meaning it is insulated by the City Charter from direct mayoral control.  The TLC is a nine-member commission, with one member acting as a chairperson, who also has executive responsibilities.   It is empowered by the Charter to act by a majority vote of its members.  In addition to the City Charter, the TLC is governed by the Administrative Code of the City of New York, enacted by the City Council, and by the TLC rules, enacted by majority vote of the full TLC.  In addition, the TLC maintains its own court system, for which it hires the judges, who work on a per diem basis.

16.    Defendant City of New York is a municipality of the state of New York, which includes the TLC as an administrative agency.

## CLASS ACTION ALLEGATIONS

17.    The plaintiff class seeks a (i) declaration that the TLC policy of summarily suspending licenses is unconstitutional; (ii) an order enjoining defendants from suspending or revoking licenses prior to affording taxi drivers proper and meaningful hearings on the merits; (iii) an order mandating that unlawfully revoked or suspended licenses be reinstated; and (iv) compensatory and punitive damages.

18.    Plaintiffs sue on behalf of themselves and all other similarly situated individuals, and seek to represent pursuant to Rule 23 (a), Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure two overlapping classes comprised of all taxi drivers who have had their licenses suspended or revoked prior to proper and meaningful hearings on the merits.

19.    The class period commences on the date three years prior to the date of the initial complaint in this case and extends to the date on which the defendants are enjoined from, or otherwise cease, enforcing their unconstitutional policies and practices.

20.    The members of the class are so numerous as to render joinder impracticable. Upon information and belief, based on TLC public records, there are more than 100 drivers whose licenses have been suspended prior to hearings on the merits. In addition, there are more than 41,000 yellow taxi drivers licensed by the TLC, all of whom are subject to the TLC's license suspension and revocation policies.  The vast majority of New York City taxi drivers are foreign born, most from countries with no tradition of civil rights.

21.     Upon information and belief, joinder is impracticable given the number of absent class members and because many members of the class are low-income persons, many of whom do not speak English well, and likely would have great difficulty in pursuing their rights individually.

22.     The questions of law and fact common to the class include whether the class members have common rights under the Fifth and Fourteenth Amendments to be free from unconstitutional license suspension and revocations.

23.     The named plaintiffs are adequate representative of the class.  The violations of law alleged by the named plaintiffs stem from the same course of conduct by defendants, which violated and continue to violate the rights of members of the class; the legal theory under which the named plaintiffs seek relief is the same or similar to that on which the class will rely.  In addition, the harm suffered by the named plaintiffs is typical of the harm suffered by absent class members.

24.     The named plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.  Counsel for the plaintiffs knows of no conflicts among members of the class.

25.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of hundreds or thousands of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class may be scattered throughout New York City and State and are not likely to be able to vindicate and enforce their Constitutional and statutory rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of

litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (f) defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the class especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

## FACTS

TLC Suspension Policy:

26.     In order to work as a taxi driver in the City of New York, an individual must possess a valid taxi driver's license (also known as a hack license).

27.     The TLC maintains a policy by which it summarily suspends the license of any taxi driver who is arrested on any misdemeanor or felony charge.  Such suspensions are ordered by letter from a TLC lawyer in advance of any hearing.  The TLC lawyer who orders the hearing knows of the fact of the arrest but knows nothing of the allegations supporting the arrest.  Neither the lawyer who orders the suspension nor anyone else at the TLC makes any factual inquiry or investigation of the allegations purportedly underlying the suspension.

28.     The TLC maintains this automatic-suspension-upon-arrest policy regardless of whether the arrest was in any way related to the taxi driver's work as a taxi driver.

29.     The TLC purports to justify this automatic-suspension-upon-arrest policy by reference to TLC Rule 8-16, which is in turn based on New York City Admin. Code § 19-512.1.

30.     New York City Admin. Code § 19-512.1 purports to permit summary suspensions based on a finding of good cause by the Commission that the taxi driver represents a threat to public health or safety.  But in actual practice, the Commission makes no finding of any kind prior to the summary suspensions.

31.     TLC Rule 8-16 purports to permit summary suspensions based on a finding of good cause by the TLC Chair that the taxi driver represents a threat to public health or safety. But in actual practice, the TLC Chair makes no finding of any kind prior to the summary suspensions.

32.     TLC Rule 8-16 permits suspensions pending revocation proceedings.  But in actual practice, the TLC, the TLC orders suspensions even though no revocation proceeding is pending.

33.     There are no other published standards determining whether or when a taxi driver may be summarily suspended.  (TLC Rules do provide for defined suspension periods *following* adjudication on the merits and a finding of violation of certain TLC rules.)

34.     The TLC's policy scheme, collectively and in each material aspect, deprives plaintiffs of their rights and their livelihoods without due process of law.

35.     No provision of the New York City Administrative Code requires the suspension of a tax driver upon his arrest.

36.      No provision of the TLC Rules requires the suspension of a tax driver upon his arrest.

37.     The TLC's automatic-suspension-upon-arrest policy was put into effect without public notice or comment.

38.     TLC rules require that revocation proceedings following a summary suspension be initiated within five days of the summary suspension (TLC Rule 8-16B).

39.     The TLC Rules contain no legal standard for determining whether a summary suspension should continue or for how long it may continue.

40.     In contradiction to the five-day hearing rule, in practice, the TLC routinely extends the summary suspension period for much longer periods.

41.     Although by rule the TLC must hold a revocation hearing within five days, it permits itself five days just to notify the suspended taxi driver of the fact of his suspension (TLC Rule 8-16C).  At that point, it allows the taxi driver to request a hearing concerning his suspension.

42.     Such hearings are conducted by TLC judges.  These judges are not independent of the agency.  TLC judges are hired by the TLC on a per diem basis.  They may be fired by the TLC without cause.  They have no contractual, civil service or statutory job protections.   They are required to request hours of assignment on a monthly basis, but they have no right to any particular hours or days of assignment.  TLC executives supervise the judges and determine their assignments.  In short, the TLC judges are dependent on the TLC executives for the payment of their salaries and the tenure of their offices.

43.     At the summary suspension hearings, the TLC practice is to submit a document attesting to the fact of the arrest and to rely on that document for its entire case. The TLC submits no testimony or other evidence of the alleged crime.  Its judges are supposed to consider "relevant evidence."  Contrary to the City Administrative Procedure

Act, which requires the agency to sustain the burden of proof in adjudications, the TLC imposes on itself no burden of proof or burden of production of evidence in determining whether to continue the summary suspension.  (TLC Rule 8-16D).  In fact, TLC judges regularly accept the statements of TLC lawyers as sufficient proof at such hearings and do not require TLC lawyers to present evidence or testimony in support of allegations that supposedly have led to the summary suspension.  The taxi driver is not allowed to confront his accuser and has no right or power to call, subpoena or cross examine accusing witnesses. Although the suspended taxi driver is invited and expected to testify, neither the TLC lawyer nor the TLC judge informs him (even if he is appearing *pro se*) of his right to remain silent or the possible peril of testifying when criminal charges are pending.  Though there is a hearing in form, it is meaningless and does not comport with the constitutional guaranty of due process.

44.    TLC judges are instructed on an *ex parte* basis that a document indicating the fact of an arrest is sufficient evidence to continue the taxi driver's suspension.

45.    TLC judges are further instructed on an *ex parte* basis that there is no requirement that the TLC establish or substantiate the allegations.  They are told, rather, to assume the charges are true.

46.    Based on information from lawyers who regularly appear before the TLC tribunal and a review of hundreds of summary suspension hearings, the results of the summary suspension hearings are pre-ordained.  The TLC judge always (perhaps with some rare exceptions) orders that the suspension be continued.

47.     Based on information concerning TLC practice, the TLC has informed its ALJs on an *ex parte* basis that they must rule that suspensions should continue following the summary suspension hearing.

48.     TLC judges make a recommendation to the Chair, almost invariably to continue the suspension.  The Chair invariably accepts the recommendation, also without inquiry into the substance of the allegations.

49.     Decisions of the Chair on summary suspensions are, by TLC policy, final. There is no appeal to the Commission or to any independent tribunal.

50.     Based on information from lawyers who regularly appear before the TLC tribunal and former TLC officials, the vast majority of taxi drivers who are arrested are never convicted of any misdemeanor or felony offense.

51.     Once off suspension and found not guilty of any charge (or when the charges are dismissed), the TLC offers no compensation for the months during which the taxi drivers are deprived of their livelihoods.

The New York City Administrative Code:

52.     Like all city agencies, the TLC is governed by the City Charter and the New York City Administrative Code (Administrative Code).  The City Charter enacts the TLC as a nine-member commission which acts by majority vote of its members.  The TLC Chairperson is one member of the commission.  The chairperson has an equal vote with the other commissioners.  He also has executive responsibilities for insuring that the Administrative Code, enacted by the city council, and TLC rules, exacted by the nine-member commission be properly executed.

- 11 -

53.     In contrast to the TLC's automatic-suspension-upon-arrest policy, the Administrative Code permits summary suspensions only upon a finding by the Commission. The Administrative Code authorizes the Commission to suspend a taxi driver's license for good cause shown relating to public health or safety, but does not authorize the chairperson to do so.

54.     Pursuant to the Administrative Code, a taxi driver may request a hearing to review his suspension.  The Administrative Code provides that such a hearing will be before the  commission  or other administrative tribunal of competent jurisdiction (such as the New York City Office of Administrative Trial and Hearings) not before a single TLC judge appointed by the chairperson.

55.     In contrast to the TLC's own policy, which allows for indefinite summary suspensions, the Administrative Code provides that a decision shall be made with respect to any such proceeding within sixty calendar days after the close of the hearing.  Otherwise, pursuant to the Code, the taxi driver's license must be restored.  In practice, the TLC regularly maintains longer pre-hearing suspensions.

Jonathan Nnebe:

56.     Consistent with TLC practice, Mr. Nnebe's license was suspended without a hearing of any kind by letter on May 30, 2006.   After a perfunctory hearing on June 8, 2006, the TLC ordered that his suspension be continued.

57.     At no time did the TLC present any competent evidence of Mr. Nnebe's alleged wrongdoing.  Nor was Mr. Nnebe permitted to confront his accusers or cross-examine witnesses.  The TLC never contacted or interviewed Mr. Nnebe's accuser, and made no attempt to do so.  At the time of his hearing, no criminal complaint against him had been

filed.  No one from the TLC ever contacted the detective who made the arrest and filled out the Desk Appearance ticket.  There was no suggestion that Mr. Nnebe has any record of misconduct—as he has no such record—or that his continuing to drive a taxi is somehow a "threat" to public safety.

<u>Events Leading to Mr. Nnebe's Suspension</u>:

58.     The following narrative is based on the report and recommendation of the TLC ALJ:  On or around May 6, 2006 at 3 o'clock in the morning, Mr. Nnebe, who was driving the nightshift, picked up a man and a woman at the Port Authority Bus Terminal on 41st Street and 8th Avenue in Manhattan.  The passengers asked to make two stops, the first at 23rd Street and the FDR Drive in Manhattan, the second in the Bronx.  Because Mr. Nnebe was near the end of his shift, he told the passengers (who have not been identified and who remain unknown to plaintiffs) that he could not wait long at the first stop.

59.     Despite assurances that the stop would be brief, the male passenger entered an apartment building and did return for at least 20 minutes.  Mr. Nnebe asked the female passenger to telephone her friend to advise him that Mr. Nnebe could not wait any longer.  The male passenger still did not return; the female refused to leave the cab, and a dispute arose.

60.     Complying with TLC Rule 2-39A, Mr. Nnebe began driving to the nearest police precinct in an effort to secure his fare then on the meter and to resolve the dispute.  At a red light the female jumped out of the cab with three bags, dropping one.   Mr. Nnebe picked up the bag and returned to his taxi.  When the female demanded the bag be returned, the dispute continued.  A passer-by drove by, counseled Mr. Nnebe to return the bag and forget the fare, which he did.

61.     Several weeks later, Mr. Nnebe received a call from NYPD Detective Michael Paul, who told him that an assault complaint had been lodged against him.  Mr. Nnebe offered to meet the detective at the precinct to discuss the matter.  On May 29, at the end of the conversation, the detective told Mr. Nnebe that he had to place him under arrest, which he did.  The detective gave Mr. Nnebe a Desk Appearance Ticket (DAT), citing PL 120 (misdemeanor assault in the third degree) and released him.

62.     Mr. Nnebe was arraigned based on a police officer's statement (as to what he had been told by others) on July 29.

63.     To date, no witness with knowledge of what occurred in the pre-dawn hours of May 6 has testified against Mr. Nnebe and none has signed a sworn statement against him.

64.     The district attorney's office never secured a supporting affidavit and never declared itself ready for trial.  Ultimately, the criminal charges were dismissed for failure to prosecute.

The TLC Suspension:

65.     On May 30, a TLC prosecutor named Mark Hardekopf wrote a letter to Mr. Nnebe advising him that his taxi license had been suspended based on his arrest.  If Mr. Nnebe wanted a hearing concerning the suspension, he would have to request one within 10 days, Mr. Hardekopf advised.  The letter also threatened Mr. Nnebe with license revocation.

66.     A hearing was held on June 8 before TLC ALF Frank Fioramonti.

67.     Like all TLC ALJs, Mr. Fioramonti is a lawyer in private practice.  (Mr. Fioramonti's specializes in lobbying and has does no litigation in his private practice.)  He is an at-will employee of the TLC who works on a per diem basis.

68.     Mr. Nnebe appeared *pro se*.  Mr. Hardekopf appeared for the TLC. Neither Mr. Hardekopf nor TLC ALJ Fioramonti advised Mr. Nnebe of his right to remain silent.

69.      The only submission Mr. Hardekopf made at the hearing was an arrest report.

70.     The TLC made no effort to hear testimony from the complaining witness.  It did not contact the detective who issued the DAT.

71.     Mr. Nnebe denied the charges and recounted then events of the early morning of May 6.

72.     Following the hearing, TLC ALJ Fioramonti ruled the suspension should continue.

73.     In his "recommendation" to Chairperson Daus, TLC ALJ Fioramonti stated initially that the standard was "whether sufficient credible evidence was presented to support the continued suspension of Mr. Nnebe."

74.     But in the end, he recommended a continued suspension based on "sufficient allegations."  He cited no evidence—as there was no evidence presented—that the alleged assault had ever occurred.

75.     On July 3, TLC Chairperson Daus accepted the TLC judge's recommendation.

76.     As a result, Mr. Nnebe's taxi license—the basis of his livelihood—remained on indefinite suspension for four months.

Alexander Karmansky:

77.     Mr. Karmansky was arrested on May 23.  The arrest was for criminal trespass in the second degree, criminal contempt in the second degree, both misdemeanors, and harassment in the second degree, a violation.

78.     His license was suspended by letter from a TLC lawyer the following day.

- 15 -

79.     He was afforded a summary suspension hearing on June 8.

80.     At the hearing, the TLC lawyer offered nothing beyond the arrest notification form.  The TLC lawyer had made no inquiry into the nature of the charges that led to the arrest and offered no evidence as to those charges.  TLC Judge Fioramonti presided over the hearing.  Mr. Karmansky appeared *pro se*, denied the charges, and offered an explanation.

81.     At no time did the TLC present any evidence of Mr. Karmansky's alleged wrongdoing.  Nor was Mr. Karmansky permitted to confront his accusers or cross-examine witnesses.  The record indicates that the TLC never contacted or interviewed Mr. Karmansky's accuser.  No one from the TLC ever contacted the police officer who made the arrest. There was no suggestion that Mr. Karmansky has any record of misconduct that is any way demonstrates he is somehow a "threat" to public safety.

82.     TLC Judge Fioramonti issued an order dated June 13 recommending that Mr. Karmansky's suspension be continued based on "sufficient allegations" that he posed a risk "to the public." (TLC Judge Fioramonti also stated, incorrectly, that one of the charges against Mr. Karmansky is a felony.)

83.     On June 10, subsequent to the hearing, Ms. Karmanskaya sent a letter (The letter was sworn to before a notary public) to Mr. Hardekopf informing him Mr. Karmansky had been "charged with crimes he didn't commit."  She also denied several of the statements in Ms. Cronin's declaration, saying they must have been the result of an inaccurate translation from Ms. Karmanskaya's statements in Russian.

84.     Mr. Karmansky offered via Mr. Hardekopf to submit this letter to TLC Judge Fioramonti, who had not yet ruled.  Mr. Hardekopf told Mr. Karmansky that the letter was irrelevant and that he shouldn't bother.

85.    Mr. Karmansky remained on suspension for approximately three months.

Events Leading to Mr. Karmansky's Suspension:

86.    According to the criminal complaint filed by Michelle Cronin, a legal assistant in the King's County District Attorney's Office (which was not available to the TLC at the time of the suspension), on the evening of May 23, Mr. Karmansky visited his mother's apartment and barged in.  He allegedly refused to leave and used profanity.  Such conduct allegedly violated an order of protection issued in favor of his mother, Polina Karmanskaya, on Dec. 14, 2005.

87.    Ms. Karmanskaya refused to sign a statement swearing to the charges against her son.  In fact, she attempted to have the charges withdrawn.

88.    The district attorney's office never secured a supporting affidavit and never declared itself ready for trial.  Ultimately, the criminal charges were dismissed for failure to prosecute.

Eduardo Avenaut:

89.    Eduardo Avenaut was arrested in Westchester County on July 17, 2006 following an argument with his girlfriend.  He was charged with assault in the third degree, a misdemeanor.

90.    Mr. Avenaut was suspended by letter from Marc Hardekopf on July 20.

91.    Mr. Avenaut's girlfriend informed the Westchester County District Attorney that she was recanting her earlier statement and would not sign a corroborating affidavit.

92.    While the criminal case was pending, Mr. Avenaut called Mr. Hardekopf several times to tell him the charges would likely be dismissed.  Mr. Hardekopf responded that he could relax the suspension only upon a final disposition of the charges.

93.     The criminal case against Mr. Avenaut was dismissed for failure to prosecute on or around October 24, 2006.

94.     Mr. Avenaut was on suspension for approximately three months.

Khairul Amin:

95.     Khairul Amin was arrested on or about June 11, 2005, in the midst of a protracted dispute with his landlord, who had attempted to force him to move, and charged with misdemeanor offenses based on the landlord's allegation that Mr. Amin threatened him with a knife.

96.     Mr. Amin was suspended by letter from a TLC lawyer on or about June 14, 2005.

97.     Mr. Amin attended a summary suspension hearing, denied the charges and explained the circumstances of his arrest.  The TLC judge recommended and the TLC chair ruled that his suspension should be continued.

96.     On or around August 24, 2005, he was offered an adjournment in contemplation of dismissal, which, on advice of counsel and in order to regain his hack license, he accepted.  On February 23, 2006, the charges were formally dismissed.

97.     Mr. Amin remained on suspension for approximately 10 weeks.

**FIRST CLAIM FOR RELIEF / 42 U.S.C. § 1983 –
DUE PROCESS – LACK OF HEARING**

98.      Plaintiffs repeat and reallege paragraphs 1 through 97 as if the same were fully set forth at length herein.

99.     By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily

suspended based on a unproven allegations in the absence of evidence and without a hearing, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

100.    All defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

101.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

### SECOND CLAIM FOR RELIEF /42 U.S.C. § 1983 – DUE PROCESS – SHAM HEARINGS

102.    Plaintiffs repeat and reallege paragraphs 1 through 101 as if the same were fully set forth at length herein.

103.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses suspended based on a unproven allegations in the absence of evidence and without a meaningful hearing, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to

every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

104.    All defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

105.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

### THIRD CLAIM FOR RELIEF /42 U.S.C. § 1983 – DUE PROCESS – SUSPENSIONS WITHOUT PROPER FINDINGS

106.    Plaintiffs repeat and reallege paragraphs 1 through 105 as if the same were fully set forth at length herein.

107.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses suspended based on a unproven allegations in the absence of evidence and without any finding of good cause by the Commission, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

108.    All defendants have acted under pretense and color of state law and in their

individual and official capacities and within the scope of their employment.  Said acts by said

defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse

of their powers, and said defendants acted willfully, knowingly, and with the specific intent

to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the

Fourth, Fifth, and Fourteenth amendments to the United States Constitution. Defendants have

conspired among themselves to do so (taking numerous overt steps in furtherance thereof),

and failed to prevent one another from doing so.

109.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs'

constitutional rights.

### FOURTH CLAIM FOR RELIEF /42 U.S.C. § 1983 – DUE PROCESS – SUSPENSIONS WITHOUT PROPER FINDINGS

110.    Plaintiffs repeat and reallege paragraphs 1 through 109 as if the same were

fully set forth at length herein.

111.    By implementing, promulgating, and continuing to enforce and/or effectuate a

policy, practice and custom pursuant to which taxi drivers may have their licenses suspended

based on a unproven allegations in the absence of evidence and without any specific finding

of good cause by the TLC Chair, defendants have deprived and will continue to deprive each

and every plaintiff and members of the plaintiff class of rights, remedies, privileges and

immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983,

and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United

States Constitution.

112.    All defendants have acted under pretense and color of state law and in their

individual and official capacities and within the scope of their employment.  Said acts by said

defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

113.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

**FIFTH CLAIM FOR RELIEF / 42 U.S.C. § 1983 – ADMINISTRATIVE CODE**

114.    Plaintiffs repeat and reallege paragraphs 1 through 113 as if the same were fully set forth at length herein.

115.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily suspended based on actions by TLC attorneys (or the TLC chairperson) acting without consultation with or consent from the full TLC commission, defendants have violated and continue to violate the Administrative Code of the City of New York.

116.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

**SIXTH CLAIM FOR RELIEF/ New York State Constitution Art. 1, § 6**

117.    Plaintiffs repeat and reallege paragraphs 1 through 116 as if the same were fully set forth at length herein.

118.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses

summarily suspended or revoked without due process of law, defendants have deprived and will continue to deprive each and every plaintiffs and members of the plaintiffs class of rights, remedies, privileges and immunities guaranteed to every citizen of the State of New York in violation of the New York State Constitution, Article 1, § 6. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

119.    All defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights secured by the New York State Constitution, Article 1, § 6.

120.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional rights.

**SEVENTH CLAIM FOR RELIEF/ NYC ADMINISTRATIVE CODE**

121.    Plaintiffs repeat and reallege paragraphs 1 through 120 as if the same were fully set forth at length herein.

122.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily suspended without any finding by the full Taxi and Limousine Commission and without a right of appeal to that commission or an impartial administrative court, defendants have violated and continue to violate the New York City Administrative Code.

123.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## EIGHTH CLAIM FOR RELIEF/ TLC RULES

124.    Plaintiffs repeat and reallege paragraphs 1 through 123 as if the same were fully set forth at length herein.

125.    By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which taxi drivers may have their licenses summarily suspended without any finding by the TLC chairperson, defendants have violated and continue to violate the TLC rules, part of the New York City Rules and Regulations.

126.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## NINTH CLAIM FOR RELIEF / CAPA

127.    Plaintiffs repeat and reallege paragraphs 1 through 126 as if the same were fully set forth at length herein.

128.    The enactment of the TLC's summary suspension policy without a compliance with the City Administrative Procedure Act (CAPA) was in contravention of the New York City Charter.  As such the policy was void from the outset and all penalties administered thereunder are also void and of no force or effect.

129.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## TENTH CLAIM FOR RELIEF / CAPA – EX PARTE CONTACTS

130.    Plaintiffs repeat and reallege paragraphs 1 through 129 as if the same were fully set forth at length herein.

131.    The TLC systemically and specifically with regard to its summary suspension policy engaged in *ex parte* contacts with TLC judges.  These contacts were in violation of CAPA as well as principles of legal ethics.  The results of all adjudications contaminated by such contacts are void and any penalties proscribed as a result of such adjudications are void and of no force or effect.

132.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

### ELEVENTH CLAIM FOR RELIEF / CAPA – IMPROPER HEARINGS

133.    Plaintiffs repeat and reallege paragraphs 1 through 132 as if the same were fully set forth at length herein.

134.    The TLC systemically and specifically with regard to its summary suspension policy conducted hearings at which, *inter alia*, it failed to sustain the burden of proof and provided no opportunity for plaintiffs to call, subpoena or cross examine relevant witnesses. The results of all such adjudications are void and of no force or effect.

135.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

### TWELVETH CLAIM FOR RELIEF / 5th AMENDENT

136.    Plaintiffs repeat and reallege paragraphs 1 through 135  as if the same were fully set forth at length herein.

137.    At their summary suspension hearings, defendants invite and expect the suspended taxi drivers to testify.  Taxi drivers are led to believe, however falsely, that their testimony may lead to reinstatement of their license.  Neither the TLC lawyer nor the TLC

judge informs the taxi driver of his right to remain silent pursuant to the 5th Amendment to the Constitution.

138.    Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

## IRREPARABLE HARM

139.    As to each of the foregoing claims, if defendants' policy, practice and custom of summarily suspending taxi driver licenses based on a mere allegations of wrongdoing is not enjoined, the named plaintiffs and the members of the plaintiffs class will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiffs class will suffer continued violations of their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article 1, § 12 of the New York State Constitution and under state law.

## RELIEF REQUESTED

WHEREFORE, plaintiffs ask this Court:

A.    To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) for the plaintiffs class described herein and naming plaintiffs as the class representatives.

B.    To enter a judgment declaring that defendants' policy, practice and custom summarily suspending and based on mere allegations of wrongdoing is unconstitutional.

C.    To enter a judgment declaring that defendants' policy and practice of summarily suspending and based on mere allegations of wrongdoing is illegal under state law.

D.      To enter a judgment declaring that defendants' hearing procedures are unconstitutional and in violation of state law.

E.      To issue an order enjoining defendants' policy, practice and custom of summarily suspending taxi driver licenses based on mere allegations of wrongdoing.

F.      To issue an order requiring defendants to reinstate the license of every taxi driver whose license has been suspended based on mere allegations of wrongdoing.

G.      To award the named plaintiffs and members of the class compensatory damages in an amount to be determined at trial.

H.      To award the named plaintiffs and members of the class punitive damages in an amount to be determined at trial.

I.      To award the named plaintiffs and members of the class reasonable attorney's fees and costs.

J.      To grant such other and further relief as this Court shall find just and proper.

Dated: New York, New York
        October 27, 2006


__/s/_____
Daniel L. Ackman (DA-0103)
1 Liberty Place, 23rd Floor
New York, NY  10006
(917) 282-8178

Attorney for Plaintiffs

- 27 -