

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007-2601

ZACHARY W. CARTER
*Corporation Counsel*

MARY O'SULLIVAN
Tel: (212) 356-2206
mosulliv@law.nyc.gov
Fax: (212) 356-2059

October 14, 2015

**VIA ECF and Email**
Hon. Richard J. Sullivan
United States District Court
Southern District of New York

Re:   *Nnebe v. Daus*, 06-cv-4991 (RJS)

Your Honor:

This office represents Defendants in the above-referenced matter. I submit this letter in response to Plaintiffs' letter dated October 6, 2015 ("Pls' Ltr") (Doc. No. 359), which incorrectly claims that "resolution of the Due Process claim" in *Harrell v. City of New York*, No. 14-cv-7246 (VEC), 2015 U.S. Dist. Lexis 133492 (S.D.N.Y. Sep. 30, 2015), "is persuasive here." Pls' Ltr at 1.

*Harrell* is inapposite because the court's analysis under the Due Process Clause was limited to plaintiffs' claim that they were entitled to a pre-deprivation hearing, a claim already decided and rejected in *Nnebe*.[1] In *Harrell*, the court considered the pre-hearing seizure of vehicles based upon probable cause findings by TLC inspectors that the vehicle owners had violated the statute requiring a TLC-issued vehicle license for all vehicles used for purposes of for-hire activity.[2] Each of the plaintiffs was alleged to have violated the relevant statute for the first time ("alleged-first-time-violator"). The court concluded that the seizure of vehicles of alleged-first-time-violators without a warrant was unlawful under the Fourth Amendment because the underlying statute did not authorize vehicle forfeiture in the case of first-time-violators, and the seizures do not fall within any of the other exceptions to the warrant requirement. For the same reason, the court held that the City's failure to provide a pre-deprivation hearing to alleged-first-time-violators was unlawful under the Due Process Clause.

In contrast to *Harrell*, here the Court is called upon to review the sufficiency of the post-deprivation hearing associated with the temporary suspension of a TLC-issued taxicab driver's license based on public safety concerns, as a result of enforcement action by an independent third party in a parallel criminal matter. The license suspension is based on TLC's rational determination that the public should not be made to bear the

---

[1] *See Harrell* at 5 ("Plaintiffs moved for summary judgment . . . only as to their claims that . . . the City's codified policy of seizing vehicles . . . without a warrant or pre-deprivation hearing, violates the Fourth and Fourteenth Amendments.").

[2] The relevant statute is Section 19-506 of the New York City Administrative Code.

safety risks of travelling in a taxicab with a licensee whom the law enforcement community has found probable cause to believe has committed a felony or a misdemeanor involving violence, sexual misconduct or the safe operation of a motor vehicle.

Based on the stark differences between the issues in *Harrell* and those in the instant action, it is not surprising that *Harrell* provides no support for the claims in Pls' Ltr, which essentially are as follows: (i) temporary license suspensions based on pending criminal charges violate due process on account of the length of such suspensions; (2) the City is not entitled to determine that an unacceptable risk to the safety of the taxi-riding public is presented by the independent probable cause finding of the law enforcement community that a TLC licensee has committed a felony or misdemeanor relating to violence, sexual misconduct or operation of a vehicle, a substantive due process claim; and (iii) the rationale for TLC's summary suspension policy is suspect, a new claim.

Plaintiffs' first two claims are refuted by the Supreme Court's decision in *Gilbert v. Homar*, 520 U.S. 924 (1988), a decision previously cited by this office. In *Gilbert*, the Court upheld the summary suspension of a public employee during the pendency of felony charges. The Court held that if a rule required the immediate suspension of an employee charged with a felony, then "there is no need for any pre-suspension process since there would be nothing to consider at the hearing except the independently verifiable fact of whether an employee had indeed been formally charged with a felony." *Gilbert*, 510 U.S. at 933. The Court did not find the employee's suspension without a hearing based on pending felony charges to be a violation of the Due Process Clause. The Court opined that like an indictment, "the arrest and formal charges imposed upon [the public employee] by an independent body demonstrate that the suspension is not arbitrary," and that "the imposition of felony charges itself is an objective fact that will in most cases raise serious public concern. . . . [The fact that public employee has been arrested and charged with a felony] [serves] to assure that the state employer's decision to suspend the employee is not baseless or unwarranted, in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime." *Id.* at 934 (inner quotations and citations omitted). The Court concluded that only after the felony charges were dismissed was there a likely value in holding a prompt hearing. *Id.* at 935 ("Once the charges were dropped, the risk of erroneous deprivation increased substantially, and . . . there was likely value in holding a prompt hearing.").[3]

Finally, *Harrell* does not support Plaintiff's third claim, that this Court should reject TLC's assertion that public safety is the basis for the summary suspension policy at issue. Pls' Ltr at 3 ("[T]he entire rationale for the suspensions is at least as suspect as that in *Harrell*."). As support for this claim, Pls' Ltr refers to the fact that the vehicle owners in *Harrell* were given the opportunity to obtain the return of their seized vehicles

---

[3] The facts of *Gilbert* reflect that the government employer did not provide the suspended employee with a hearing until after the pending criminal charges were dismissed. "Although the criminal charges were dismissed on September 1, [the public employee's] suspension remained in effect while [the government] continued with its own investigation. On September 18, [supervisors] met with the [employee] in order to give him an opportunity to tell his side of the story. . . In a letter dated September 23, [the government employer] notified [the employee] that he was being demoted." *Id.* at 927.

2

by posting a bond or paying a penalty. Unlike *Harrell*, the suspended licensees in *Nnebe* were not provided the opportunity to have their licenses reinstated by posting a bond or paying a fine. Moreover, the public safety rationale of TLC's summary suspension policy is supported by the fact that the limited number of offenses for which TLC summarily suspends a license are serious enough to be the basis for license revocation if the licensee is found guilty, or, in the case of a new license applicant, to deny an application if the applicant has been recently convicted of such an offense. The fact that TLC immediately reinstated the licenses of the named plaintiffs upon notice that the pending criminal charges were dismissed or otherwise favorably resolved does not negate the weight of TLC's public safety interest in maintaining the suspension of a licensee against whom there are active and pending felony charges or misdemeanor charges involving violence, sexual misconduct or operating a vehicle.

    Based on the foregoing, there is no legal merit to the claims in Pls' Ltr.

Respectfully submitted,

/s/

Mary O'Sullivan
Amy Weinblatt
Assistant Corporation Counsels

cc: Daniel Ackman, Esq., d.ackman@comcast.net,
David T. Goldberg, Esq., david@donohuegoldberg.com
*Attorneys for Plaintiffs*

Gregg L. Weiner, Esq., gregg.weiner@friedfrank.com
Michael Kleinman, Esq., michael.kleinman@friedfrank.com
*Attorneys for Eduardo Avenaut, Khairul Amin and the New York Taxi Workers Alliance*