# DANIEL L. ACKMAN

## ATTORNEY AT LAW

_____

222 BROADWAY, 19TH FLOOR ○ NEW YORK, NY 10038
TEL: 917-282-8178
E-MAIL: dan@danackmanlaw.com

August 8, 2017

Hon. Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Nnebe v. Daus, 06 Civ. 4991 (RJS)

Your Honor:

I am co-counsel to the plaintiffs in the above referenced action and write to alert the Court to a recent Second Circuit decision in *Panzella v. Sposato*, __ F.3d __, 2017 WL 3012995 (July 18, 2017), which, like the Supreme Court's recent decision in *Nelson v. Colorado*, 137 S.Ct. 1249 (2017), strongly suggests that this Court's post-trial decision should be reconsidered. In the alternative, we ask the Court to issue a final judgment on plaintiffs' due process claim under Fed. R. Civ. P. 54. A copy of the decision is attached.

In *Panzella*, a gun owner sued Nassau County and others under 42 U.S.C. § 1983, alleging a violation of her due process rights based on the defendants' failure to provide her with adequate opportunity to recover longarm rifles that were confiscated in connection with an order of protection issued by a family court. The district court held that Panzella should have been afforded a hearing under the following conditions, as set forth in *Razzano v. County of Nassau*, 765 F.Supp.2d 176 (E.D.N.Y. 2011). These conditions included that "the post-deprivation hearing must be held before a neutral decision-maker;" that "at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action ... to maintain possession of the seized longarms;" that "if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed." 2017 WL 3012995 at *4.

The Court of Appeals affirmed. In doing so, it cited its own decision in this action as a "suit brought to enforce procedural due process rights." *Id.* at *6. Thus, the Second Circuit briefly, but bluntly rejected this Court's conclusion that plaintiffs' claims sound in substantive (as opposed to procedural) due process.

The Court of Appeals goes on to apply the *Mathews v. Eldridge*, 424 U.S. 319 (1976), test to Panzella's claims. It rejects the county's defense that an Article 78 proceeding provided

sufficient process. And it rejects the County's argument that the fact that "the Family Court found that Panzella was sufficiently dangerous that a protection order should be entered against her [made] it reasonable for the County to assume that it is not appropriate to return her longarms absent a court order." *Id*.

Each of these conclusions indicates that other aspects of this Court's post-trial decision are erroneous. As in *Nelson*, the Court of Appeals required the county to adopt an entirely new regime for returning property, one starkly different from what the county had established. The Court also rejected the notion that a family court's finding of dangerousness, which permitted seizure of the weapons, could be assumed to apply to a post-deprivation claim that these weapons should be returned.

Of course, the logic enforced at TLC post-deprivation hearings is even more extreme than that the *Panzella* court rejects. The TLC suspends drivers without *any* judicial finding, relying instead on a police officer's *ex parte* finding of probable cause, which does not include *any* determination that the driver presents a threat to public safety. As in *Panzella*, the TLC offers no meaningful opportunity to rebut the determination (never actually made) of dangerousness. Moreover, the decisionmaker in the TLC process is the TLC chair herself, who is not neutral. Finally, and perhaps most significantly, contrary to *Panzella*, the TLC never shoulders the burden of showing that the driver is a threat—it is simply assumed from the fact of arrest.

Based on *Panzella* and *Nelson*, this Court should reconsider its post-trial decision. In the alternative it should issue a final judgment as to plaintiffs' core due process claims pursuant to Fed. R. Civ. P. 54(b). Such a judgment would "provide a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case." *Sears Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). Such an order is also merited by the fact that more than six years have passed since the remand in this action and there is still no final, appealable judgment.

If further elucidation of any of these points is necessary, we ask the Court, per Rule 2 of the Court's Individual Rules and Practices, t allow plaintiffs for make a formal motion for reconsideration of for an order under Rule 54(b).


Respectfully submitted,

/s/

Daniel L. Ackman



cc:  All Counsel (by ECF and e-mail)

Encl.