UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JONATHAN NNEBE *et al.*,

                      Plaintiffs,

-v-

MATTHEW DAUS *et al.*,

                      Defendants.

No. 06-cv-4991 (RJS)
<u>OPINION, ORDER,</u>
<u>and JUDGMENT</u>

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs Jonathan Nnebe, Alexander Karmansky, Eduardo Avenaut, and Khairul Amin, together with the New York Taxi Workers Alliance ("Plaintiffs"), bring this putative class action against Defendants Matthew Daus, Charles Fraser, Joseph Eckstein, Elizabeth Bonina, the New York City Taxi and Limousine Commission (the "TLC"), and the City of New York (the "City") (collectively, "Defendants"), alleging that the TLC's policy of summarily suspending taxi drivers' licenses upon their arrest for enumerated crimes is unlawful under the U.S. Constitution and various state laws. (Doc. No. 42.) Now before the Court are Plaintiffs' motions for nominal damages and to voluntarily dismiss their remaining claims pursuant to Federal Rule of Civil Procedure 41(a). For the reasons set forth below, Plaintiffs' requests are granted.

I. BACKGROUND

    The Court assumes the parties' familiarity with the facts and procedural history of this case, which are set forth in numerous prior decisions. (*See, e.g.,* Doc. Nos. 156, 201, 323, 366.) Accordingly, the Court will provide only the details necessary to resolve the remedial issues presented. On June 28, 2006, Plaintiff Nnebe, a New York City taxi driver, initiated this action

against Defendants (Doc. No. 1), and on October 27, 2006, Plaintiffs Karmansky, Avenaut, Amin, and the New York Taxi Workers Alliance joined in the Second Amended Complaint. (Doc. No. 42.) On September 30, 2009, the Court granted summary judgment to Defendants with respect to Plaintiffs' federal due process claims. *Nnebe v. Daus*, 665 F. Supp. 2d 311 (S.D.N.Y. 2009). That decision contained multiple holdings including, as relevant here, that Plaintiffs had fair and adequate notice that they faced suspension if they were arrested for any of the enumerated crimes. *Id.* at 332–33. Plaintiffs timely appealed.

The Second Circuit affirmed in part, vacated in part, and remanded the case to this Court for additional fact-finding. *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011). Specifically, the Second Circuit agreed with the Court that the Due Process Clause of the U.S. Constitution did not require that Plaintiffs receive a pre-deprivation hearing before the TLC suspended their taxi licenses. *Id.* at 158. Nevertheless, based on the City's representations during oral argument, the panel was unable to discern what standard the TLC applied at the post-deprivation hearings. *Id.* at 163. As a result, the panel remanded the case and directed the Court "to conduct additional fact-finding, in the manner it deems appropriate, to determine whether the post-suspension hearing the City affords does indeed provide an opportunity for a taxi driver to assert that, even if the criminal charges are true, continued licensure does not pose any safety concerns." *Id.* at 163. The Second Circuit then instructed the Court to "determine whether the hearing the City actually provides—whatever it may consist of—comports with due process." *Id.* Finally, the panel ordered that, "[i]n the event the court determines that the post-suspension hearing does not comport with due process, the court is instructed to reconsider its [summary judgment] ruling in its entirety." *Id.*

In addition to affirming the Court's grant of summary judgment regarding the non-requirement of pre-deprivation hearings and remanding for additional fact-finding as to the

2

standard applied at post-deprivation hearings, the panel observed in a relevant footnote: "The district court also rejected certain other constitutional claims by the plaintiffs, including claims of insufficient notice of suspension . . . . The plaintiffs do not pursue th[at] claim[] on appeal, and we do not discuss [it] further." *Id.* at 155 n.4. (citing 665 F. Supp. 2d at 332–33). The Second Circuit was referring to the section of the Court's summary judgment opinion that rejected Plaintiffs' claim that "the summary suspension policy is unconstitutional because taxi drivers lack notice that they will be suspended after they are arrested for specified crimes." 665 F. Supp. 2d at 332–33.

On remand, the Court held a bench trial focused on "the narrow issue" highlighted in the Second Circuit's remand order – what standard is applied at the post-suspension hearings. (Doc. No. 245.) Thereafter, the Court issued an opinion setting forth its factual determination that the TLC utilized an "arrest-plus-nexus" standard whereby the decisionmaker considered only whether (a) the suspended driver has been charged with a crime, (b) the charge is still pending, and (c) there is a nexus between the charged crime, as defined by its statutory elements, and public health or safety. 2014 WL 3891343, at *1–2 (S.D.N.Y. Aug. 8, 2014). The Court explicitly found that "the [TLC] Chairperson never considers or attempts to determine whether the particular driver would pose a direct and substantial threat to public health or safety." *Id.* at *2. After an additional round of briefing in light of these factual findings, the Court issued a separate opinion setting forth its conclusions of law. 184 F. Supp. 3d 54 (2016). Specifically, the Court determined that the TLC's post-suspension hearings did not violate procedural or substantive due process requirements, except with respect to the notices provided by the TLC prior to December 2006, which failed to inform Plaintiffs that "'the critical issues' relevant to the summary suspension hearing were limited

3

to the fact of charges, the pendency of charges, and the nexus between those charges and public health or safety." *Id.* at 75.

As for the remedies available to Plaintiffs, the Court determined that Plaintiffs were precluded from seeking injunctive relief because they had established only a past violation, not a continuing or future violation as required for such prospective relief. *Id.* at 74 (citing *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012)). In addition, the Court expressed skepticism that Plaintiffs would ultimately be able to recover compensatory damages, *id.* (citing *Ortiz v. Regan*, 769 F. Supp. 570, 573 (S.D.N.Y. 1991)), but suggested that Plaintiffs might be able to obtain nominal damages, *id.* at 75 (citing *Carey v. Piphus*, 435 U.S. 247, 262–64 (1978)). However, "because the parties ha[d] not yet had an opportunity to brief – or even present evidence on – the issue of damages pertaining to the pre-2006 notice letters," the Court directed the parties to file supplemental briefs addressing this remedial question and others not relevant here. *Id.*

On May 24, 2016, without first seeking leave of the Court, Plaintiffs sought interlocutory appeal under 28 U.S.C. § 1292(a)(1). (Doc. Nos. 367, 371.) On June 3, 2016, the Court stayed the case during the pendency of Plaintiffs' appeal (Doc. Nos. 369, 372), which the Second Circuit, predictably, dismissed for lack of jurisdiction on February 3, 2017. (Doc. No. 381.) On February 7, 2017, the Court again ordered the parties to submit briefs addressing the remaining issues in the case. (Doc. No. 383 at 3.)

Although the parties filed submissions addressing several outstanding issues (Doc. Nos. 395, 396, 399, 400), the Court received a letter from Plaintiffs on January 31, 2018 withdrawing "all remaining claims not decided by the Court's April 28, 2016 Memorandum and Order" (Doc. No. 411). As for the sole claim on which Plaintiffs prevailed – the pre-December 2006 notice claim – Plaintiffs withdrew "all requests for relief except for nominal damages." (*Id.*) Defendants

4

responded, agreeing to "stipulate to dismissal of all [remaining] claims" and requesting "entry of final judgment on the condition that such dismissal is with prejudice." (Doc. No. 413.) Defendants nevertheless asserted that (1) Plaintiffs had waived their notice argument per the Second Circuit's footnote, and (2) none of the individual Plaintiffs were entitled to nominal damages. (*Id.*) The Court will consider each of these arguments before turning to whether Plaintiffs' voluntary dismissal of their remaining claims should be with or without prejudice.

## II. DISCUSSION

### A. Waiver

Notwithstanding the Court's determination that the TLC's pre-2006 notice was inadequate to inform Plaintiffs of the "critical issues" relevant to the summary suspension hearing, 184 F. Supp. 3d at 74, Defendants persist in arguing that Plaintiffs categorically "waived all notice claims," citing the Second Circuit's footnote that referred to "claims of insufficient notice" not pursued on appeal (Doc. No. 396 (referencing 644 F.3d at 155 n.5)). In so arguing, Defendants conflate the notice objections presented at the initiation of this litigation and those that materialized only after the Court issued factual findings as to the scope of the TLC's post-suspension hearings. The notice argument originally pressed at summary judgment asserted that the summary suspensions were unconstitutional because Plaintiffs had no notice of "either the conduct barred or its consequences." (Doc. No. 139 at 2, 23–24.) Plaintiffs argued then that although there existed "a general statute and a general rule concerning summary suspension, neither mention[ed] arrests as a basis for agency action." (*Id.* at 4; *see also id.* at 24 ("There was no statute and no rule (until December 2006) that would alert a taxi driver that a mere allegation could result in the suspension of his license.").) Put simply, Plaintiffs argued that the governing regime did not put them on notice that an arrest would trigger an automatic suspension of their license.

5

By contrast, after the Court issued its factual findings, Plaintiffs argued – and the Court subsequently agreed – that the TLC's pre-2006 notice did not adequately inform Plaintiffs of the "critical issues" relevant to the summary suspension hearing. In particular, Plaintiffs argued that the "hearing notices [gave] no hint that seemingly relevant evidence would, in fact, always be ignored." (Doc. No. 338 at 18.) Indeed, Plaintiffs accused the TLC of "fail[ing] utterly to inform individuals whose livelihoods are at stake about the standards the government authorities will apply, or purport to apply" at the hearings, and, moreover, of "consistently and affirmatively misinform[ing]" Plaintiffs about the *de facto* standard. (*Id.*) This notice argument is different from the one originally presented to the Court at summary judgment and subsequently waived on appeal, which related to the enumerated crimes for which a driver might be suspended. Moreover, it is hard to imagine how Plaintiffs might have waived before the Second Circuit an argument pertaining to "the procedural due process implications" of a factual finding that the Court did not make until *after* remand. *See* 184 F. Supp. 3d at 75. ("[B]efore December 2006, the text of the [TLC rule] did not indicate that the relevant inquiry for continued suspension was limited to whether the charges, if true, implicated public health or safety, even though in practice the TLC applied the same arrest-plus-nexus standard prior to 2006.")

Nor did this Court's decision as to the pre-2006 notice go beyond the Second Circuit's mandate on remand. The panel instructed this Court to: (1) "conduct additional fact-finding, in the manner it deems appropriate, to determine whether the post-suspension hearing the City affords does indeed provide an opportunity for a taxi driver to assert that, even if the criminal charges are true, continued licensure does not pose any safety concerns"; (2) "determine whether the hearing the City actually provides – whatever it may consist of – comports with due process"; and (3) "reconsider its [summary judgment] ruling in its entirety" if the Court "determines that the post-

6

suspension hearing does *not* comport with due process." *Nnebe*, 644 F.3d at 163. Consistent with that mandate, the Court first determined what standard the TLC actually employed, including during the time period before December 2006. 2014 WL 3891343, at *1–2. Next, the Court concluded that standard "[did] not comport with due process" because it did not adequately notify Plaintiffs of the standard employed by the TLC prior to December 2006. 184 F. Supp. 3d at 75. That determination is manifestly within the bounds of the Second Circuit's order.

## B. Nominal Damages

Turning to the issue of damages, Plaintiffs have withdrawn all requests for damages save nominal damages. The law is clear that Plaintiffs are entitled to nominal damages.[1] In fact, the Supreme Court has recognized in the context of a Section 1983 claim that "the right to procedural due process is absolute," and that therefore "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. Moreover, where a substantive constitutional right has been violated, "an award of nominal damages is not discretionary." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014); *see also Gibeau v. Nellis,* 18 F.3d 107, 110–11 (2d Cir.1994) (citing *Carey*, 435 U.S. at 267). Defendants' argument to the contrary – namely, that no Plaintiff testified at trial that he was personally injured by the denial of adequate notice – finds no basis in law. Each of the individual Plaintiffs received

---

[1] By contrast, Plaintiffs would not be entitled to compensatory damages. "In the procedural due-process context, [compensatory] damages are based on the compensation for injuries that resulted from the plaintiff's receipt of deficient process." *Warren v. Pataki*, 823 F.3d 125, 143 (2d Cir.), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016) (citing *Poventud v. City of New York*, 750 F.3d 121, 135–36 (2d Cir. 2014) (en banc)). Usually, when considering whether to award compensatory damages, "courts must determine whether a different outcome would have been obtained had adequate procedural protections been given." *Id.* "If the outcome would not have been different, the plaintiff is presumptively entitled to no more than nominal damages." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 263 (1978)). There is, of course, an exception to this general rule. Specifically, if a plaintiff "can show that he suffered mental and emotional distress caused by the denial of procedural due process itself . . . , he is entitled to recover actual damages only to that extent." *Warren*, 823 F.3d at 143 (citing *Carey*, 435 U.S. at 263); *see also Carey*, 435 U.S. at 263 (distinguishing between distress attributable to "the justified deprivation" and that caused by "deficiencies in procedure"). In any event, none of the Plaintiffs has shown that "a different outcome would have been obtained" had they been adequately noticed as to the standard employed by the TLC prior to December 2006, nor do they argue they suffered "mental and emotional distress" caused by the denial of adequate notice.

7

inadequate notice; they are not required to show that this procedural due process violation caused any additional harm other than that inherent in the deprivation of process to which they were entitled. *Carey*, 435 U.S. at 267. Accordingly, the Court finds that the individual Plaintiffs are entitled to nominal damages of $1.

## C. Voluntary Dismissal

As noted above, Plaintiffs have agreed to "withdraw all remaining claims not decided by the Court's April 28, 2016 Memorandum and Order" (Doc. No. 411), and Defendants consent (Doc. No. 413). Thus, the only issue is whether this dismissal should be with or without prejudice. Applying the relevant multi-factor test articulated in *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990), the Court concludes that dismissal with prejudice is appropriate for all remaining claims except Plaintiffs' state law claims.

Rule 41(a)(2) provides that, except where all parties agree to a stipulation of dismissal, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "A voluntary dismissal without prejudice under Rule 41(a) will be allowed 'if the defendant will not be prejudiced thereby.'" *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (quoting *Wakefield v. Northern Telecom Inc.*, 769 F.2d 109, 114 (2d Cir. 1985)); *see also Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). In *Zagano*, the Second Circuit set out a number of factors relevant to determining whether the case had proceeded to the point where the defendant would be prejudiced by a dismissal without prejudice, including "the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Zagano*, 900 F.2d at 14. No one factor is

8

dispositive, and "the focus" of the analysis remains whether there is "prejudice to the defendant." *George v. Prof'l Disbosables Int'l*, 15-cv-3385 (RA), 2017 WL 1740395, at *2 (S.D.N.Y. May 2, 2017).

In light of the sheer length of time and effort expended in this litigation, the Court has little difficulty concluding that Plaintiffs' withdrawn federal claims should be dismissed with prejudice. *See id.* at *3; *see also Baldanzi v. WFC Holdings Corp.*, No. 07-cv-9551 (LTS), 2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010) ("Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate."). However, the Court finds that the *Zagano* factors do not weigh in favor of dismissal of Plaintiffs' state law claims with prejudice. These claims were not litigated beyond summary judgment, since the Court declined to exercise supplemental jurisdiction and therefore dismissed them without considering their merits. And although the state law claims were reinstated by the Second Circuit pending resolution of Plaintiffs' federal claims, these claims have not been adjudicated on remand, so the City has expended hardly any resources to defend against them. Thus, notwithstanding the fact that this litigation has transpired over years, it cannot be argued that Plaintiffs have engaged in "vexatious" litigation tactics with regard to these claims. Indeed, part of the reason for the delay (*i.e.*, the need for a remand) was the City's failure during oral argument to articulate accurately the standard employed by the TLC at post-suspension hearings – even though that standard was central to the issues presented on appeal. Finally, Plaintiffs' state law claims, although factually related to Plaintiffs' federal claims, involve legal theories of liability wholly distinct from the federal claims, so there is little likelihood of "duplicative expense of relitigation." In sum, Defendants would not be prejudiced by having to litigate these claims in some future action: the parties never really

litigated them here, and the legal issues are sufficiently distinct from the claims that were actually adjudicated over the course of this litigation, which were limited to Plaintiffs' federal due process claims. Accordingly, the Court determines that dismissal without prejudice is appropriate for Plaintiffs' state law claims.

### III. CONCLUSION

For the reasons set forth above and in the Court's April 28, 2016 Memorandum and Order, *see* 184 F. Supp. 3d 54, IT IS HEREBY ORDERED, ADJUDGED, and DECREED THAT the individual Plaintiffs are each awarded $1 in nominal damages in light of the Court's determination that the notice provided by the TLC with respect to summary post-suspension hearings held prior to December 2006 violated the Due Process Clause of the U.S. Constitution. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT Plaintiffs have failed to prove all other constitutional claims for the reasons set forth in the Court's previous Memorandum and Order. The Clerk of the Court is respectfully directed to enter judgment accordingly, to dismiss Plaintiff's state law claims without prejudice, to dismiss all other claims with prejudice, and to close this case.

SO ORDERED.

Dated: March 23, 2018
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE