UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JONATHAN NNEBE, et al

                                    Plaintiffs,

              - against -

MATTHEW DAUS, CHARLES FRAZIER, JOSEPH
ECKSTEIN, ELIZABETH BONINA, THE NEW YORK
CITY TAXI AND LIMOUSINE COMMISSION AND
THE CITY OF NEW YORK,

                                   Defendants.

**DECLARATION OF MOHAMMED AKINLOLU IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**

06 CV 4991 (RJS)
(ECF Case)

------------------------------------------------------------------------X

ANTHONY STALLWORTH, et al

                                    Plaintiffs,

              - against -

MEERA JOSHI, CHRIS WILSON, STAS SKARBO,
AND THE CITY OF NEW YORK,

                                     Defendants.

17 CV 7119 (RJS)
(ECF Case)

------------------------------------------------------------------------X

       **MOHAMMED AKINLOLU**, an attorney admitted to practice before the Courts of the State of New York, declares pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

       1.    I am the Assistant Commissioner for Prosecution at the New York City Taxi and Limousine Commission ("TLC"). I have held this position since December 2016. In this position, I am responsible for managing the TLC's Prosecution Unit. I supervise the attorneys who represent TLC at the summary suspension proceedings at the New York City Office

Administrative Trials and Hearings ("OATH").  As such, I am fully familiar with summary suspension hearing procedures.

2. I submit this declaration in opposition to plaintiffs' motion for preliminary and permanent injunctive relief.

### Familiarity with the 2019 Second Circuit Decision in this Matter

3. The TLC Chair and staff, including lawyers in the General Counsel's Office and in the Prosecution Division, have reviewed and discussed the Second Circuit's decision in Nnebe v. Daus, 931 F.3d 66 (2d Cir. 2019) ("*Nnebe*").  Operational changes have been made at TLC with respect to summary suspension hearings in order to ensure compliance with *Nnebe*.  Some changes were implemented in 2019 and others in February 2020.  Those changes continue to the present.  In addition, TLC is prepared to make additional changes in the form of proposed rule amendments.  These changes are described below.

### Current TLC Summary Suspension Procedures

4. At each summary suspension hearing held since August 2019, TLC has introduced into evidence documentation relating to the factual circumstances of the suspended driver's criminal charges, such as the criminal complaint, arrest report, and/or complaint report. TLC obtains these documents from the New York City Police Department or the relevant district attorney's office.  At some of these suspension hearings, TLC also introduced documents relating to the driver's TLC driving record, such as documents showing any prior license suspensions or history of violations of TLC rules.  Drivers have been introducing evidence relating to their criminal charges and driving record, and also putting on witnesses.

5. In December 2019, TLC began requiring that drivers submit their requests for hearing by email, instead of by telephone.  TLC made this change in an effort to establish an

accurate timeline for when a request for hearing was made. The email system allows TLC to better track hearing requests and monitor the information being conveyed by TLC staff to drivers.

6. In February 2020, TLC implemented a revised "Notice of License Suspension," which is the notice sent to drivers when TLC has been notified of a qualifying arrest and informs drivers of the basis of their license suspension and their right to hearing. Unlike the prior license suspension notice, the revised notice states that hearing practices have changed in light of the *Nnebe* decision and also includes an insert that explains the process for challenging the continued suspension of the license. A copy of the prior notice of license suspension is annexed hereto as Exhibit "A." A copy of the revised notice of license suspension is annexed hereto as Exhibit "B."

7. Also in February 2020, TLC implemented a revised "Notice of Hearing," which is the notice that informs drivers that a hearing has been scheduled. Unlike the prior hearing notice, the revised hearing notice informs drivers of the relevant considerations bearing on the determination regarding continued licensure, and informs drivers that TLC will be introducing evidence of the factual allegations underlying the driver's arrest at the hearing. It also advises drivers that they may present evidence or testimony to show that their continued licensure does not pose a direct and substantial threat to public safety and that such evidence may relate to, among other things, the particular circumstances of the arrest, their driving record, and their character and standing in the community. A copy of the prior hearing notice is annexed hereto as Exhibit "C." A copy of the revised hearing notice is annexed hereto as Exhibit "D."[1]

---

[1] TLC serves a petition with the Notice of Hearing. As per OATH rules, the petition must include a "short and plain statement of the matters to be adjudicated, and where appropriate, specifically allege the incident, activity or behavior at issue as well as the date, time and place of occurrence." 48 RCNY § 1-22. OATH rules further provide that if the petition does not comply

3

8. For all suspension matters since February 2020, TLC is sending both the revised Notice of License Suspension and the Notice of Hearing to the drivers by email,[2] as well as by first-class mail. Previously, TLC sent the notices only by first-class mail.

9. During the current public health crisis relating to COVID-19, TLC continues to provide timely notice to an arrested driver regarding a license suspension; to schedule hearings to be held at the New York City Office of Administrative Trials and Hearings ("OATH") within ten days of a driver's request; and to review all submissions concerning summary suspensions. OATH continues to hold timely scheduled summary suspension hearings, although such hearings are currently being held remotely by phone or video.[3]

## TLC Rule Proposal

10. Unless TLC is directed otherwise by this Court, upon resolution of this motion, TLC staff will introduce a proposal to the full Commission to amend the current summary suspension rules. The proposed rule changes would do the following:

- Clarify that it is TLC's burden at the summary suspension hearing to demonstrate by a preponderance of the evidence that the suspended driver poses a direct and substantial threat to public safety;
- Enumerate a non-exhaustive list of factors that are relevant to assessing the risk a driver poses to public safety;
- Expedite the process for drivers to recover a suspended license by:
    - Requiring that all hearings be scheduled within 10 calendar days of a hearing request;

---

with these requirements, then an ALJ may direct, on the motion of a party or *sua sponte*, that the petitioner re-plead the petition. Id.

[2] Drivers licensed are required to have a valid email address on file with TLC. See 35 RCNY §§ 80-04(m); 80-12(i)(3).

[3] https://www1.nyc.gov/assets/oath/downloads/pdf/cjo-coronavirus.pdf (last accessed April 24, 2020).

- - o Requiring that OATH ALJs render a decision within 15 business days of the close of the summary suspension hearing;
    - o Requiring that the TLC Chair take action on a recommendation by an OATH ALJ to lift suspension within seven days of receipt of the written recommendation; and
  - Require that the TLC Chair set forth a reasonable basis for rejecting or modifying an ALJ recommendation.

A copy of the text of the rule proposal is annexed hereto as Exhibit "E."

### TLC Opposes Plaintiffs' Proposed Reforms

11. While some of plaintiffs' proposed reforms are similar to TLC's planned rule proposal, such as reforms regarding the burden of proof, rule factors, and expedited procedures, TLC opposes the specific relief sought by plaintiffs. For the reasons set forth below, TLC opposes plaintiffs' requests to delay summary suspension until drivers receive notice of the suspension, automatically schedule thousands of summary suspension hearings, codify factors that are not relevant to a public safety determination, adopt an algorithm-based risk score, make anonymous all suspension decisions, and limit or abolish TLC Chair review.

   **i.** **Delaying Summary Suspension until there is Written Notice**

12. TLC opposes plaintiffs' request that the suspension of the driver's license be delayed until written notice of the suspension is sent to the driver and a reasonable amount of time elapses for it to be received. See Plaintiffs' Memorandum of Law ("Plaintiffs' Memo") at fn. 19. Plaintiffs' proposal would undermine the strong government interest that the Second Circuit identified in protecting the public immediately following an arrest for felony or misdemeanor when little is known about facts and circumstances of the arrest. Nonetheless, under procedures adopted since *Nnebe*, TLC is promptly informing drivers of the suspension by email, as well as by regular mail. Thus, current procedures provide drivers with more timely notice of the suspension than

they received when notices were only sent via mail. TLC does not believe it takes one day for a transmitted email to be received by drivers, as plaintiffs claim.

### ii. Automatic Scheduling of Hearings

13. TLC is opposed to the automatic scheduling of hearings at OATH. See Plaintiffs' Memo at 22-23. First, it is unnecessary, as there are circumstances where hearings may never take place. For example, drivers facing the most serious charges may not be able to pursue a hearing. Other drivers may have stopped driving for hire before an arrest or may choose to address the criminal charges before trying to restore their TLC license.[4]

14. Second, automatically scheduling hearings for each and every summary suspension would place an undue administrative burden on both TLC and OATH. From August 2019 through February 2020, TLC suspended an average of 167 drivers per month due to criminal charges, and during this time period, OATH conducted 18 summary suspension hearings (an average of three per month).

15. Because drivers are entitled to a prompt hearing (currently, within ten days of the hearing request), TLC cannot simply confirm whether hundreds of drivers want to go forward with a hearing *after* the hearing is scheduled. Rather, under a policy of automatic scheduling that plaintiffs seek, to ensure that drivers who want to pursue a prompt hearing have proper notice of the hearing and adequate time to prepare a defense, TLC would have to immediately draft and serve a petition on the driver after a hearing is scheduled with OATH.[5] In

---

[4] TLC lifts suspensions upon receipt of documentation demonstrating a favorable disposition or a reduction to charges that are not included in the list found at 35 RCNY § 68-15(d)(1).

[5] Currently, once a driver requests a hearing, TLC contacts OATH for an available hearing date, drafts and serves on the driver a petition that specifies the hearing date, and obtains information regarding the driver's arrests and driving record.

6

the event a driver is non-responsive or slow in responding to a TLC request to confirm a hearing date, and given the short turnaround between scheduling the hearing and the hearing itself, TLC must prepare for the hearing by, among other things, contacting the relevant law enforcement agencies, compiling and reviewing documents such as the arrest record or TLC driving records (or even prepare a risk score, should the Court be inclined to adopt plaintiffs' request in that regard).

16. Relatedly, OATH would need to keep open a substantial number of hearing times unless and until a driver declines to pursue a hearing or fails to appear for a hearing, which would pose unnecessary staffing and resource challenges. It would also cause delay in unrelated hearings to be held at OATH, as hearing times automatically set for TLC suspension hearings that might never happen would not otherwise be available.[6]

17. As practice has demonstrated, for whatever reason, there are drivers who do not immediately request a hearing after the suspension. This scenario raises another set of administrative and legal issues if hearings were automatically scheduled and a driver requested a hearing after failing to appear, for whatever reason, for an unconfirmed hearing that was automatically scheduled.

18. For all these reasons, TLC's present practice of scheduling prompt hearings upon request both protects the driver's constitutional rights and allows for more efficient governmental operations.

---

[6] From August 2019 through February 2020, OATH Trials Division, which holds the summary suspension hearings, conducted an average of 51 hearings per month on all matters within its jurisdiction. See https://www1.nyc.gov/assets/oath/downloads/pdf/TD-Data.pdf (last accessed on April 24, 2020). As noted above, during this time period, OATH Trials Division conducted 18 summary suspension hearings. Plaintiffs' casual suggestion that OATH Hearings Division can also conduct hearings is completely ignorant of the administrative and legal challenges of implementing such a reform. The Trials Division conducts hearings in Manhattan, whereas the Hearings Division conducts hearings in all five boroughs, is staffed by different hearings officers from the Trials Division, and is subject to different procedural rules than the Trials Division.

### iii. Plaintiffs' Non-Exhaustive List of Factors

19. Despite some overlap with TLC's rule proposal, TLC is opposed to adopting a rule that sets forth the list of factors plaintiffs deem relevant for assessing a driver's public safety risk. See Plaintiffs' Memo at 18-19.

20. Plaintiffs request that ALJs consider "whether the driver has ever been convicted by the TLC tribunal of assaulting or threatening a passenger." Id. at 18. By specifying a single type of violation, as plaintiffs would like, plaintiffs seek to minimize other serious TLC rule violations (such as reckless driving, speeding, harassment or verbal abuse, fraud, misrepresentation, or possession of a weapon in a TLC-licensed vehicle), which could support a finding that an arrested driver poses a public safety risk. For this reason, TLC's rule proposal states that relevant evidence includes "any history of serious violations" under TLC rules.

21. Plaintiffs also request that ALJs take into consideration decisions made by Criminal Court judges in releasing arrestees or the issuance of desk appearance tickets ("DATs") by police officers in assessing whether a driver poses a public safety risk. See Plaintiffs' Memo at 18. Decisions about releasing arrestees cannot be a relevant consideration at a suspension hearing because, under state law, such decisions cannot be based on an assessment of the defendant's risk to public safety.[7] In addition, while the issuance of DATs has factored into past ALJ recommendations, recent state criminal justice reforms have rendered DATs less relevant for TLC suspension determinations. Because an arresting officer previously had greater discretion to issue DATs,[8] the issuance of a DAT could have been construed as reflecting a public safety

---

[7] CPL §510.10(1) (stating that "court shall release the principal pending trial on the principal's own recognizance, unless . . . the principal poses a risk of flight to avoid prosecution")

[8] See Chapter 59 of the Laws of 2019, § 1-a (Part JJJ).

determination by the arresting officer.  As of January 1, 2020, however, state law prohibits the exercise of such broad discretion in issuing DATs and instead mandates that DATs be issued for <u>all</u> misdemeanors and <u>all</u> Class E felonies, except in limited circumstances.[9]  Thus, nearly all drivers who now request a suspension hearing will have received a DAT as a matter of state policy, and not based on a discretionary determination by a police officer.  This is in contrast with practices in the recent past.

22.	Plaintiffs also request that ALJs be required to consider whether drivers have a family that they support financially.  <u>See</u> Plaintiffs' Memo at 19.  This factor, while understandably relevant to a driver's personal circumstances, is not relevant to and would undermine the goal of suspension, which is to protect the public from drivers whose continued licensure presents a danger to public health and safety.

### iv.	Algorithm-Based Risk Score

23.	TLC is opposed to the adoption of an algorithm to assess the public safety risk of a driver's licensure.  <u>See</u> Plaintiffs' Memo at 16-18.  An algorithm-based score that is derived from certain factors and serves to "guide" ALJs and the TLC Chair in exercising their discretion in issuing recommendations and determinations, coupled with a non-exhaustive list of factors enumerated by rule that also serves to "guide" the ALJs and TLC Chair, would be unnecessarily complex.

24.	The complexity of implementing such a process is compounded by the challenges of developing or adopting an algorithm that, as far as TLC is aware, has never been employed in any licensing context or at OATH adjudications.  These challenges include

---

[9] CPL § 150.20.

developing the appropriate list of relevant factors and properly weighting such factors, a seemingly objective process that, as has been documented, is itself subject to biases.[10]

25. The cost of developing and maintaining such a complex and novel program could be high, especially when compared to its perceived benefits.

26. TLC is also concerned about the precedential value of mandating that a licensing agency, which is vested with broad discretion to exercise its expertise to determine qualifications and eligibility for licensure, adopt an algorithm to be used in making discretionary license determinations, especially since nothing in the *Nnebe* decision requires or even suggests that such a change in the post-suspension hearing processes is warranted.

**v.  Publication of Suspension Decisions**

27. Until this pending motion for injunctive relief, plaintiffs have neither made any allegations that suggest that publication of suspension decisions deters drivers from pursuing a suspension hearing nor sought to modify practices relating to the publication of such decisions. See Plaintiffs' Memo at 23.

28. Currently OATH ALJs determine whether to redact information in their recommended decisions. See 48 RCNY § 1-49 ("Unless the administrative law judge finds that legally recognized grounds exist to omit information from a decision, all decisions will be published without redaction."). At the suspension hearings, drivers have made motions to redact information contained in the recommendations, and TLC has not opposed such motions.

---

[10] See, e.g., "Risk Assessment: Explained," THE APPEAL, https://theappeal.org/risk-assessment-explained/ (March 25, 2019); "Algorithms Were Supposed to Fix the Bail System. They Haven't," WIRED, https://www.wired.com/story/algorithms-supposed-fix-bail-system-they-havent/ (February 19, 2020).

29.     Plaintiffs offer no evidence to support the conclusory statement that this practice deters drivers from pursuing a hearing.  Moreover, there is nothing in the *Nnebe* decision that suggests that the practice fails to comport with due process or "the spirit" of Criminal Procedure Law § 160.50.  Additionally, without opposition from TLC, OATH has granted requests by drivers to redact their names in the suspension decisions after the criminal charges were dismissed.  A copy of a redacted suspension decision is annexed hereto as Exhibit "F."

30.     Accordingly, TLC objects to plaintiffs' request to modify the practices or discretion of another agency in the context of this proceeding.  However, TLC is unlikely to object to any application by a driver to redact information from a decision.

**vi.    Chair Review**

31.     TLC is opposed to plaintiffs' request to abolish or limit review of an ALJ recommendation by the TLC Chair.  See Plaintiffs' Memo at 19-20.  While TLC had previously presumed that certain criminal charges, alone, were sufficient to continue a license suspension, the TLC Chair has reviewed the *Nnebe* decision and understands that she must be guided by it in exercising her discretion and issuing determinations.  Copies of recent suspension decisions reflecting this change are collectively annexed hereto as Exhibit "G."

32.     As recent suspension decisions also demonstrate, the TLC Chair has afforded deference to the ALJ recommendations.  Nonetheless, TLC's rule proposal requires that the TLC Chair set forth in writing a reasonable basis for rejecting or modifying an ALJ recommendation, a standard that is consistent with review under Article 78 of the Civil Practice Law and Rules.  Additionally, OATH ALJs make license recommendations to other agency heads, and as far as TLC is aware, these agency heads are not subject to any standard of review of an OATH ALJ recommendation, such as a "clear error" standard that plaintiffs request.

33. TLC is also cognizant of the impact of a license suspension on a driver's livelihood, and as a result, one of its proposed rules seeks to shorten timeframe for making a final determination on continued suspension. Local law currently provides that a final determination must be made within 60 days of the date of the close of a hearing. See Administrative Code 19-512.1(a). Currently, there is no time limitation on the ALJ issuing a recommendation, and after an ALJ recommendation is rendered, the TLC Chair provides all drivers ten days to comment on the recommendation, regardless of whether the recommendation is to lift or continue the suspension, before making a final determination.

34. To shorten these timeframes, TLC's proposed rule provides that an ALJ must make a recommendation within 15 business days of the close of the hearing. Additionally, the TLC Chair would not solicit comments from a driver on an ALJ recommendation to lift a suspension if the TLC Chair agrees with the recommendation, and would instead lift the suspension within seven days of the date of the ALJ recommendation. If the TLC Chair intends to reverse or modify a recommendation to lift a suspension, then the driver would continue to be notified of the reasons for an intended reversal and provided an opportunity to respond in writing before a final determination is made. Under TLC's rule proposal, the TLC Chair must render a final determination in all cases within 20 days of the date of the ALJ recommendation, and if no final determination is made within this time period, TLC must lift the suspension until one is made.

35. Given the above, and because the TLC Chair is empowered by the City Charter to exercise its discretion in rendering license determinations, see N.Y. City Charter § 2303(b)(5), the TLC Chair should be able to continue to exercise her expertise and judgment to determine whether a driver should be licensed to operate for hire, as she currently does in other contexts. See, e.g., 35 RCNY §§ 68-14; 68-15(a)(1).

12

**Criminal Charges and Growth in TLC-Licensed Drivers**

36. TLC has not revised the criminal charges that trigger suspension at least since 2013.

37. During this timeframe, due to the app-based for-hire vehicle companies entering the New York City market, the number of TLC-licensed drivers has nearly doubled, from approximately 100,000 to 193,283 as of March 2020.

Dated:    New York, New York
          April 24, 2020

_____
MOHAMMED AKINLOLU