UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- x
JONATHAN NNEBE, et al

                                           Plaintiffs,       06 CV 4991 (RJS)
                                                         (ECF Case)

                - against -

MATTHEW DAUS, CHARLES FRAZIER, JOSEPH
ECKSTEIN, ELIZABETH BONINA, THE NEW YORK CITY
TAXI AND LIMOUSINE COMMISSION AND THE CITY OF
NEW YORK,

                                               Defendants.
-------------------------------------------------------------------------------- x
ANTHONY STALLWORTH, et al

                                       17 CV 7119 (RJS)
                              Plaintiffs,       (ECF Case)

                - against -

MEERA JOSHI, CHRIS WILSON, STAS SKARBO, AND THE
CITY OF NEW YORK,

                                               Defendants.

-------------------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

                                     JAMES E. JOHNSON
                                       Corporation Counsel of the
                                       City of New York
                                       Attorney for Defendants
                                       100 Church Street
                                       New York, New York 10007
                                       (212) 356-2179

SHERYL NEUFELD,
AMY J. WEINBLATT,
EDWARD L. MURRAY,
            Of Counsel.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT        …………………………………………………..1

ARGUMENT…………………………………..………………………………………….3

POINT I……………………………………………………………………………….3

NO INJUNCTION IS NEEDED AS DEFFENDANTS ARE IN COMPLIANCE WITH REMAND DIRECTIVES ……..……………..…….…...……………3

A.   Summary Suspension Hearings at OATH are Constitutionally Sufficient…………………………………………………………………....3

B.  Notices (Notice of Suspension and Notice of Hearing) are Constitutionally Sufficient………………..………………………………………………..7

POINT II……………………..………………………………………………….11

PLAINTIFFS' APPLICATION FOR A PERMANENT INJUNCTION SHOULD BE DENIED……………………..……………………..………...………..11

POINT III…………………..………………………………...……………18

PLAINTIFFS' APPLICATION FOR A PERMANENT INJUNCTION SHOULD BE DENIED……..……………..……………………..……...……...…18

**Preliminary Statement**

Defendants submit this memorandum of law in opposition to plaintiff's motion for permanent and immediate injunctive relief following a remand from the Second Circuit, as well as to present their proposals for compliance with the Second Circuit's decision. Plaintiffs seek a permanent injunction mandating implementation of proposed changes to the post-suspension hearing procedures by both the New York City Taxi and Limousine Commission ("TLC") and the New York City Office of Trials and Hearings ("OATH") that are far beyond those required by the Second Circuit. Plaintiffs also seek a preliminary injunction barring the New York City Taxi and Limousine Commission ("TLC") from suspending taxicab driver's licenses upon arrests or issuance of citations for certain misdemeanors and felonies until this Court issues an injunction mandating plaintiffs' proposed substantial changes in post-suspension proceedings. Finally, plaintiffs request a preliminary injunction enjoining TLC from taking any action to summarily suspend any TLC licensed driver, and directing TLC to lift current suspensions, during the pendency of the current public health crisis posed by COVID-19. Plaintiffs' motion should be denied in its entirety.

TLC summarily suspends the licenses of drivers who are arrested for felonies and certain misdemeanors, providing an opportunity for a prompt post-suspension hearing. In this action, plaintiffs challenged the suspension hearing procedures. After a lengthy period that included motion practice, an appeal, an earlier remand, and a bench trial, in July 2019, the Second Circuit issued a decision finding constitutional deficiencies in TLC's post-suspension hearing processes. Specifically, the Court found that TLC had improperly "conclusively presume[d] that [continued] suspension [was] appropriate based solely on the abstract

2

relationship of the elements of a charged offense to safe driving." See Nnebe v. Daus, 931 F.3d 66, 70 (2d Cir. 2019) ("Nnebe").  The Second Circuit held that "evidence of a driver's ongoing danger to health and public safety is relevant under the statutory and regulatory scheme" and thus that "TLC's refusal to consider such [relevant] evidence violates due process." Id.  The Court stated further that a "hearing that encompasses some level of conduct-specific findings based upon the facts underlying the complaint and the driver's history and characteristics, for example, would be sufficient." Id. at 88. It remanded the matter to the District Court to "address the proper remedies for the constitutional violations established by plaintiffs[.]" Nnebe at 91.

It is clear, therefore, that what is required is that the TLC and OATH amend their procedures to address the deficiencies found by the Second Circuit, i.e., hold hearings that include the findings set forth immediately above, as well as make certain changes to hearing notices.  It is also clear that substantial and large-scale changes in these procedures that plaintiffs request was not required or even contemplated by the Second Circuit.

While a permanent injunction regarding new procedures is within this Court's authority, it was not required by the Second Circuit and indeed is not necessary, as there is no threat of continued injury since the new procedures required by the Second Circuit have been implemented.  In addressing the mandate of the remand, the District Court could consider, and it is respectfully submitted, should consider, proposals by the parties in the context of the Second Circuit decision in order to arrive at an appropriate remedy rather than an injunction.  Plaintiffs' application for a permanent injunction, while it could alternatively be considered their proposal for post-remand amended processes, reflects an inaccurate and overbroad reading of the Second Circuit's decision and is in any case moot as defendants have already amended their procedures

3

to comply with <u>Nnebe</u>. Defendants submit current practices comport with the requirements of <u>Nnebe</u> and plaintiffs' requests for injunctive relief should be denied.

## ARGUMENT

### POINT I

### NO INJUNCTION IS NEEDED AS DEFENDANTS ARE IN COMPLIANCE WITH REMAND DIRECTIVES.

**A) <u>Summary Suspension Hearings at OATH are Constitutionally Sufficient</u>**

As part of its critical oversight function, TLC summarily suspends the licenses of drivers charged with felonies and serious misdemeanors implicating the safety of the taxi-riding public.  <u>See</u> 35 Rules of the City of New York ("RCNY") § 68-15(d).  Following summary suspension, drivers may request a prompt hearing at OATH to seek to lift the suspension while the criminal charges are pending.  At the OATH summary suspension hearing, the relevant determination is whether the driver presents a "direct and substantial threat to public health or safety."  <u>Id.</u>  Following the hearing, the OATH ALJ recommends, and the TLC Chair makes, the final agency determination.

The Second Circuit's decision that found flaws in the post-suspension hearing procedures also set forth findings of what the Second Circuit would conclude are constitutionally-sufficient hearings.  That is, while it remanded the case to the District Court to "address proper remedies," it also provided a great deal of information that has guided TLC since the issuance of the decision in July 2019.  That guidance in <u>Nnebe</u> included the following language regarding what is required for adequate post-suspension hearings, the first of which quotes the Court's prior decision:

4

- "Even a hearing at which the ALJ is permitted to examine the factual allegations underlying the arrest … would provide to drivers considerably more opportunity to be heard …" (<u>Nnebe</u> at 76, quoting <u>Nnebe v. Daus</u>, 644 F.3d 147, 159 (2d Cir. 2011))

- [I]ndividual dangerousness is, in fact, relevant under the regulatory scheme. (<u>Nnebe</u> at 81)

- [T]he regulation is focused not on the threat posed by the charges, but rather on the threat posed to the public by the *driver's licensure*.  The TLC must show that the charges, if assumed to be true, "demonstrate" that the *continuation* of the License … would pose a direct and substantial threat [citing regulation]. (Nnebe at 82)

- Depending on the surrounding circumstances and the driver's history, the threat may … be more or less "substantial." (<u>Nnebe</u> at 82)

- [W]e conclude that the individual circumstances underlying a taxi driver's suspension are relevant to the statutory scheme and to the role that a due process hearing is designed to play when a person is threatened with the loss of a valuable property interest. (<u>Nnebe</u> at 83)

- [T]he threat from a given driver's continued licensure is the lodestar of the statutory and regulatory inquiry … a meaningful hearing … must give the driver an opportunity to show that his or her particular licensure does not cause a threat to public safety. (<u>Nnebe</u> at 83)

The Court concluded as follows:

- [A] hearing that encompasses some level of conduct-specific findings based upon the facts underlying the complaint and the driver's history and characteristics, for example, would be sufficient. (<u>Nnebe</u> at 88)

- The TLC must allow drivers to argue that the circumstances surrounding their arrest show that there is no reason to deem them a danger. (<u>Nnebe</u> at 90)

Since the Second Circuit's decision, TLC has been presenting their suspension cases in precise accord with the requirements set forth by the Second Circuit generally and

5

specifically as excerpted above, and the ALJ recommendations and Chair decisions have also been consistent with those requirements. See accompanying Declaration of TLC Assistant Commissioner for Prosecution Mohammed Akinlolu ("Akinlolu Declaration") ¶¶ 3, 4, and 31 and Exhibit G thereto.[1] Specifically, in suspension hearings held since August 2019, TLC no longer relies solely on the pending charges or arrest. Rather, TLC has been introducing evidence of the specific factual allegations underlying the individual driver's arrest, as well as other relevant considerations pertinent to the issue of whether the specific driver's continued licensure presents a threat to public safety. See Exhibit G. And a suspended driver now has the "opportunity to show that his or her particular licensure does not cause a threat to public safety," Nnebe at 83. Drivers have been presenting evidence regarding their driving history as well as the testimony of character witnesses, and otherwise have had the opportunity to argue that their continued licensure while criminal charges are pending does not implicate public safety. OATH ALJs are now weighing the specific evidence presented regarding the factual allegations of the arrest and the particular driver's personal circumstances, and the ALJs have been reaching different conclusions regarding continued suspension based on the facts of each individual case after considering "the facts underlying the complaint and the driver's history and characteristics." Nnebe at 88. See Exhibit G. The TLC Chair has accepted these recommendations—including several in which the ALJ recommended lifting the suspension. See Exhibit G. Defendants submit that the changes in the hearings that have been implemented correct the deficiencies found by the Court of Appeals, and the post-suspension hearings now fully comport with the Second Circuit's description of a constitutionally sufficient hearing. Thus, unless this Court finds

---

[1] All exhibits referenced herein are annexed to the Akinlolu Declaration.

continued deficiencies in the revised hearing practices, defendants propose that the "proper remed[y]," Nnebe at 91, with respect to post-suspension hearings is that the Court issue an order finding that defendants are in compliance with the remand and directing that TLC and OATH continue to conduct post-suspension hearings in the manner in which they are currently doing so. Specifically, the hearings should "allow drivers to argue that the circumstances surrounding their arrest show that there is no reason to deem them a danger;" that the hearings continue to include presentation and consideration of evidence that include "some level of conduct-specific findings based upon the facts underlying the complaint and the driver's history and characteristics," Nnebe at 53 and 88, respectively and that the OATH ALJs and TLC Chair continue to consider same in arriving at (recommended) decisions.. This is precisely what the Second Circuit required, and is what TLC and OATH (and the drivers) have been doing for several months.  See Exhibit G and Nnebe at 91.

Additionally, absent guidance to the contrary by this Court, TLC will recommend to the full Commission that it adopt TLC rules that will amend post-suspension hearings, should this Court approve them.  These amended rules would include, *inter alia*, shorter timeframes for the Chair to issue a final determination; clearly state the issue to be determined at the hearing; state that the burden is on the TLC to demonstrate that license continuation would pose a direct and substantial threat to public safety; list four specific categories and one general category of evidence that the OATH ALJ may consider in making their determination; and provide that if the Chair agrees with an ALJ recommendation to lift a suspension, the suspension would be lifted in seven days.  See Exhibit E.  Defendants submit that the current hearing practices, particularly when combined with the proposed rule changes, demonstrate full compliance with the Second

Circuit's decision regarding requirements for constitutionally-sufficient post-suspension hearings.

**B) <u>Notices (Notice of Suspension and Notice of Hearing) are Constitutionally Sufficient</u>**

TLC routinely issues two notices in connection with license suspensions upon arrest or citation.  The first notice advises the driver that his or her license has been suspended based on the arrest and notifies them of the right to a hearing (referred to as the "notice of license suspension" or "suspension notice").  The second notice, sent to drivers who contact TLC to request a hearing in response to the suspension notice, advises the driver of when and where to appear for a hearing, along with other information (referred to as the "notice of hearing" or "hearing notice"). Without distinguishing between them, the Second Circuit found those notices to be constitutionally infirm both before and after amendment of TLC rules in 2006. <u>Nnebe</u> at 88-89.

TLC has since revised both notices to conform to the requirements set forth in <u>Nnebe</u>.  The Court provided guidance regarding the content of a constitutionally-sufficient notice, albeit with less detail than that provided with respect to what is required for hearings. The Second Circuit observed that "[the notice did not inform] the driver as to the critical issue to be determined at the hearing."  Citing the District Court's holding that the pre-2006 notice was insufficient, the Second Circuit also observed that "'part of the function of notice is to give the charged party a chance to marshal the facts in his defense,'" citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564 (1974). <u>Nnebe</u> at 88.

However, the Second Circuit also made it clear that notices are not required to be akin to an instruction manual for suspended licensees ("we do not imply that adequate notice

must include a roadmap to a successful defense," Nnebe at 88), instead observing that the notices did not "[properly inform or prepare drivers] as to what evidence would be relevant to their hearings." Nnebe at 89.

In February 2020, TLC adopted a revised notice of initial license suspension and a revised notice of hearing in order to comply with the Second Circuit's decision. See Akinlolu Declaration ¶¶ 6-8 and Exhibits B and D. The revised notices give drivers whose licenses have been suspended clear and specific information that enable them to "marshal facts in [their] defense," Wolff at 564, and advise them "as to what evidence would be relevant to their hearings." Nnebe at 89. The notices clearly and plainly state what the purpose of the hearing is, the issue to be decided, and what the driver may present at the hearing in an effort to persuade the ALJ to recommend lifting the suspension. The revised notice of license suspension informs drivers of their right to a hearing and that hearing practices have changed in light of Nnebe. The notice of license suspension also includes a new insert that explains the process for restoring the license. Both notices inform drivers of the relevant considerations bearing on the license determination and inform drivers that TLC will be introducing evidence of the factual allegations underlying the driver's arrest.

For example, the notice of license suspension, which is sent first, states in part as follows:

> At the hearing you may present evidence or testimony tending to show that your driving a for-hire vehicle while the charge(s) is/are pending would not pose a direct and substantial threat to public safety. This evidence or testimony may relate to the particular circumstances of your arrest, your TLC driving record, your character and standing in the community, or other factors that you believe show that you do not pose a direct and substantial threat to public safety.

<u>See</u> Exhibit B.  And the notice of hearing sent to drivers who request a hearing in response to the

notice of suspension, states in part:

> At the hearing, the Taxi and Limousine Commission ("TLC") will try to prove to an administrative law judge ("ALJ") that the factual allegations underlying your arrest, if true, demonstrate that your continued licensure poses a direct and substantial threat to public health or safety, and for that reason, your TLC license should remain suspended while the criminal charges are pending. See TLC Rule 68-15(d)(3).1 Accordingly, TLC will seek to present the factual allegations – as found in, for example, the criminal complaint or arrest report – that served as the basis for your arrest.

> At this hearing, you may present evidence or testimony tending to show that your driving a for-hire vehicle while the charge(s) is/are pending would not pose a direct and substantial threat to public safety. This evidence or testimony may relate to the particular circumstances of your arrest, your TLC driving record, your character and standing in the community, or other factors that you believe show that you do not pose a direct and substantial threat to public safety.

<u>See</u> Exhibit D.

In addition to mailing the notices by regular mail, TLC is now sending the notices

by email. <u>See</u> Akinlolu Declaration ¶ 8.

The contents of the amended notices clearly address all the deficiencies found by

the Second Circuit in that they include language setting forth the issue to be decided and they

inform the driver what, specifically, TLC must try to prove and what evidence, specifically, the

driver can offer as a defense. The notices provide the necessary information to enable a driver to

present his or her case for lifting a suspension to the OATH ALJ. Thus, unless this Court finds

continued deficiencies in the notices, defendants submit that they are compliance with that

portion of the <u>Nnebe</u> decision.

**POINT II**

**PLAINTIFF'S    APPLICATION    FOR    A
PERMANENT  INJUNCTION  SHOULD  BE
DENIED**

Plaintiffs' request for a permanent injunction mandating a wholesale revision of the post-suspension hearing process rests upon a reading of <u>Nnebe</u> that can be conservatively described as expansive.  While the Second Circuit found deficiencies in the hearing and decision process and directed the District Court to "address the proper remedies" required, it did not invite plaintiffs to design an entirely new process to their liking.  Rather, the Second Circuit set forth what was lacking in the hearing process and notices and made observations regarding what additional features are needed; it then remanded for the District Court to consider how to address the deficiencies.  Plaintiffs' application for a permanent injunction that includes a mathematical model of risk assessment, elimination of the TLC Chair's decision-making authority, and other features never contemplated by the Second Circuit is not tailored to address the constitutional violations found by <u>Nnebe</u> and must be denied in its entirety.

Additionally, although the Second Circuit found constitutional violations in the post-suspension hearing process, plaintiffs are not automatically entitled to an injunction.  Plaintiffs must show that an injunction would not be moot, and that the constitutional violation found by the Second Circuit is in danger of being repeated.  An injunction "does not follow from the success on the merits as a matter of course."  <u>EEOC v. KarenKim, Inc</u>., 698 F.3d 92, 100 (2d Cir. 2012); see also <u>Flynn v. Lee</u>, 2012 U.S. Dist. LEXIS 108626, *5-6 (S.D.N.Y. July 31, 2012) ("Even if sustained on the merits, any request for permanent injunctive relief must not be moot.") (citing <u>Prins v. Coughlin</u>, 76 F.3d 504, 506 (2d Cir. 1996).   To obtain an injunction, the moving party must demonstrate that "there exists some cognizable danger of recurrent violation."

11

KarenKim, Inc., 698 F.3d at 100; see also O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects[;]" Bray v. City of New York, 2005 U.S. Dist. LEXIS 21748, *27-28 (S.D.N.Y. September 30, 2005) ("To obtain a permanent injunction, plaintiffs must establish both a prior violation of law and a real and immediate threat that the injury will be continued or repeated[]").   The Second Circuit has cautioned that courts should not encroach on a [local government's] ability to remedy constitutional deficiencies, should not use a 'sledgehammer where a more delicate instrument will suffice,' and should not move too quickly where it appears that the state . . . will adopt reforms bringing its system into compliance with the Constitution.'"   Leblanc-Sternberg v. Fletcher, 1996 U.S. App. LEXIS 31800, *12-13 (Dec. 6, 1996).

Plaintiffs cannot make either showing, as the requested injunction is moot and there is little likelihood that the violations will be repeated. Here, defendants remedied the constitutional violations identified by the Second Circuit, and plaintiffs have not demonstrated in any way that they expect that the constitutional violation will be repeated.  As demonstrated *supra* Point I, defendants have undertaken numerous steps to implement the mandate of the Second Circuit and correct each deficiency found by that Court.  See Akinlolu Declaration ¶¶ 3-8 and 10.   Indeed, by seeking an order requiring TLC to codify factors detailed in ALJ recommendations made since the Nnebe decision, plaintiffs are admitting that defendants are in fact following the Second Circuit's mandate to consider "some level of conduct-specific findings" in assessing a driver's public safety risk.   See Plaintiffs' Memorandum of Law ("Plaintiff's Memorandum") at fn. 9-17.  Moreover, the current notices not only inform drivers of the relevant determination at a summary suspension hearing, but also detail various factors that

make clear to the drivers that conduct-specific findings are relevant to the determination.  See Exhibits B and D.  If this Court agrees that the changes in the hearing processes correct the constitutional deficiencies, as defendants maintain, then an injunction would be moot. Additionally, while it is theoretically possible that a future TLC Chair could reverse course and decide to disregard the Nnebe mandate, plaintiffs offer no reason for the Court to find that this could become a reality and indeed there is none. TLC has amended its practices since the Nnebe decision, including by introducing at the summary suspension hearings factual allegations relating to the driver's criminal charges and driving record.  See Leblanc-Sternberg v. Fletcher, 1996 U.S. App. LEXIS 31800, *12-13 (Dec. 6, 1996) (finding an injunction necessary to ensure compliance because of defendants' "disregard of [the Second Circuit's] clear holding").  Since the Nnebe decision, TLC adopted new notices that explicitly state that practices have changed in light of the Nnebe decision.  Absent directions to the contrary from this Court, TLC will propose/ to the full Commission rules that codify these changes and establish more stringent procedures that go beyond the Nnebe decision.  See Akinlolu Declaration ¶ 10 and Exhibit E thereto.  TLC's adoption of comprehensive changes in both hearing procedures and notices following Nnebe, not to mention the presumption that an agency chair will follow applicable law, see Akinlolu Declaration at ¶¶ 3-8 and 10, make it clear that future defiance of Nnebe is extremely unlikely. Thus since injunctive relief would be moot and there is very little likelihood of the violations being repeated, no injunction is warranted.

Even if this Court does find that injunctive relief is appropriate to address the constitutional violations identified by the Second Circuit (though defendants submit no such finding is warranted), the scope of such relief must be tailored to the violations found.  See Disabled in Action v. Bd. of Election, 752 F.3d 189, 198 (2d Cir. 2014); United States v.

Yonkers Bd. of Education, 837 F.2d. 1181, 1236 (2d Cir. 1987) (finding that the "remedy fashioned by the district court is closely tailored to the City's constitutional violations and intrudes no more than necessary on the City's prerogatives, consistent with ensuring that some remedial action will in fact occur"); see also Toussaint v. McCarthy, 801 F.2d 1080, 1086 (9th Cir. 1986) (injunctive relief must be "no broader than necessary to remedy the constitutional violation") cert. denied 481 U.S. 1069 (1987); Gibson v. Firestone, 741 F.2d 1268, 1273 (11th Cir. 1984) (stating that court is not authorized to grant injunctive relief against a state agency that is broader than necessary to remedy the constitutional violation).

Plaintiffs' application for injunctive relief is not at all tailored to the deficiencies found by the Second Circuit, but rather "amount[s] to an unnecessary overkill." See Dean v. Coughlin, 804 F.2d 207, 213 (2d Cir 1986).  First, plaintiffs demand an idealized adjudicatory system at OATH: "In a permanent injunction, the Court must order defendants to adopt a process that will ensure that drivers' licenses be reinstated whose licensure pending resolution of criminal charges would not endanger the public …" Plaintiffs' Memorandum at 15.  Nowhere in Nnebe did the Court order that the hearings must be able to "ensure" an ideal result; indeed, that is not constitutionally required.. See, e.g., United States v. Yonkers Bd. of Education, 837 F.2d. 1181, 1236 (2d Cir. 1987) (finding sufficient a remedy that ensures that "some remedial action will in fact occur").  Second, the first three steps that plaintiffs propose allegedly to address deficiencies found by the Second Circuit involve the adoption of an entirely new and controversial mathematical process (referred to by plaintiffs as a "numerical risk assessment") that severely encroaches on the TLC's ability to make discretionary licensing determinations. Plaintiffs' Memorandum at 15-16.  Such an unprecedented measure, which is not employed in any OATH adjudication, is obviously not tailored to the remand order.  See Akinlolu Declaration ¶ 26.

14

Nothing in the Second Circuit decision even hinted that such a process was necessary to address the flaws found by the Court.  As such, plaintiffs' request for this broad expansive relief not contemplated by the Second Circuit should be denied.

In any event, plaintiffs' apparent embrace of this type of numerical analysis as a purely objective, nearly infallible means of determining the issue to be decided at a post-suspension hearing, Plaintiffs' Memorandum at 14-18, is unrealistic and misguided.  Such algorithms are themselves developed by individuals and contain specific inputs and criteria and cannot be either ideal or free of biases and assumptions.  They are not a panacea for the perceived fallibility of human decisionmakers.  Indeed research has cast serious doubt on their ability to cure perceived deficiencies. See, e.g., "Risk Assessment: Explained," THE APPEAL, https://theappeal.org/risk-assessment-explained/ (March 25, 2019); "Algorithms Were Supposed to Fix the Bail System.  They Haven't," WIRED, https://www.wired.com/story/algorithms-supposed-fix-bail-system-they-havent/ (February 19, 2020). Even with a broad, expansive reading of Nnebe, this proposal, which would require that TLC develop new systems and practices that would involve new expenses and administrative burdens, see Akinlolu Declaration ¶¶ 23-26, should not be considered part of a remedy tailored to the remand order.[2]

Plaintiffs' other requests for injunctive relief should likewise be denied as not tailored to the required remedy.  Plaintiffs request that the suspensions be delayed for one to three days until drivers receive notice of the suspension, see Plaintiffs' Memorandum at fn 19, even though the Second Circuit affirmed TLC's pre-deprivation procedures.  Nnebe v. Daus, 644

---

[2] Should the Court find that this proposal is in fact properly tailored to fit the Second Circuit's remand mandate and consider implementing it in some form, defendants respectfully request that they be permitted to submit additional briefing on this subject.

F.3d 147, 159 (2d Cir. 2011).  Plaintiffs also propose that suspension decisions be anonymous, see Plaintiffs' Memorandum at 23, even though there is nothing in the record to suggest that the due process violations identified by the Second Circuit flows from or is in any way related to the publication of suspension decisions.  And plaintiffs demand that TLC automatically schedule hearings for all drivers who are summarily suspended, see Plaintiffs' Memorandum at 22-23, based on their mere conjecture that drivers continue to believe such hearings are futile,[3] and in complete disregard for the administrative burdens of such a proposal.  See Akinlolu Declaration ¶¶ 13-18.  Plaintiffs propose that the ALJs and TLC Chair consider factors that have no bearing on whether a driver poses a public safety risk.  See Plaintiffs' Memorandum at 18-19.  For example, plaintiffs request the ALJs consider whether a driver is detained on criminal charges (see Plaintiffs' Memorandum at 18), but state law prohibits criminal court judges from making release decisions based on the defendant's risk to public safety.  See Akinlolu Declaration ¶¶ 19-22 (referencing N.Y. Criminal Procedure Law § 510.10(1)).  Finally, plaintiffs seek to abolish Chair review entirely because the TLC Chair is purportedly biased, see Plaintiffs' Memorandum at 20, even though, as demonstrated above, the TLC Chair understands the Second Circuit's decision and has issued determinations where she has accepted ALJ recommendations.  See Akinlolu Declaration at ¶¶ 3, 31, 32.  See also Karpova v. Snow, 497 F.3d 262 (2d Cir 2007) (noting that due process is not violated when the "same office - - rather than the same person - - [] performs multiple functions").  For the above reasons, and reasons further set forth the

---

[3] Plaintiffs allege that suspensions have "surged" in recent years, Plaintiffs' Memorandum at 7, thus suggesting that TLC is doubling down on measures to punish drivers unnecessarily. Plaintiffs' suggestion is a gross mischaracterization. To the extent suspensions have increased, defendants note that the number of TLC-licensed drivers have doubled from roughly 100,000 to 200,000.  See Akinlolu Declaration ¶¶ 36-37.

Akinlolu Declaration, defendants submit that plaintiffs' proposed injunctive relief is unduly broad and unnecessary to remedy the due process violations identified by the Second Circuit.

Nonetheless, TLC seeks to address some of the requests identified by plaintiffs. These are set forth in the proposed rules, including making it clear that the burden of proof at a hearing is on the TLC, and enumerating factors relevant to establishing a public safety risk.  See Exhibit E to Akinlolu Declaration.   The fact that TLC is not currently planning to adopt each of plaintiffs' proposed changes is not an appropriate basis for the issuance of an injunction.

Plaintiffs' allegations that TLC "has not even acknowledged the Court of Appeals Decision" and that the "TLC has not acted in a way any functioning agency would be informing its constituents of new policies or practices," Plaintiffs' Memorandum at 24, are both false and irrelevant.   As described throughout this memorandum, TLC and OATH have carefully undertaken corrective measures to revise the hearing and decisionmaking processes to account for the findings of Nnebe, such as inclusion and consideration of evidence pertaining to specific circumstances surrounding the licensee's arrest and his or her individual driving history.   The issues and evidence considered at the hearings now comport with the holding of Nnebe.   And pre-hearing notices have been amended to include a statement that the hearings have changed due to the Court of Appeals' decision, thus advising drivers of new policies and practices.   See Akinlolu Declaration ¶ 6 and Exhibit A thereto.   Plaintiffs' claims to the contrary strain credulity.

Plaintiffs' submit declarations in support of their motion papers.   However, the relevance of the declarations is not apparent to defendants.   For example, plaintiffs submit a declaration from Melissa Ader describing her opinions regarding the frequency with which suspended TLC licensees schedule post-suspension hearings.   The issue of whether TLC

17

procedures are constitutionally adequate is distinct from the issue of whether drivers actually avail themselves of constitutionally-adequate procedures.

Similarly, the relevance of the declaration of Daniel Ackman describing a bureaucratic error encountered when a driver and then Mr. Ackman attempted to schedule a hearing is also not apparent to defendants.[4]

In summary, none of plaintiffs' applications for permanent injunctive relief meet the necessary standards and the applications should be denied.

## POINT III

## PLAINTIFF'S   APPLICATION   FOR   A PRELIMINARY INJUNCTION SHOULD BE DENIED.

Like their request for a permanent injunction, plaintiffs' request for a preliminary injunction barring all suspensions pending the issuance of their desired permanent injunction is unsupported.[5] "[T]he Court should order that the TLC cease its suspension-on-arrest program at least as to misdemeanor and non-violent felony arrests, until permanent injunctive relief (as set forth below) is ordered an implemented." See Plaintiffs' Memorandum at 15. Plaintiffs also

---

[4] The possibility of erroneous information being provided by telephone has since been eliminated in that hearing requests must be made by email only.  See Akinlolu Declaration ¶ 5.

[5] Plaintiffs' citation for authority on this issue is wholly inapt.  In Basank v. Decker, 2020 U.S. Dist. LEXIS 53191 (SDNY March 26, 2020), plaintiffs were U.S. Immigrations and Customs Enforcement ("ICE") detainees with chronic health conditions that make them immediately vulnerable to severe coronavirus symptoms and even death.  All were detained in a facility with positive tests for COVID-19 and no possibility for "social distancing" and other measures necessary to protect their health. None of the plaintiffs in Basank worked in a position that implicates public trust, and none was detained due to a felony or misdemeanor unrelated to immigration issues.  While the current public health emergency's impact on the criminal justice system may impact license suspensions, this is not akin to the immediate and serious threat to life and health faced by the plaintiffs in Basank v. Decker.

request that TLC "should also enjoin suspensions-on-arrest generally during the COVID-19 crisis," see Plaintiffs' Memorandum at 25.  These requests should be denied.  A preliminary injunction "is an extraordinary remedy that should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990).  To demonstrate entitlement to a preliminary injunction, plaintiffs must demonstrate: "(i) that [they are] likely to suffer irreparable injury if the injunction is not granted, and (ii) either (a) a likelihood of success on the merits of [their] claim, or (b) the existence of serious questions going to the merits of [their] claim and a balance of the hardships tipping decidedly in [their] favor." Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999).   "Irreparable harm" is an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Forest City Daly Hous. Inc. v Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir 1991); see also Faiveley Tramps Malmo AB v. Wabtec Corp., 559 F.3d 110. 118 (2d Cir. 2009).

Plaintiffs cannot meet their burden here either as discussed in Points I and II, *supra*.  Defendants have remedied the established violation and there is no threat of further injury. The Second Circuit has upheld TLC's practice of summarily suspending the license of an arrested driver, stating that "in any given case, an arrest for a felony or serious misdemeanor creates a strong government interest in ensuring that the public is protected in the short term, prior to any hearing."  Nnebe v. Daus, 644 F.3d 147, 159 (2d Cir. 2011), and TLC has already implemented numerous changes in an effort to comply fully with the remand order in Nnebe. Nothing in Nnebe or the 2011 Second Circuit decision supports or authorizes the issuance of a preliminary injunction barring suspensions pending an injunction issued by this Court and indeed plaintiffs do not point to any such authority; surely had the Second Circuit determined that the suspensions needed to be stopped immediately after finding constitutional deficiencies, the

decision would have included a directive enjoining further suspensions until such time as the District Court determined that post-suspension hearings were in compliance with the findings of Nnebe.  The Second Circuit did not do so.  Plaintiffs are not entitled to a preliminary injunction in this regard.

Finally, plaintiffs' request for a preliminary injunction during the pendency of the current COVID-19 emergency should be denied.  This request for relief is based on claims that are wholly unrelated to the issues herein, and plaintiffs have not demonstrated any likelihood of success on the merits on this claim, whatever it may be. Indeed, while the public health crisis has unfortunately affected the timeframe for certain criminal court proceedings as it has innumerable other features of life as we knew it, plaintiffs cannot show that TLC should be less concerned about certain arrestees driving members of the public at this time than it is during normal times.

## **CONCLUSION**

Plaintiffs' applications for permanent and preliminary injunctions should be denied, and this Court should address the remand mandate after consideration of the proposals set forth by the parties.

Dated:          New York, New York
                April 24, 2020

                                        Respectfully submitted,

                                        JAMES E. JOHNSON
                                        Corporation Counsel of the City of New
                                        York
                                        Attorney for Defendants
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2179


                          By:    _____/s/_____
                                        AMY J. WEINBLATT
                                        EDWARD L. MURRAY
                                        Assistant Corporation Counsels

21