# DANIEL L. ACKMAN

ATTORNEY AT LAW

———————

77 Water Street, 8th Floor * New York, NY 10005
TEL: 917-282-8178
E-MAIL: dan@danackmanlaw.com

December 10, 2020

**BY ECF & E-MAIL:**
Hon. Richard J. Sullivan
United States Circuit Judge
Sitting by Designation
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Nnebe v. Daus*, No. 06-cv-4991 (RJS); *Stallworth v. Joshi*, No. 17-cv-7119 (RJS)

Your Honor:

We are co-counsel for plaintiffs in the above referenced actions and write to alert the Court to several significant admissions by the TLC, which defendants omit from their letter of December 3, a letter which also offers no response to the points we raised in our letter of November 30.

First, in the "statement of basis and purpose" introducing the amendment to TLC Rule 68-15, the TLC stated that the amended rule "provides guidance to the ALJs and the Chairperson as to the relevant considerations for assessing public safety risk, including the issues that may be addressed in a hearing, and the proper basis for a decision regarding continued suspension." ECF 478-2, p.2 of 5. But in their December 3 letter, counsel describes the as "codif[ying] the type of individualized review that has been undertaken since the Second Circuit's July 2019 decision in these actions." Also, the new language does not purport to provide any guidance concerning TLC chair's acceptance of rejection of an OATH judge's recommendation. The process that the altered rule ostensibly "codifies" thus remains a complete black box, granting nearly boundless discretion to the final decisionmaker. And that is no mere oversight: Plaintiffs and witnesses before the Commission asked that the regime at least adopt the "clearly erroneous" review standard, which is the ubiquitous norm for reviewing factual determinations. (The Court may recall that it has heard nothing from the current Chair or General Counsel about their understanding of what they should do in reviewing OATH determinations). And, as we have emphasized, the one TLC practice that is public and verifiable has not moved an inch from that which prevailed in the two decades the Constitution was being violated: The TLC still maintains *in every single case* where a driver is reported arrested for a listed crime that a suspension is necessary. And, when challenged, it unfailingly argues that the suspension should be extended.

Second, defendants fail to disclose that when the commissioners voted to enact the proposed Rule 68-15 amendment, two commissioners specifically stated that they were "yes" with the understanding, as Commissioner Marino put it, "These rules are an improvement, but, for the record, more improvements can be made especially with respect to due process." In response, TLC Chair Heredia Jarmoszuk agreed and said, "I just want to acknowledge your [Marino's] comments and I support what you're saying. I can reaffirm my commitment and the agency's commitment to continue to improve."[1]

These remarks have central importance here: Although it is common for agencies addressing a problem to proceed one step at a time, when a federal court is tasked with issuing a decree in a case where there has been a far-reaching constitutional violation has is obliged to afford a remedy that is full and complete. The court must do more than direct the defendant to "sin no more;" it must that ensure that, as a practical matter, the constitutional behavior will not recur. These acknowledgments confirm the need for this Court to fulfill that distinct role.

The TLC's decision to issue the rule precisely as it had drafted and to change nothing in response to the specific concerns raised in public testimony by knowledgeable stakeholders further attests to the agency's blinkered understanding of the problem and need for a remedy. For example, having heard unchallenged testimony that the practice of issuing public decisions that detail unproven and untried allegations deters drivers from requesting hearings, the TLC decided to do nothing. It made that decision despite never denying the premise of the proposed reform and without citing any public safety rationale for its intransigence. The TLC's statement does observe that OATH can order anonymity (even if it has never done so in a summary suspension case). But that remote possibility ignores the fact that these are TLC hearings and if the TLC (or, of course, the City) enacted a rule that the decisions shall be anonymized, they would be.

By the same token, the statement of basis and purpose attached to the final version of the rule ostensibly responds to concerns about the suspension of drivers issued a DAT, but not detained or arraigned. At the October hearing, numerous witnesses explained that arrest charges may be dismissed, reduced or changed at the first court appearance. Witnesses noted as well that the long delays between arrest and arraignment have become much more severe this year. The result is that arrestees, who police officers did not even choose to detain may serve the longest suspensions. The TLC , however, rejects this concern, saying, "[P]roposals regarding suspension on arraignment charges cannot be adopted for administrative reasons beyond the control of TLC. While TLC currently suspends drivers' licenses upon notification by the New York State Department of Criminal Justice Services ('DCJS') of applicable arrest charges, there is no mechanism for DCJS to provide automatic and timely notification of arraignment charges." In other words, the TLC makes no claim it could not develop or operate a regime that did not rely exclusively on DCJS notices, or that there is any statutory requirement that suspension be ordered on an arrest or on an arrest alone. Nor does the TLC deny that, from the standpoint of both fairness and accuracy, arraignment charges are a plainly superior guide to whether the driver poses a genuine threat. In other words, the TLC at long last admits that it reflexively

---

[1] The TLC has not yet published the meeting transcript, but a video was placed on the TLC website yesterday. This exchange takes place at the 39-minute mark. *See* https://livestream.com/nyctaxi/120220commmeeting/videos/214288162

suspends on arrest essentially because of administrative convenience—because that's when it gets the notice. This tendency to settle for the most convenient—but least fair and accurate—process is what this case has been about from the start.[2]

One recent OATH decision illustrates the continuing defects that the TLC refuses to address on its own. The decision concerns a driver named Rajan Neupane who was arrested on September 14 for leaving the scene of an accident—allegedly on August 1— and was issued a DAT requiring him to appear in criminal court three months later. Exh. A. The TLC, as always, suspended him automatically. As it happens, Mr. Neupane requested a hearing, which was held on September 30. On October 21, the OATH judge recommended his reinstatement, determining his licensure while criminal charges were pending would not pose a direct and substantial threat to public safety—and recognizing implicitly that his driving in the *previous* five weeks would not have threatened anyone either. The chair accepted the recommendation on October 26. Despite the post-suspension process performing at peak efficiency, Mr. Neupane was *still* deprived of his property and livelihood for six weeks—all before any accusatory instrument had been filed.

If the TLC did not consider itself confined to the DCJS notice and simply considered other objective facts— no prior arrests, no passenger complaints, a near perfect Uber rating based on 16,000 trips, the issuance of a DAT by the arresting officer—it probably would have not suspended Mr. Neupane at all. At least it might have waited until his first appearance in criminal court. Of course, if Mr. Neupane had not demanded a hearing—as most drivers do not for reasons the TLC has not addressed—he likely would be deprived of his ability to support his family to this day. And such suspensions are so unnecessary: In a five-year period from 2012 to 2016, not a single taxi driver reported by DCJS as having been arrested for leaving the scene of an accident had his license revoked for being convicted of that offense. ECF 454-2.

In short, the admissions surrounding the rule amendment make the case for this Court's exercising its distinct, independent and extensive authority to issue a remedial injunction more compelling and more pressing.

Respectfully submitted,

/s/

Daniel L. Ackman
David T. Goldberg
Shannon Liss-Riordan

cc: All Counsel (by ECF)
encl.

---

[2] In any event, the convenience gap is minimal: While the TLC may receive automatic notice of an arrest, it is also quite easy to track a criminal case to learn if and when an arrestee has been arraigned and on what charge. All the TLC would need do is visit the New York Unified Court System website and look at the case history.