# DANIEL L. ACKMAN

ATTORNEY AT LAW

―――――――

165 BROADWAY • 23RD FLOOR • NEW YORK • NY 10006
TEL: 917-282-8178
E-MAIL: dan@danackmanlaw.com

April 12, 2021

**BY ECF & E-MAIL:**
Hon. Richard J. Sullivan
United States Circuit Judge
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

    Re: *Nnebe v. Daus*, No. 06-cv-4991 (RJS); *Stallworth v. Joshi*, No. 17-cv-7119 (RJS)

Your Honor:

    We are writing on behalf of plaintiffs in the above-referenced actions to respond to defendants' counsels' letter of April 9, which attempts to diminish plaintiff Jonathan Nnebe and to besmirch plaintiffs' counsel, and to cross-move for sanctions. Having finally had the opportunity to review defendants' much-touted rediscovery, it is clear that defendants' intemperate arguments are not only untimely, but wholly unwarranted. Indeed, had defendants' counsel been candid, rather than coy, in their dealings with us on this matter (they refused repeatedly to share or even describe the supposedly inculpatory document), we would have called their attention to the basic misunderstanding of the record on which their claims rest, as we do now below. We took exception to their maximally adversarial and irregular way of proceeding from this episode's outset, Dkt. No. 498, and respectfully submit, in light of all the facts, that it is the sort of "unreasonabl[e]" and unnecessarily "vexatious" litigation for which sanctions pursuant to 28 U.S.C. § 1927 would be appropriate..

    Defendants' counsels' letter recounts that on January 2, 2014 plaintiffs' counsel informed the Court by letter (Dkt. No. 252) that Mr. Nnebe had begun a new career— having completed his training and become a registered nurse—and no longer wished to serve as a class representative.[1] Their narrative is barely accurate as far as it goes, but it is wholly misleading

---

[1] Mr. Nnebe's frustration was understandable as, even at that point, the case had lasted eight years and was still far from over. It is telling, in light of the course of subsequent proceedings, that Mr. Nnebe expressed particular dismay that the never-substantiated allegations that led to his arrest continuing to be publicized (including in lurid fashion in defendants' briefs) when prosecutors had dismissed those charges

when considered in context. First, plaintiffs January 2014 letter was not on the "eve of trial," as defendants would have it, but 10 days before. (The docket contains 45 entries between the letter and the start of trial began). Much more important, the April 9 letter omits everything relevant that ensued, including statements by the Court, honorable actions by Mr. Nnebe, and responsible conduct by plaintiffs' counsel, all of which belie defendants' current broadsides.

Defendants responded to the January 2, 2014 letter by saying that Mr. Nnebe "should be dismissed" as a plaintiff. Dkt. No. 254. The Court did not agree. Instead, the Court issued an order saying that "Plaintiff Nnebe should advise the Court no later than January 8, 2014 as to whether he intends to proceed as a named plaintiff." The issue of his being a class representative, however, "[would] be addressed if and when class certification is reached." Dkt. No. 265. On January 8, we informed the Court by letter that Mr. Nnebe would be in court for the start of the trial and that he was aware that he "must make himself available to testify if called at any part of the trial thereafter." Dkt. No. 282.

As defendants concede, Mr. Nnebe did appear at trial. They note, however, that "plaintiffs' counsel did not call him to testify." That is true. But they again omit the pertinent facts: Plaintiffs' had said all along that they did not intend to call Mr. Nnebe as a witness in a proceeding that was focused on ascertaining the nature of *defendants*' post-suspension practices. Indeed, Mr. Nnebe attended the trial in large part because *defendants insisted that they intended to call him as a witness*. But as it happened, defendants never did.[2]

---

and the TLC had terminated the arrest-based suspension years earlier. The former taxi driver continues to work as a registered nurse.

[2] On January 13, the first morning of the trial, the following colloquy occurred (Tr. 50-51):

> MS. O'SULLIVAN: And Mr. Nnebe, is he tomorrow?
> MR. ACKMAN: We're not planning to call Mr. Nnebe.
> THE COURT: You can call Mr. Nnebe, if you want to.
> MS. O'SULLIVAN: We would like the plaintiffs to produce him. What day is good for Mr. Nnebe?
> MR. ACKMAN: He's here now, but we're not planning on calling him. I think we've made that perfectly clear for some time.
> THE COURT: That's all right. The issue is just to inconvenience him as little as possible.
> MS. O'SULLIVAN: Right. * * *
> THE COURT: So when, in your case, do you plan on calling Mr. Nnebe?
> MS. O'SULLIVAN: When is it good for him?

On January 15 and January 16, defendants' counsel, continued to discuss calling Mr. Nnebe. Tr. 610, 633. But later on January 16, Ms. Weinblatt started to falter, saying, "We are not 100 percent certain we're going to call Mr. Nnebe at this point. But he is a plaintiff in this matter; he's the named plaintiff." Tr. 819. Literally moments later, though, they had become certain that they would not call him. The Court and Ms. Weinblatt had the following exchange (Tr. 820):

> THE COURT: How long a direct do you think it will be for 6 Mr. Nnebe?
> MS. WEINBLATT: Your Honor, we will not call Mr. Nnebe.
> THE COURT: You will not call him.
> MS. WEINBLATT: Right.
> THE COURT: So he can leave.
> MS. WEINBLATT: He's free to go.
> THE COURT: Okay. Mr. Nnebe is here?

In short, Mr. Nnebe did everything the Court required and everything *defendants* asked— even if it turned out they did not know what they wanted from him. Moreover, at that time, the Court made clear that his appearance at the trial would not determine whether he should serve as class representative. It is true that Mr. Nnebe is no longer licensed by the TLC. But if there is any authority that suggests that this fact disqualifies him—when he was licensed at the time of his summary suspension, the time of his post-suspension hearing, the time the *Nnebe* action was filed, and the time he signed sworn statements in the case—defendants make no effort to cite it.

Defendants further assert that "plaintiffs submitted no evidentiary support for their assertions" that all the named plaintiffs are adequate class representatives. Merit aside, this argument is certainly one they could have made in their opposition brief (and to some extent, did), as opposed to six months afterwards. In truth, the record is clear that each of the named plaintiffs in *Nnebe* testified when called at trial and the *Stallworth* plaintiffs all appeared for post-suspension hearings and testified under oath. Defendants found no fault with their testimony. The only new point in counsels' new letter is the suggestion that their troublingly incomplete account of the January 2, 2014 letter "raises serious doubt" that plaintiffs' counsel will adequately represent the class."[3]

The actual facts, however, demonstrate that the only "serious doubt" raised by counsels' instant letter is about defendants' counsel themselves. This is, of course, not the first time that defendants' counsel have misrepresented the record. As the Court has observed, defendants' representations on appeal about the TLC's practices were "very disingenuous or ignorant [compared] to what the accurate state of play was.…" The Court even predicted, "I think there is going to be a price to be paid for that statement to the circuit." Tr. 948, 964. Later, defendants case at trial was built around false testimony by top TLC officials Meera Joshi and Charles Fraser. *See* Dkt. No. 323 at 13 (finding both of their testimony incredible). Had defendants taken an honest stance in the Court of Appeals (or in this Court after the appeal), years of costly proceedings would have been unnecessary. Alas, their most recent submission is along the same lines. For raising factual points without reviewing or acknowledging the full record, for

---

MR. ACKMAN: He is.
THE COURT: You're certainly welcome to stay, Mr. Nnebe; but it sounds like you won't be needed to testify. So you can leave if you'd like, but you're certainly welcome to stay, all right?
MR. NNEBE: I don't have to testify?
THE COURT: You don't have to testify. The city has decided they are not going to call you.

[3] The cases defendants cite are wildly off-point. In *Kulig v. Midland Funding*, LLC, counsel had failed to communicate settlement offers to the named plaintiff in a putative class action. That was serious misconduct, as the court found, since "[t]he discussion and evaluation of settlement offers is perhaps the single most significant point of contact between class counsel and a class representative throughout the pendency of the action" 2014 WL 5017817, *6 (S.D.N.Y. Sept. 26, 2014). In *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, *7 (S.D.N.Y. Sept. 29, 2020), the court found fault with the class representative because it effectively hired two law firms as lead counsel despite the court's explicit direction that it only engage one. Nothing remotely like the conduct in those cases is even alleged here.

misrepresenting that record and for causing still more delay, defendants' counsel should be required to pay sanctions pursuant to 28 U.S.C. § 1927.[5]

Separately, we are submitting a TLC response to a FOIL request dated March 18, 2021 that contains data on arrest-suspensions, convictions of those suspended, re-arrests and the duration of suspensions between 2017 and 2020. Exh.1. Plaintiffs received this document, which updates data from earlier FOIL responses, after the post-remand motions were briefed.

                                      Respectfully submitted,

                                      /s/

                                      Daniel L. Ackman
                                      David T. Goldberg

encl.
cc: All Counsel (by ECF)

---

Plaintiffs have requested that the Court sanction the City for unreasonable and vexatious litigation under 28 U.S.C. § 1927 for filing a one-page letter (and attachment) that the Court expressly authorized the City to file (Doc. No. 504). Sanctions under § 1927 "may be imposed . . . only when there is a finding of conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000). But Plaintiffs have not identified anything that comes close to suggesting bad faith on the City's part. While Plaintiffs' class certification briefing listed Jonathan Nnebe as a party who should represent the class (Doc. No. 463 at 10) and stated that there was "no basis" for the City's argument that the named Plaintiffs "are not interested or not informed about this action[]" (Doc. No. 472 at 9), Plaintiffs had previously represented that Nnebe was "no longer willing to serve in [the] capacity" of class representative, as the City's recent filing reaffirms (Doc. No. 506 at 2). Rather than recognize their own oversight, Plaintiffs have elected to go on the offensive and insist that *the City* has somehow misrepresented the record. It has not. Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for sanctions is DENIED.

SO ORDERED.
Dated: April 13, 2021
New York, New York

                                              RICHARD J. SULLIVAN
                                              UNITED STATES CIRCUIT JUDGE
                                              Sitting by Designation

---

[5] Section 1927 states that "[a]ny attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."