UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN NNEBE, *et al.*,<br><br>                            Plaintiffs,<br><br>   -v-<br><br>MATTHEW DAUS, *et al.*,<br><br>                          Defendants. | No. 06-cv-4991 (RJS) |
| ANTHONY STALLWORTH, *individually and on behalf of all others similarly situated, et al.*,<br><br>                          Plaintiffs,<br><br>   -v-<br><br>MEERA JOSHI, *et al.*,<br><br>                          Defendants. | No. 17-cv-7119 (RJS)<br><br><br><br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Now before the Court is a motion for class certification filed by plaintiffs in tandem cases involving the New York City Taxi and Limousine Commission (the "TLC") and licensed taxi drivers who have been suspended after being charged with crimes.  (06-cv-4991, Doc. No. 462; 17-cv-7119, Doc. No. 80).  In the first case, brought in 2006, *Nnebe v. Daus*, No. 06-cv-4991, plaintiffs Jonathan Nnebe, Eduardo Avenaut, and Khairul Amin, together with the New York Taxi Workers Alliance, brought a putative class action against defendants Matthew Daus, Charles Fraser, Joseph Eckstein, Elizabeth Bonina, the TLC, and the City of New York, alleging that the TLC's policy of summarily suspending taxi drivers upon notification of their arrest violates the United States Constitution, New York state law, and New York City municipal law.  In the second case, brought in 2017, *Stallworth v. Joshi*, No. 17-cv-7119, plaintiffs Anthony Stallworth, Parichay

Barman, Noor Tani, and the New York City Taxi Workers Alliance commenced an action against defendants Meera Joshi, Chris Wilson, Stas Skarbo, and the City of New York, similarly alleging that the TLC's policy of summarily suspending a taxi driver's license upon arrest for any felony charge or certain enumerated misdemeanor charges violates the United States Constitution and New York state law.  The two cases were subsequently consolidated, and the *Nnebe* and *Stallworth* plaintiffs (together, "Plaintiffs") now move to certify a class action against the *Nnebe* and *Stallworth* defendants (together, "Defendants").   For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion.

## I.    BACKGROUND

The Court presumes the parties' familiarity with the facts and history of this case, which have been described at length in prior orders both by this Court and the United States Court of Appeals for the Second Circuit.  *See, e.g.*, *Nnebe v. Daus*, 665 F. Supp. 2d 311, 315–19 (S.D.N.Y. 2009) ("*Nnebe I*"); *Nnebe v. Daus*, No. 06-cv-4991 (RJS), 2014 WL 3891343, at *2–12 (S.D.N.Y. Aug. 8, 2014) ("*Nnebe II*"); *Nnebe v. Daus*, 184 F. Supp. 3d 54, 57–61 (S.D.N.Y. 2016) ("*Nnebe III*"); *Nnebe v. Daus*, 510 F. Supp. 3d 179, 184−88 (S.D.N.Y. 2020) ("*Nnebe IV"); see also Nnebe v. Daus*, 644 F.3d 147, 150–55 (2d Cir. 2011) ("*Nnebe 2011 Appeal*"); *Nnebe v. Daus*, 931 F.3d 66, 70−79 (2d Cir. 2019) ("*Nnebe 2019 Appeal*").[1]

In brief, these cases concern the process due to taxi drivers whose licenses have been summarily suspended following arrests for felonies or serious misdemeanors.  Under section 19-512.1(a) of the New York City Administrative Code (the "Code"), the TLC may suspend a driver, "prior to giving notice and an opportunity for a hearing," "for good cause shown relating to a direct

---

[1] In resolving this motion, the Court has also considered Plaintiffs' brief in support of their motion (Mot., Doc. No. 463), Defendants' brief in opposition (Opp., Doc. No. 469), and Plaintiffs' reply brief (Reply, Doc. No. 472), as well as the parties' submissions concerning Plaintiff Jonathan Nnebe's adequacy to serve as class representative, (Doc. Nos. 506 and 510).  Unless otherwise indicated, all docket citations are to 06-cv-4991.

and substantial threat to the public health or safety."  N.Y.C. Code § 19-512.1(a); *see also Nnebe IV*, 510 F. Supp. 3d. at 184.  The TLC has implemented its summary-suspension powers under section 19-512.1 through a summary-suspension rule (the "Rule").  *Nnebe IV*, 510 F. Supp. 3d. at 184.  The most recent iteration of the Rule went into effect on June 9, 2021.  (Doc. No. 521 at 2 (May 7, 2021 Letter).)

The Rule permits the TLC's Chairperson "to summarily suspend a Driver's License upon notice of the Driver's criminal arrest or citation if the Chairperson believes that the charges, if true, would demonstrate that continued licensure while awaiting a decision on the criminal charges would constitute a direct and substantial threat to public health or safety."  (*Id.*)  A driver whose license has been summarily suspended may request a hearing before an administrative law judge ("ALJ") of the New York City Office of Administrative Trials and Hearings ("OATH").  (*Id.*)  The purpose of such hearing is to determine whether the driver's suspension should be continued pending resolution of the criminal charges.  Following the hearing, the ALJ makes a non-binding recommendation to the TLC Chairperson regarding continued suspension, and the Chairperson makes a final decision regarding the driver's license suspension.  (*Id.*)

A.    **Procedural Background**

In 2009, the Court granted the *Nnebe* defendants' motion for summary judgment, concluding as a matter of law that (1) the TLC did not violate procedural due process by summarily suspending a license without first affording the driver a hearing, (2) the agency's post-suspension hearing satisfied procedural due process, and (3) Plaintiffs had fair and adequate notice that they faced suspension if arrested for certain crimes.  *Nnebe I*, 665 F. Supp. 2d at 323–31, 332–33.  On appeal, the Second Circuit affirmed the Court's finding that the Due Process Clause does not require a pre-suspension hearing.  *Nnebe 2011 Appeal*, 644 F.3d at 158.  Regarding post-

suspension hearings, the Second Circuit vacated and remanded for the Court "to conduct additional fact-finding . . . to determine whether the post-suspension hearing the City affords does indeed provide an opportunity for a taxi driver to assert that, even if the criminal charges are true, continued licensure does not pose any safety concerns." *Id.* at 163.

Following the Second Circuit's remand, the Court held a bench trial between January 13 and 21, 2014 to identify the standard applied at post-suspension hearings, after which it issued findings of fact, *Nnebe II*, 2014 WL 3891343 at *2–12, and conclusions of law, *Nnebe III*, 184 F. Supp. 3d at 61–75. The Court found that the TLC Chair – who retained final decision-making authority over suspensions – considered "*only* whether (a) the suspended driver has been charged with a crime, (b) the charge is still pending, and (c) there is a nexus between the charged crime, as defined by its statutory elements, and public health or safety." *Nnebe III*, 184 F. Supp at 59. The Court concluded that this bright-line test offended neither substantive nor procedural due process. *Id.* at 65–73. But the Court concluded that the notice provided by the TLC with respect to post-suspension hearings held before December 2006 violated procedural due process because, prior to a 2006 Rule amendment, the notices had not identified the "nexus" standard outlined above. *Id.* at 74. The Court therefore scheduled briefing on damages for the pre-2006 notice deprivations, but otherwise entered judgment in favor of the *Nnebe* defendants. And because the *Stallworth* plaintiffs' claims post-dated the 2006 amendments, the Court dismissed the *Stallworth* action for failure to state a claim in light of the Court's ruling in *Nnebe*. (17-cv-7119, Doc. No. 37.)

Both the *Nnebe* and *Stallworth* plaintiffs appealed, and the Second Circuit heard the cases in tandem. In 2019, the Circuit partially reversed the Court's rulings, concluding that both the Rule and the Code require "a meaningful hearing . . . [that] must give the driver an opportunity to show that his or her *particular* licensure does not cause a threat to public safety." *Nnebe 2019*

*Appeal*, 931 F.3d at 83 (emphasis added).  It then remanded for this Court to "fashion a constitutionally adequate process," which, it emphasized, "do[es] not require an inquiry into factual guilt or innocence" but nevertheless must "encompass[] some level of conduct-specific findings based upon the facts underlying the complaint and the driver's history and characteristics." *Id.* at 88.  Finally, while the Circuit affirmed the Court's conclusion that the pre-December 2006 notice was constitutionally inadequate, it held that the post-December 2006 notice was also inadequate. *Id.* at 89.

Following the Second Circuit's 2019 decision, Defendants began updating their suspension procedures.  They ultimately amended the Rule and provided a revised notice to suspended drivers (1) specifying that the TLC bears the burden of proof to establish that the driver's continued licensure poses a threat to public safety, and (2) clarifying the evidence relevant to determining whether a driver poses such a threat. *Nnebe IV*, 510 F. Supp. at 187; (*see also* Akinlolu Decl., Doc. No. 455.)

On December 31, 2020, this Court (1) denied Plaintiffs' request for a preliminary injunction preventing Defendants from implementing the entire suspension-on-arrest program "at least through the COVID-19 crisis," and (2) granted in part and denied in part Plaintiffs' request for a permanent injunction consisting of an assortment of reforms aimed at improving the suspension process. *Nnebe IV*, 510 F. Supp. at 188−98.  In essence, the Court concluded that, although Defendants' revised pre-hearing notices and amended Rule met the constitutional requirements set out in the Second Circuit's 2019 decision, Defendants' timeline for making suspension decisions should be accelerated. *Id.* at 191−96.  The Court therefore ordered Defendants to modify the timeframe for rendering suspension decisions, requiring that ALJs submit their recommendation within ten business days of the suspension hearing and that the TLC

Chairperson render his or her final decision within five business days thereafter.  *Id.* at 196–97. The latest amendment of the Rule implements this accelerated timeframe.  (May 7, 2021 Letter.)

### B.      Motion for Class Certification

The *Nnebe* plaintiffs had previously moved for class certification, (Doc. No. 37), but the Court denied that motion as moot when it granted summary judgment in favor of the *Nnebe* defendants. *See Nnebe I*, 665 F. Supp. 2d at 334.  In its 2019 decision, the Second Circuit instructed this Court to reconsider the plaintiffs' motion for class certification, though it "express[ed] no view on the class certification and damages issue."  *Nnebe 2019 Appeal*, 931 F.3d at 88 n.26.

Plaintiffs (that is, the *Nnebe* and *Stallworth* plaintiffs together) now move to certify a class defined as "all TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until the present (or until Defendants have implemented a post-suspension hearing process as ordered by the Court)."  (Mot. at 4−5.)  They propose the following class representatives:

- **Jonathan Nnebe:**  Nnebe's license was suspended by TLC on May 30, 2006 based on his arrest on a misdemeanor assault charge.  Following a post-suspension hearing on June 8, 2006, a TLC ALJ recommended (and the TLC Chair accepted) that his suspension be continued.  As a result, his taxi license was suspended for approximately four months. (Mot. at 5.)

- **Eduardo Avenaut:**  Avenaut's license was suspended on July 20, 2006, based on his arrest on a misdemeanor assault charge.  He did not request a hearing.  The criminal charge was dismissed on October 24, 2006, at which point TLC reinstated his license.  (Mot. at 5.)

- **Khairul Amin:**  Amin's license was suspended on June 14, 2005, following his arrest arising out of a dispute with his landlord.  After a post-suspension hearing, the TLC decided

to continue his suspension.  On August 24, 2005, he accepted an adjournment in contemplation of dismissal so he could return to work, and the criminal charges were formally dropped on February 23, 2006.  (Mot. at 6.)

- **Anthony Stallworth:** Stallworth's license was suspended on August 3, 2017, following his arrest for leaving the scene of an accident.  After a post-suspension hearing on September 26, 2017, a TLC ALJ recommended that his license be reinstated, but the TLC Chair rejected that recommendation.  The criminal charges were dismissed in December 2017, at which point TLC reinstated his license.  (Mot. at 6.)

- **Parichay Barman:** Barman's license was suspended on January 13, 2017, following his arrest for leaving the scene of an accident.  After a post-suspension hearing on February 21, 2017, an ALJ recommended (and the TLC Chair accepted) that Barman's suspension continue.  On June 20, 2017, Barman pleaded guilty to a lesser, non-criminal violation, and TLC reinstated his license.  (Mot. at 6.)

- **Noor Tani:** Tani's license was suspended on April 7, 2017, following his arrest for leaving the scene of an accident.  After a post-suspension hearing on Mary 15, 2017, an ALJ recommended (and the TLC Chair accepted) that Tani's suspension be continued.  On June 27, 2017, Tani pleaded guilty to a lesser, non-criminal violation, and TLC reinstated his license.  (Mot. at 6–7.)

These proposed representatives include plaintiffs from both the 2006 *Nnebe* action and the 2017 *Stallworth* action; each proposed representative was, "at the time of his suspension, a driver licensed by the TLC." (*Id.* at 5.)  Plaintiffs further allege that "[t]he TLC suspended each of their licenses based on an arrest, served on them a constitutionally defective pre-hearing notice, and afforded them a post-suspension hearing process that denied them due process of law." (*Id.*)

Plaintiffs also request that their counsel, Daniel Ackman, Shannon Liss-Riordan, and David T. Goldberg, be appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).  (Mot. at 13–15.)

## II.   LEGAL STANDARD

Before the Court may certify a class action, the proposed class must meet the following Rule 23(a) prerequisites: "(1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *see also Cordes & Co. Fin. Sen's., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 98–99 (2d Cir. 2007).

If the Rule 23(a) criteria are satisfied, the proposed class must also meet at least one of the criteria provided in Rule 23(b).  *See Cordes*, 502 F.3d at 104.  Here, Plaintiffs seek certification under Rule 23(b)(1)(A), 23(b)(2), or 23(b)(3).  (Doc. No. 463 at 7.)  Rule 23(b)(1)(A) provides that a class action can be maintained if prosecuting separate actions would create the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  Rule 23(b)(2) provides that class certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Finally, Rule 23(b)(3) allows for class certification if common questions "predominate over any questions affecting only individual members" and if class

resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A plaintiff moving for class certification must establish each of the applicable Rule 23 requirements by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir. 2008).  In order to certify a class, the Court must "resolve[] factual disputes relevant to each Rule 23 requirement" and find that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006).  The district court is afforded broad discretion in class certification questions because it is often in the best position to assess the propriety of the class action.  *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,* 262 F.3d 134, 139 (2d Cir. 2001).  Additionally, the district court is empowered to "alter or modify the class, create subclasses, and decertify the class whenever warranted."  *Id.*

### III.  DISCUSSION

As an initial matter, the Court notes that Plaintiffs' paltry submission in support of class certification would support the denial of their motion on that basis alone, as they have utterly failed to carry their burden of demonstrating that the Rule 23 requirements are satisfied as to the class they propose – which seeks to litigate both liability and damages on a classwide basis for over 20,000 putative class members with countless varying individual circumstances bearing on their entitlement to the relief requested.  They have proffered virtually no evidence in support of their motion; their opening brief has no accompanying exhibits, declarations, testimony, or affidavits. Their papers are instead based largely on conclusory allegations that the Rule 23 requirements have been satisfied, with an occasional citation to evidence submitted in support of their separate motion for an injunction.  (*See* Mot. at 3–4, 8–20).  Plaintiffs appear to simply assume that they

are automatically entitled to the certification of their proposed class in light of the Second Circuit's conclusion that TLC's notice and hearing procedures were constitutionally deficient.

But "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d at 41.  Moreover, Local Rule 7.1(a)(3) requires that all motions be accompanied by "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion," L.R. 7.1(a)(3).  In other words, while the timing of this motion is unusual in that it follows a bench trial and two appellate determinations on the merits, the Court is not required to scour the record of this long-running case to find the evidentiary support necessary to meet Plaintiffs' burden on their separate motion for class certification.  *See Toner v. United Bhd. of Carpenters*, 96-cv-23 (SHS) (RLE), 1999 WL 178784, at *1 (S.D.N.Y. Mar. 31, 1999) ("The effect of [Plaintiff's] failure to observe [Local Rule 7.1] is to unfairly and unreasonably shift the burden of articulating [Plaintiff's] arguments to the party opposing the motion or to the court." (internal quotation marks and alterations omitted)).

The Court is nonetheless mindful of the history of this long-running case and the unique posture in which this motion for class certification is now before it.  After careful consideration, therefore, the Court concludes that although Plaintiffs have not met the Rule 23 requirements for certifying a class as to liability *and* damages, the Rule 23 requirements are satisfied for a liability class.  While Plaintiffs did not request that the Court alternatively certify a class as to liability alone – and the Court is under no obligation to bear the Plaintiffs' burden of carving out an

10

appropriate class to avoid certification problems – the Court is nevertheless empowered, under Rule 23(c)(4), to "certify a class on a particular issue."  *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) ("*In re Nassau I*").  For the reasons explained below, the Court determines that certifying a liability class is appropriate.

### A.  Rule 23(b)(3) Requirements

The Court begins its analysis with the Rule 23(b)(3) requirements, because one of the primary disputes between the parties concerns the extent to which individualized issues predominate over common ones.  A court may certify a class under Rule 23(b)(3) if "(1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)).

### 1.  *Predominance*

The "predominance" requirement, which is "far more demanding" than the related commonality inquiry, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997), is satisfied if:  "(1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only to individualized proof."  *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017) (internal quotation marks and alterations omitted).

Here, Plaintiffs contend that common issues of law and fact predominate over individualized issues because the "primary issue" – whether the TLC's post-suspension hearing process was unconstitutional during the class period – "is common to the entire class and has already been decided in Plaintiffs' favor."  (Mot. at 17.)  As an initial matter, even though the constitutional issue in this case has already been resolved, Plaintiffs are correct that it is still

relevant to the predominance analysis; "the fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis." *In re Nassau I*, 461 F.3d at 228. Rather, "[j]ust as much as do contested issues, resolved issues bear on the key question that the [predominance] analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *Id.* Defendants do not contest this, but instead argue that individualized damages inquiries would nonetheless predominate over the common constitutional issue.[2]

It is well-established, however, that "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)." *Roach*, 778 F.3d at 409. "Common issues – such as liability – may be certified, consistent with Rule 23, even where other issues – such as damages – do not lend themselves to classwide proof." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). Further, a district court may use Rule 23(c)(4) to "certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *In re Nassau I*, 461 F.3d at 227; *see also* Fed. R. Civ. P. 23(c)(4) (providing that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues").

The Second Circuit's decision in *In re Nassau I* is instructive, as it bears important similarities to the present case. In 1999, a district court held that Nassau County Correctional Center's blanket strip search policy for newly admitted misdemeanor detainees was

---

[2] Defendants also argue that Plaintiffs are barred from presenting evidence of compensatory damages because Plaintiffs "fail[ed] to comply with FRCP 26(a)(1)(A)(iii) disclosures." (Opp. at 14.) But as Plaintiffs rightly point out, Defendants failed to raise this argument at various earlier stages in this litigation, thus forfeiting it. (Reply at 7 n.13.)

unconstitutional.  *In re Nassau I*, 461 F.3d at 222.[3]  Shortly thereafter, plaintiffs commenced a putative class action, alleging that they had been arrested on misdemeanor charges unrelated to weapons or drugs and were strip-searched under the defendants' unconstitutional blanket policy. *Id.*  The district court denied certification under Rule 23(b)(3), determining that defendants had already conceded that the policy was unconstitutional in light of the earlier district court's ruling, and that the remaining individualized issues of causation and damages therefore predominated.  *Id.* at 223.  The Second Circuit reversed, holding that the district court erred in excluding the major liability issue from the predominance analysis – even though it had already been resolved.  *Id.* at 229.  The Circuit further held that the district court erred in failing to certify a class on the issue of liability pursuant to Rules 23(b)(3) and 23(c)(4), explaining that "[w]hen plaintiffs are allegedly aggrieved by a single policy of defendants, such as the blanket policy at issue here, the case presents precisely the type of situation for which the class action device is suited."  *Id.* at 226–28. It therefore remanded to the district court with directions to certify a class on the issue of liability, and to reconsider whether to certify a class as to damages as well.  *Id.* at 231.

Here, the primary issue – already resolved in Plaintiffs' favor – is whether TLC's post-suspension notice and hearing procedures were unconstitutional during the class period.  And although Defendants have pointed out significant individualized issues as to *damages*, they identify none as to *liability* that would be sufficient to defeat certification.  *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) ("It is primarily when there are significant

---

[3] The Second Circuit affirmed the district court's holding that the strip searches violated clearly established constitutional law, *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001); that decision was later abrogated in light of an intervening change in law, *In re Nassau Cty. Strip Search Cases*, 639 F. App'x 746 (2d Cir. 2016).

individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." (internal quotation marks and citation omitted)).

In fact, Defendants appear to concede that they are at least liable for the procedural due process violation stemming from the constitutionally insufficient pre-hearing notice; they acknowledge that the "proposed class members each received a defective hearing notice," and further "recognize that a finding of a procedural due process violation could result in nominal damages awards without additional evidence of injury."[4]  (Opp. at 1, 18 n.13.)  Moreover, although not all class members availed themselves of a post-suspension hearing, those who did clearly suffered a procedural due process violation based on the constitutionally inadequate hearing.  *See Nnebe 2019 Appeal*, 931 F.3d at 88 ("find[ing] a due process violation" based on Defendants' failure to provide a meaningful post-deprivation hearing).  Finally, there would be no need for "individualized proceedings to determine class membership," as all drivers were subject to the same post-suspension process and TLC maintained records of drivers who received a pre-hearing notice (and those who requested a hearing).  *In re Nassau I*, 461 F.3d at 229 ("Since defendants possess records of misdemeanor detainees strip searched during the policy period, determining class membership would be simple."); *see also* Section III.B.1, *infra*.  Accordingly, as to liability, common issues predominate.

The Court agrees, however, that proving damages in this case would be highly individualized.  Plaintiffs seek compensation for lost income and emotional distress resulting from

---

[4] Even if Plaintiffs' suspensions were justified, nominal damages are available for the deprivation of the right to procedural due process. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, . . . the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." (internal citations omitted)).

the lack of adequate notice and a meaningful post-suspension hearing.[5]  (Mot. at 18.)  Although Defendants concede – as they must – that the drivers received procedurally deficient post-suspension process, "the deprivation of a hearing alone does not necessarily proximately cause a loss of income, since a hearing in a particular case may well have led to a continued suspension in any event."  *Nnebe 2019 Appeal*, 931 F.3d at 88 n.26; *see also Warren v. Pataki*, 823 F.3d 125, 143 (2d Cir. 2016) ("In the procedural due-process context, actual damages are based on the compensation for injuries that resulted from the plaintiff's receipt of deficient process.")  Thus, for each class member, the Court must determine "whether a different outcome would have been obtained had adequate procedural protections been given."  *Warren*, 823 F.3d at 143.  "If the outcome would not have been different, the plaintiff is presumptively entitled to no more than nominal damages."  *Id.*

Plaintiffs unconvincingly argue that classwide methods may be used to determine these individual damages, asserting that "the bulk of individual damages can be easily resolved based on [D]efendants' own records."  (Mot. at 19.)  Specifically, Plaintiffs contend that entitlement to compensatory damages for lost income can be shown by "reference to which suspended drivers were later reinstated," because, by reinstating those drivers, TLC ostensibly determined that the drivers did not pose a threat to public safety.  (Mot. at 18 n.6.)  But in the vast majority of cases, TLC reinstated licenses *after* the relevant criminal case resolved in the driver's favor, (Gonzalez Decl. ¶ 12, Doc. 466), which would not prove that the driver was erroneously deprived of his

---

[5] Plaintiffs also assert that they may be entitled to classwide punitive damages, but they make no attempt to show how such damages are warranted.  (Mot. at 10.)  Generally, punitive damages cannot be assessed against a municipality "unless expressly authorized by statute."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261 (1981).  And even where authorized, punitive damages under section 1983 are available only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Because Plaintiffs do not even attempt to argue the basis for punitive damages or respond to these points in their Reply, the Court concludes that classwide punitive damages are unavailable.

license *pending* the outcome of the criminal case.  Moreover, the individual circumstances of each plaintiff's suspension vary significantly; some were charged with violent crimes such as arson and rape, while others were charged with potentially less serious crimes, like leaving the scene of an accident.  The Court therefore cannot merely use the fact that TLC ultimately reinstated a driver's license as a proxy for erroneous deprivation, because "[s]uspension pending resolution of charges may be entirely appropriate in some number of cases that do not ultimately result in conviction and revocation of licenses."  *Nnebe 2019 Appeal*, 931 F.3d at 85.

The lost income calculation is further complicated by other individual differences among class members:  Some drivers were not actively working as TLC drivers at the time they were suspended, having reported no driving activity during the months before their arrests and suspensions, (Gonzalez Decl. ¶ 14); some were already under other license suspensions for unrelated reasons at the time of their arrest suspensions, (Gonzalez Decl. ¶ 13); and some drivers' licenses were expired at the time of their suspensions, (Gonzalez Decl. ¶ 12).  In their Reply, Plaintiffs again gloss over these individualized inquiries, instead simply reiterating their arguments that the Court could use statistical likelihoods of reinstatement or "recognize that any driver who was ultimately reinstated at least presumptively did not pose a substantial safety threat in the interim either."  (Reply at 5–6.)[6]  But whether individual drivers lost wages as a result of the deficient notices provided by the TLC is not so easily ascertainable without individualized hearings.

---

[6] In a letter to the Court, Plaintiffs cite to a recent decision, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 551–52 (S.D.N.Y. 2021), for the proposition that "the possible need [for] individualized damages do not bar certification of a plaintiff class."  (January 13, 2022 Letter, Doc. No. 530).  While the Court agrees with this general proposition, *In re Namenda* involved a class action alleging violations of antitrust and consumer protection laws; the court's analysis of whether there were damages attributable to the plaintiff's theory of antitrust liability is wholly inapplicable here.

As to emotional distress damages, Plaintiffs assert that "garden variety pain and suffering may also be addressed on a class basis." (Mot. at 10 (citing *In re Nassau Cnty. Strip Search Cases*, 99-cv-2844 (DRH), 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ("*In re Nassau II*")).)  *In re Nassau II*, however, is clearly inapposite.  After the Second Circuit remanded for reconsideration of class certification in the strip search case, the district court certified a general damages class, concluding that that the class was entitled to compensatory, not merely nominal, damages for harm to human dignity.  *In re Nassau II*, 2008 WL 850268, at *5–7.  But while presumed damages may exist for an unlawful strip search – which by its very nature is "invasive," "demeaning," and "dehumanizing," *id.* at 5 (internal quotation marks omitted) – this presumption of emotional harm is unavailable for violations of procedural due process, *Carey v. Piphus*, 435 U.S. 247, 263–64 (1978).  Rather, each plaintiff must establish that "he suffered mental and emotional distress caused by the denial of procedural due process itself" – not by other factors, such as the arrest itself or underlying criminal proceeding.  *Warren*, 823 F.3d at 143.  Plaintiffs make no attempt to explain how such harm could be calculated on a classwide basis.[7]

In sum, the Court concludes that Plaintiffs meet the predominance requirement as to a liability class, but that any claims for compensatory damages by class members must be made in individualized hearings.  The Court therefore proceeds to analyze whether the remaining Rule 23 requirements are met to certify the class as to liability.

### 2.  *Superiority*

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "In analyzing that

---

[7] Again, neither party disputes that class members would be entitled to nominal damages for the violation of procedural due process without proof of additional injury.  (*See* Opp. At 18 n.13 (conceding that "a finding of a procedural due process violation could result in nominal damages awards without additional evidence of injury").)

[requirement], courts must consider four nonexclusive factors:  (1) the interest of the class members in maintaining separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re Nassau I*, 461 F.3d at 230 (internal quotation marks omitted.)  Here, the Court concludes that efficiency and fairness favor class certification as to liability.

First, "without class notification, most putative class members will not even know that they suffered a violation of their constitutional rights." *Id.* at 229.  The class action mechanism therefore ensures that class members will be aware of and able to vindicate those rights.  Second, as the unconstitutionality of the TLC's post-suspension process has already been decided, class certification as to liability is particularly appropriate here to simplify and streamline the litigation process. *See id.*  Finally, a liability class would be manageable, as liability can readily be proven on a classwide basis.[8]  While Defendants argue that the proposed class is unmanageable due to the individualized damages issues, (Opp. at 18), these manageability concerns are adequately addressed by certifying the class as to liability only and allowing class members to seek compensatory damages through individual proceedings.[9]

---

[8] To the extent any issues remain as to liability (*see* Opp. at 5 n.2 (disputing whether "the entire class was in fact denied an adequate hearing")), such issues can be managed on a classwide basis by amending the class definition or creating subclasses. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (discussing the "number of management tools available to a district court" in managing a class action).

[9] As discussed in Section III.A.1, *supra*, if a judgment were entered in favor of Plaintiffs on liability, nominal damages would be available on a classwide basis without proof of additional injury.  *See Carey*, 435 U.S. at 266; *see also Cummings v. Connell*, 402 F.3d 936, 940 (9th Cir. 2005) ("[W]hen nominal damages are awarded in a civil rights class action, every member of the class whose constitutional rights were violated is entitled to nominal damages."). Compensatory damages, however, would need to be proven individually.

18

**B. Rule 23(a) Requirements**

In addition to meeting the requirements of Rule 23(b)(3), the class must also meet the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Further, "[t]hough not expressly stated in Rule 23, many courts have read an implicit requirement of class 'definiteness and ascertainability' into the Rule." *Enea v. Bloomberg, L.P.*, No. 12-cv-4656 (GBD) (FM), 2014 WL 1044027, at *3 (S.D.N.Y. Mar. 17, 2014) (citing 1 Newberg on Class Actions §§ 3:1, 3:2 (5th ed. 2013)); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 45 ("[A]scertainability of the class is an issue distinct from the predominance requirement for a [Rule 23](b)(3) class.").

     1.  *Ascertainability*

Plaintiffs assert, and the Court agrees, that the class is easily ascertainable because TLC has multiple records by which it can identify class members. (Mot. at 8.) Specifically, for every driver whose license is suspended based on an arrest, TLC (1) receives an arrest notice from the Division of Criminal Justices Services containing the driver's name, date of birth, and address, and (2) checks whether the arrestee is a TLC licensee and, if so, sends a suspension notice to the address on file (and sometimes an e-mail, too). (Mot. at 8); *see also Nnebe II*, 2014 WL 3891343, at *6–7. If the driver requests a hearing, TLC also sends a hearing notice, holds a hearing, and receives an ALJ report and recommendation. *Nnebe II*, 2014 WL 3891343, at *6–7. Finally, in response to Freedom of Information Law ("FOIL") requests, TLC has been able to state the precise number of arrest suspensions on record for various years. (*See* Doc. No. 454.) Defendants do not dispute that TLC could easily ascertain the identity of class members based on its records. The Court therefore concludes that Plaintiffs' proposed class is sufficiently definite and ascertainable.

### 2. *Numerosity*

There is no dispute that the proposed class, which is composed of approximately 20,000 taxi drivers, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."). The Court therefore concludes that the proposed class satisfies Rule 23(a)'s numerosity requirement.

### 3. *Commonality and Typicality*

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)).

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, class members must "have suffered the same injury," and their claims "must depend upon a common contention . . . [that] is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id. a*t 359 (internal quotation marks and alterations omitted).

As with predominance, the commonality requirement is easily met here. *See Amchem*, 521 U.S. at 623–24 (explaining that the predominance requirement is "far more demanding" than the related commonality inquiry). As explained above, the common issue in this case is whether TLC's post-suspension notice and hearing process was constitutionally deficient during the class

period, and it is this uniform, unconstitutional practice that forms the basis of Plaintiffs' alleged injuries. Commonality is therefore plainly satisfied. *See Betances v. Fischer*, 304 F.R.D. 416, 427 (S.D.N.Y. 2015) ("Based on the very definition of the class, all putative class members have suffered injuries from the same 'general policy.'"); *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The fact that the claims of the proposed class 'stem from the same alleged unconstitutional conduct of the defendants' proves the existence of common questions of law or fact.").

Typicality is also clearly met for the proposed class. Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks and citation omitted). Here, the claims of the named plaintiffs are each predicated on TLC's unconstitutional post-suspension notice and hearing procedures and are thus typical of the class. *See id.*; *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496, 502 (E.D.N.Y. 2018) ("The commonality/typicality test has traditionally been described as 'easily satisfied' by a single common issue.").[10]

### 4. *Adequacy of Class Representatives*

To satisfy Rule 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In*

---

[10] To the extent that Defendants raise objections to commonality and typicality based on the relief sought, (*see* Opp. at 5–6), the Court has resolved such issues in the context of its Rule 23(b)(3) predominance analysis, *see* Section III.A.1, *supra*.

*re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, Plaintiffs assert that "each of the named plaintiffs is an adequate representative of the proposed class because each was subject to the same unlawful conduct as other class members and suffered the same injuries that the action seeks to remedy." (Mot. at 12.)  Plaintiffs further submit that "there are no actual or potential conflicts of interest between the named plaintiffs and the proposed class as every victim of the suspension-on-arrest policy suffered the same principal harm." (*Id.*)

But Defendants point out several issues with Plaintiffs' conclusory assertions of adequacy. (Opp. at 6.)  First, Plaintiffs have failed to proffer any allegation or evidence that the class representatives remain informed of the litigation or have any interest in pursuing the class's claims. (Opp. at 6.)  Second, several of the named plaintiffs have not driven for years and are no longer licensed by TLC, further indicating that they have lost interest in the case.  (*See* Gonzalez Decl. ¶¶ 32−35 (Jonathan Nnebe's license expired in 2013, after TLC lifted his suspension, and he has not renewed his license since); *id.* ¶¶ 42−45 (Noor Tani has not renewed his licensed since it expired in January 2020); *id.* ¶¶ 39−41 (Eduardo Avenaut has not renewed his license since it expired in May 2020).)  Third, Defendants point the Court to a letter from Plaintiffs' counsel, dated January 2, 2014 (approximately ten days before trial), in which Plaintiffs represented that Nnebe had begun a new career and was no longer interested in serving as a class representative.  (Doc. No. 506.) Plaintiffs now characterize this letter as an expression of Nnebe's "understandable" frustration with the long duration of the litigation, (Doc. No. 510 at 1 n.1), but again have submitted no affidavit or declaration by Nnebe supporting their assertion that he is willing to represent the class despite earlier representations to the contrary.

As an initial matter, the Court agrees that Plaintiffs' inexplicable failure to provide a single declaration or affidavit in support of their motion is concerning.   As with all other Rule 23 requirements, Plaintiffs must establish adequacy by a preponderance of the evidence, *see Teamsters,* 546 F.3d at 202, and proposed class representatives thus typically submit a declaration or affidavit "demonstrating their willingness and ability to take an active role in pursuing the case," 1 McLaughlin on Class Actions § 4:27 (17th ed.).   This failure, combined with the facts described above, suggest that some of the named plaintiffs may have lost interest in the litigation, giving the Court pause as to whether Plaintiffs have carried their burden to demonstrate adequacy.

But again, this case has a unique history, and the posture of the instant motion is unusual. It is clear that Plaintiffs have failed to meet their evidentiary burden to demonstrate adequacy to litigate classwide *damages*.   But as to a liability class, the adequacy of the named representatives is arguably proven by the very fact that they have already litigated the constitutional deficiency of the post-suspension notice and hearing procedures – and won.   The purpose of the adequacy requirement is to ensure that the interests of absent class members are adequately protected:   "If the absent members are to be conclusively bound by the result of an action prosecuted or defended by a party alleged to represent their interests, basic notions of fairness and justice demand that the representation they receive be adequate."   7A Wright & Miller, Fed. Prac. & Proc. Civ. § 1765 (4th ed.).   Where the named plaintiffs have already delivered, however, there is no risk to absent class members' interests, nor can it be said that the named plaintiffs lack interest in "vigorously pursuing the claims of the class."   *In re Literary Works*, 654 F.3d at 249.

Accordingly, while the Court notes the significant shortcomings in Plaintiffs' motion, it nonetheless concludes that the adequacy requirement has been met for purposes of a liability class.

5.   *Adequacy of Counsel*

Rule 23(a)(4) also requires that a class is adequately represented by the proposed class counsel.  Plaintiffs' attorneys must be "qualified, experienced, and generally able to conduct the proposed litigation."  *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 599 (S.D.N.Y. 1992).  "These standards are easily met, with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary."  1 Newberg on Class Actions § 3:72 (5th ed.).

Here, Plaintiffs propose that the class be represented by Danial Ackman, Shanna Liss-Riordan, and David T. Goldberg.  (Mot. at 13–15.)  All three lawyers are highly experienced class action attorneys, and both Mr. Ackman and Mr. Goldberg have specialized experience in civil rights litigation.  *Id.*  While Plaintiffs again fail to support their motion with declarations or affidavits attesting to counsel's experience, they cite to various cases litigated by the three attorneys, including complex class actions, (Mot. at 13–15), supporting a finding of adequacy.  *See Pope v. Harvard Banschares, Inc.*, 240 F.R.D. 383, 391 (N.D. Ill. 2006) ("The fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again, absent persuasive evidence to the contrary." (internal quotation marks omitted).)

Defendants assert various alleged deficiencies with class counsel – such as mixed success in past cases, "inattention to court orders and directives," and "misrepresentations to the Court" – but none of these alleged deficiencies constitute a basis for finding inadequacy.  (*See* Opp. at 19–23.)  More importantly, they are largely undercut by the fact that Mr. Ackman and Mr. Goldberg have been involved in this litigation for over ten years and have been largely successful on behalf of the named plaintiffs.   Plaintiffs' attorneys are therefore adequate to protect the interests of the proposed class.

*          *          *

Accordingly, for the above reasons, the Court concludes that Rules 23(a) and (b)(3) are satisfied as to a liability class.

### C.  Rule 23(b)(2)

In addition to seeking certification of a damages class under Rule 23(b)(3), Plaintiffs also seek to certify an injunctive class under Rule 23(b)(2).[11]  (Mot. at 7.)  "Rule 23(b)(2) allows class treatment when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  *Dukes*, 564 U.S. at 360 (internal quotation marks omitted).

But here, certification of an injunctive class under Rule 23(b)(2) class would lack any "practical significance" and instead be "largely a formality."  *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973).  In *Galvan*, the Second Circuit concluded that class certification under Rule 23(b)(2) was unnecessary because, after the plaintiffs had won summary judgment on a constitutional claim, the government "withdrew the challenged policy," "stated it did not intend to reinstate the policy," and "made clear that it understands the judgment to bind it with respect to all claimants."  *Id.* at 1261.

Similarly here, the Second Circuit has already held that Defendants' notice and hearing procedures were constitutionally deficient, and since that ruling, Defendants have stopped enforcing those procedures and worked to fashion a constitutionally adequate process for arrest

---

[11] Plaintiffs *also* move to certify a class under Rule 23(b)(1)(A), but Plaintiffs never sought to certify such a class in their operative complaint or in their original motion for class certification.  (*See* Docs. No. 42, 46, 47; 17-cv-7119, Doc. No. 1.)  The Court therefore declines to permit Plaintiffs to raise this alternative ground for class certification at this late stage in the litigation. *See Morgan v. Metro. Dist. Comm'n*, 222 F.R.D. 220, 235 n.8 (D. Conn. 2004) (denying as untimely a request for certification under Rule 23(b)(1)(A) that did not appear in the complaint but instead was raised for the first time in a motion for class certification).

suspensions.  Although the relief sought is more than mere non-enforcement, involving some degree of "complex, affirmative relief," *Casale v. Kelly*, 257 F.R.D. 396, 407 (S.D.N.Y. 2009) (explaining that this factor could militate against application of *Galvan*), this Court has since ruled on the merits of Plaintiffs' motion for a permanent injunction and concluded that Defendants' updated procedures comply with due process and the Second Circuit's ruling in all respects except one – the timeline, which Defendants have since updated.  *See Nnebe IV*, 510 F. Supp. 3d at 191–96; (May 7, 2021 Letter.)  Further, Defendants have implemented these updated procedures with respect to *all* TLC drivers (not just the individual plaintiffs.)  Accordingly, the "prospective relief will benefit all members of [the] proposed class to such an extent that the certification of a class would not further the implementation of the judgment." *Lisnitzer v. Zucker*, 983 F.3d 578, 588 (2d Cir. 2020).[12]

The Court therefore concludes that certification under Rule 23(b)(2) is unnecessary and unwarranted.

### D.  Proposed Class Definition

Having decided to certify a liability class under Rule 23(b)(3), the Court next considers "whether the definition of the class proposed by plaintiffs . . . is an appropriate one." *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 420 (S.D.N.Y. 2012).

As noted, Plaintiffs have proposed a class definition that includes "all TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until the present (or until Defendants have implemented a post-suspension hearing process as ordered by the Court)." (Mot. at 4−5.)  Defendants contend

---

[12] Nor is Rule 23(b)(2) "class certification necessary to prevent the action from becoming moot" before receiving a ruling on the merits.  *Casale*, 257 F.R.D. at 407.  Plaintiffs have already received a Second Circuit ruling on the merits of their claim that Defendants' practices were unconstitutional, and this Court has also already ruled on their request for permanent injunctive relief.

that this class definition is overbroad because any relevant class period should end, at the latest, on February 18, 2020 – the date that TLC began sending out notices in line with the Second Circuit's 2019 mandate. (Opp. at 12; Akinlolu Decl. ¶ 6, Ex. A, Doc. No. 467.) Plaintiffs do not dispute this proposed end date. (*See* Reply.)

"A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also Brooklyn Ctr.*, 290 F.R.D. at 420 ("Under Rule 23, district courts have the power to amend class definitions or decertify classes as necessary."). Accordingly, the Court revises the class definition so that it is limited to "all TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until February 18, 2020."

## IV.   CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiffs' motion for class certification is GRANTED as to the issue of liability and DENIED in all other respects. The following class is hereby certified under Rule 23(a) and 23(b)(3):

1. **Class**: "All TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until February 18, 2020."

2. **Class Representatives**: Jonathan Nnebe, Eduardo Avenaut, Khairul Amin, Anthony Stallworth, Parichay Barman, and Noor Tani are appointed as the Class Representatives.

3. **Class Counsel**: Daniel Ackman, Shannon Liss-Riordan, and David T. Goldberg are appointed as class counsel.

IT IS FURTHER ORDERED THAT the parties shall meet and confer and submit an agreed-upon form of notice that satisfies Rule 23(c)(2)(B).  In the event that the parties are unable to agree on specific language in the proposed notice, they shall submit a joint document in Word format that sets forth the areas of disagreement, with Plaintiffs' proposed language designated in red and Defendants' proposed language designated in blue, along with a joint letter setting forth the reasons for their respective proposals.  The parties shall also jointly submit a plan for the dissemination of the proposed notice, and must work together to generate a class list to be used in disseminating notice.  The proposed notice and plan of dissemination, as well as a proposed order granting approval, shall be filed with the Court on or before **March 31, 2022.**

IT IS FURTHER ORDERED THAT the parties shall appear for a conference in Courtroom 21C, 500 Pearl Street, New York, N.Y. 10007, on **Tuesday, April 19, 2022, at 10:00am**, to discuss next steps in the litigation, including how the individualized hearings as to damages shall proceed.

The Clerk of Court is respectively directed to terminate the motion pending at 06-cv-4991, Doc. No. 462 and 17-cv-7119, Doc. No. 80.

SO ORDERED.

Dated:        March 1, 2022
              New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation