UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN NNEBE, *et al.*,<br><br>                              Plaintiffs,<br><br>     -v-<br><br>MATTHEW DAUS, *et al.*,<br><br>                              Defendants. | No. 06-cv-04991 (RJS) |
| ANTHONY STALLWORTH, *individually and on behalf of all others similarly situated, et al.*,<br><br>                              Plaintiffs,<br><br>     -v-<br><br>MEERA JOSHI, *et al.*,<br><br>                              Defendants. | No. 17-cv-7119 (RJS)<br><br><br><br>ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is Plaintiffs' motion for attorneys' fees pursuant to 42 U.S.C. § 1988(b).

(Doc. No. 491; 17-cv-7119, Doc. No. 108).[1] For the reasons set forth below, the Court GRANTS

IN PART AND DENIES IN PART Plaintiffs' motion.

## I.    BACKGROUND

The Court presumes the parties' familiarity with the facts and history of this long-running

case, which have been detailed at length in prior orders both by this Court and the Second Circuit.

---

[1] In resolving this motion, the Court has also considered Plaintiffs' brief in support of their motion ("Mot.," Doc. No. 493), Defendants' brief in opposition ("Opp.," Doc. No. 518), and Plaintiffs' reply brief ("Reply," Doc. No. 524), along with the various letters, declarations, and evidence submitted in connection with the motion. (Doc. Nos. 492, 494, 496, 517, 519, 520, 522, 523, 525.) The Court has also considered the updated records and briefing provided in October 2021. (Doc. Nos. 527, 528, 529.) Unless otherwise indicated, all docket citations are to 06-cv-4991.

*See, e.g.*, *Nnebe v. Daus*, 931 F.3d 66, 70−79 (2d Cir. 2019); *Nnebe v. Daus*, 510 F. Supp. 3d 179, 184−88 (S.D.N.Y. 2020).

The *Nnebe* action was commenced on June 28, 2006, when Plaintiff Jonathan Nnebe filed a complaint and moved for a temporary restraining order and preliminary injunction, contending that Defendants violated his constitutional rights by depriving him of his taxi license without meaningful process. (Doc. Nos. 1, 2.) The preliminary injunction motion was denied (Doc. No. 11), and Plaintiffs filed two amended complaints, adding class allegations and joining other affected drivers and the New York Taxi Workers Alliance ("NYTWA") as plaintiffs (Doc. Nos. 15, 42). Plaintiffs also moved for class certification. (Doc. No. 47.) After approximately six months of discovery, both parties cross-moved for summary judgment. (Doc. Nos. 96, 104.) On September 30, 2009, this Court granted Defendants' motion for summary judgment on Plaintiffs' federal claims, declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, and dismissed the class certification motion as moot. (Doc. No. 156.)

Plaintiffs appealed. (Doc. No. 159.) On appeal, the Second Circuit affirmed the Court's finding that due process does not require a pre-suspension hearing. *Nnebe v. Daus*, 644 F.3d 147, 163 (2d Cir. 2011). Regarding post-suspension hearings, the Second Circuit vacated and remanded for the Court to conduct additional fact-finding "to determine whether the post-suspension hearing the City affords does indeed provide an opportunity for a taxi driver to assert that, even if the criminal charges are true, continued licensure does not pose any safety concerns." *Id*. Following the Second Circuit's remand, both sides again moved for summary judgment. The Court denied both motions, concluding that there was a genuine dispute of fact over whether the City "meaningfully considers evidence other than the fact of arrest." (Doc. No. 209.) The Court then set a trial date.

The parties filed extensive pre-trial motions in limine and briefing in advance of the trial. The Court ultimately held a bench trial between January 13 and 21, 2014, to identify the standard applied at post-suspension hearings. Following the trial, the Court issued findings of fact, *Nnebe v. Daus*, No. 06-cv-4991 (RJS), 2014 WL 3891343 (S.D.N.Y. Aug. 8, 2014), and conclusions of law, *Nnebe v. Daus*, 184 F. Supp. 3d 54 (S.D.N.Y. 2016), concluding that the pre-2006 notice violated procedural due process but otherwise finding that Plaintiffs failed to sustain their burden of proof with respect to their due process claims.

Plaintiffs sought to appeal from that order in May 2016, but the Second Circuit dismissed that appeal for lack of jurisdiction. (Doc. No. 380.) Plaintiffs then briefed the remaining issues to be addressed in the *Nnebe* action (Doc. Nos. 395, 396), and in 2017, Plaintiffs commenced the related *Stallworth* action. After Defendants moved to dismiss the *Stallworth* complaint, the Court dismissed that action (17-cv-7119, Doc. No. 37), and the *Stallworth* plaintiffs filed a notice of appeal. Soon after, in March 2018, the Court issued a final order and judgment in *Nnebe* awarding the plaintiffs nominal damages for the pre-2006 notice but otherwise holding that Plaintiffs had failed to prove all other constitutional claims. (Doc. Nos. 419–420.) Plaintiffs then filed a notice of appeal in *Nnebe*, too.

The Second Circuit consolidated both appeals and heard the cases in tandem. In 2019, the Circuit partially reversed the Court's rulings, concluding that the post-suspension hearing process was constitutionally deficient and that due process requires "a meaningful hearing . . . [that] must give the driver an opportunity to show that his or her *particular* licensure does not cause a threat to public safety." *Nnebe*, 931 F.3d at 70−79. It then remanded the cases to this Court to fashion a remedy.

Following the 2019 remand, Defendants began updating their suspension procedures and notice. On December 31, 2020, the Court granted in part and denied in part Plaintiffs' motion for permanent injunctive relief. *Nnebe*, 510 F. Supp. at 190–98. In essence, the Court held that the substantial changes Defendants made to their practices in response to the Second Circuit's 2019 ruling satisfied due process, but ordered Defendants to expedite the process. *Id.*

Plaintiffs have now moved for interim attorneys' fees and costs covering the time period from the commencement of this litigation in 2006 to the Second Circuit's July 2019 appeal decision.

## II.   LEGAL STANDARD

In an action brought under 42 U.S.C. § 1983, section 1988(b) permits reasonable attorneys' fees and costs to be awarded to the "prevailing party" in the action. *See* 42 U.S.C. § 1988(b). "[A] 'prevailing party' is one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 598 (2001)). It is well settled that a party may obtain an interim fee award prior to the conclusion of a case. *See Hanrahan v. Hampton*, 446 U.S. 754, 756 (1980); *see also Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) (explaining that a party can be entitled to attorneys' fees based on interim injunctive relief resulting from a determination of the merits); *Palmer v. City of Chicago*, 806 F.2d 1316, 1320 (7th Cir. 1986) ("A district court has the power to award fees before the entry of a final judgment.").

To determine a reasonable fee award, the Court begins with the calculation of the lodestar. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assn v. County of Albany,* 522 F.3d 182 (2d Cir.2008)). Under this approach, a

court must first set a "reasonable hourly rate" for each attorney and staff member, keeping in mind all case-specific variables. *Merck Eprova AG v. Brookstone Pharms., LLC*, No. 09-cv-9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013). Second, the court must determine the number of hours reasonably expended. *Id.* Third, it must multiply the reasonable hourly rate by the number of hours reasonably expended to determine the "presumptively reasonable fee." *Id.*

III. **ATTORNEYS' FEES (2006 TO 2019 APPEAL)**

Plaintiffs seek $3,216,227.50 in attorneys' fees for 6,289.4 hours of work from the start of this litigation in 2006 through the 2019 appeal decision.[2] Plaintiffs also seek costs in the amount of $9,466.00 expended by the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") and $30,596.32 expended by attorney Daniel Ackman. Finally, Plaintiffs request an additional $149,257.40 for 328.5 hours of work related to preparing the instant fee motion.

As a threshold matter, the parties do not dispute that Plaintiffs are the "prevailing parties" for purposes of section 1988, or that they are entitled to an award of interim attorneys' fees and costs. As the Court observed in its order granting Plaintiffs' request to file a motion for interim attorneys' fees, "the duration of this litigation and Plaintiffs' clear success on the merits to date likely justify an award of interim fees." (Doc. No. 485.); *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) ("Congress clearly contemplated that interim fee awards would be available where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues."). The parties dispute only the reasonableness of the fees and hourly rates.

Accordingly, the Court looks to the hourly rates proposed and the hours expended by the attorneys to determine a reasonable fee award in this case.

---

[2] As explained further below, *see* Section III.B.1, *infra*, Plaintiffs later revised this request to $3,166,927.50 for 6090.8 hours expended.

### A.  Hourly Rates

"Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." *Abdell v. City of New York*, No. 05-cv-8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (internal quotation marks and alterations omitted); *see also Sanson v. City of New York*, No. 19-cv-2569 (AT), 2021 WL 1191566, at *3 (S.D.N.Y. Mar. 30, 2021) (explaining that the customary rate for experienced civil rights litigators "ranges from about $400 to $600 per hour") (collecting recent cases).

Plaintiffs propose the following hourly rates for each of their attorneys:

- David Goldberg: $675 per hour;
- Daniel Ackman: $500 per hour;
- Fried Frank attorneys:
  - Gregg L. Weiner and Janice Mac Avoy: $650 per hour;
  - John A. Borek and Sarah Warren: $450 per hour;
  - Michael A. Kleinman: $400 per hour;
  - Yonatan Jacobs: $350 per hour;
  - Julia Gomez: $300 per hour; and
  - Patrick Foote and other legal staff members: $200 per hour.

(Mot. at 18–23.)

### 1.  Mr. Goldberg

Plaintiffs propose an hourly rate of $675 for Mr. Goldberg.  (Mot. at 20.)  As Defendants concede, Mr. Goldberg's "credentials, experience, and skill place him near the top of the range of civil rights attorneys practicing in the Southern District."  (Opp. at 23.)  Mr. Goldberg graduated in 1991 from Harvard Law School, clerked on the Supreme Court and the D.C. Circuit, and has practiced primarily in civil rights litigation since 1995.  (Goldberg Decl. ¶¶ 4–6, Doc. No. 494.)  He has been involved in more 150 cases before the Supreme Court and was retained to assist with

the first Second Circuit appeal in this case.  (Goldberg Decl. ¶¶ 13, 17.)  Defendants nonetheless assert that his fee should be reduced to $500 "commensurate with other attorneys of his caliber conducting civil rights litigation in this district."  (Opp. at 23.)  But as just noted, the top end of the range of reasonable rates in this district for experienced civil rights litigators is typically $600, and this Court has awarded up to $650 per hour for highly skilled attorneys in a civil rights action. *See Abdell*, 2015 WL 898974, at *3; *see also Restivo v. Nassau Cty.*, No. 06-cv-6720 (JS) (SIL), 2017 WL 3727366, at *4 (E.D.N.Y. Aug. 28, 2017) (awarding Mr. Goldberg $650 per hour based on his "experience and expertise in appellate practice").  The Court therefore concludes that $650 per hour is an appropriate rate for an attorney of Mr. Goldberg's caliber.

### 2.  **Mr. Ackman**

Plaintiffs request an hourly rate of $500 for Mr. Ackman.  (Mot. at 19.)  Mr. Ackman graduated from Columbia Law School in 1988 and for the past twenty years has been a sole practitioner in class action litigation, with a particular focus on the civil rights of taxi drivers. (Ackman Decl. ¶¶ 2–4.)  Defendants, however, argue that Mr. Ackman's rate should be reduced to (1) $400 per hour for work performed during the latter seven years covered by the instant motion, and (2) $300 per hour for the earlier years of the litigation.  (Opp. at 23.)  Specifically, Defendants argue that, because much of Mr. Ackman's work on this case occurred around 2006, his hourly rate for the earlier part of this litigation should be reduced to $300 per hour, which is roughly the rate Mr. Ackman commanded back in 2006.  (Opp. at 21.)

As an initial matter, the Court declines to bifurcate Mr. Ackman's rate in this way.  As the Supreme Court has noted, civil rights attorneys are generally not paid until the end of the case, and "[c]ompensation for this delay is generally made by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  *Perdue v. Kenny A. ex rel.*

7

*Winn*, 559 U.S. 542, 556 (2010) (internal quotation marks omitted).  Accordingly, given Mr. Ackman's experience, skill, and rates awarded in comparable cases in this district, the Court concludes that an hourly rate of $450 is reasonable for the entire time period.  *See Decastro v. City of New York*, No. 16-cv-3850 (RA), 2017 WL 4386372, at *4 (S.D.N.Y. Sept. 30, 2017) (awarding Mr. Ackman an hourly rate of $425, instead of his proposed rate of $525); *Calvo v. City of New York*, No. 14-cv-7246 (VEC), 2017 WL 4119280, at *4 (S.D.N.Y. Sept. 15, 2017) (awarding Mr. Ackman an hourly rate of $450, instead of his proposed rate of $525).

### 3.  Fried Frank Attorneys

Fried Frank joined the Plaintiffs' litigation efforts in November 2013 in anticipation of trial.  (Kleinman Decl. ¶ 12.)  Plaintiffs seek $650 per hour for partners Gregg L. Weiner and Janice Mac Avoy; $450 per hour for special counsel John A. Borek and Sarah Warren; $400 per hour for associate Michael Kleinman; $350 per hour for associate Yonatan Jacobs; $300 per hour for associate Julia Gomez; and $200 for senior legal assistant Patrick Foote, paralegals, and other staff.  (Mot. at 21.)  Plaintiffs assert that these rates already reflect a reduction from the billing rates that the firm normally collects from its paying clients.  (Kleinman Decl. ¶ 20.)

Mr. Weiner was a partner and vice-chair of Fried Frank's litigation department at the time the firm joined this case in 2013, and Ms. Mac Avoy is a partner and co-head of Fried Frank's real estate litigation practice.  (Kleinman Decl. ¶ 6a, 6d.)  Both have extensive experience in complex litigation.  (*Id*.)  But although Plaintiffs assert that Fried Frank, as a law firm, has represented parties in civil rights class actions (Kleinman Decl. ¶¶ 10–11), there is no indication that these specific partners have significant experience in civil rights litigation.  "Because one of the central factors in determining a reasonable hourly rate is the rate normally charged for similar work by attorneys of like skill *in the area,* [counsel's] lack of experience in litigating § 1983 claims is relevant to the determination of a reasonable rate."  *Abdell*, 2015 WL 898974, at *4 (internal

quotation marks and citation omitted).  The Court therefore agrees with Defendants that a rate at

the highest end of the range for experienced civil rights litigators is unwarranted.  (See Opp. at 25

(proposing rate of $400 per hour for Mr. Weiner and Ms. Mac Avoy).)  Nonetheless, the Court

recognizes both partners' extensive litigation and trial experience that no doubt aided the

prosecution of this case.  *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96-

cv-8414 (KMW), 2017 WL 1294557, at *7 (S.D.N.Y. Apr. 4, 2017) ("Where other experience

aids the litigation, that experience should be considered as well.")  The Court therefore concludes

that a rate of $550 per hour is reasonable for Mr. Weiner and Ms. Mac Avoy.

For similar reasons, the Court concludes that the hourly rate for Fried Frank attorneys Mr.

Borek and Ms. Warren should be reduced from $450 to $400.  Mr. Borek is a special counsel and

managing attorney of Fried Frank and has experience in "general commercial, securities,

insurance, real estate, construction, products liability, trusts and estates, and environmental issues."

(Kleinman Decl. ¶ 6e.)  Ms. Warren is a special counsel to Fried Frank's white collar criminal

defense and securities enforcement practice.  (Kleinman Decl. ¶ 6f.)  Although they both have

extensive litigation experience, neither attorney claims experience in civil rights litigation, and

they merely performed discrete tasks of "providing advice" for trial preparation.  (Pls. Br. at 22

n.13.)

As to the remaining Fried Frank associates, "typical rates in this District for junior

associates are in the $200–350/hour range at law firms specializing in civil rights."  *Torres v. City

of New York*, No. 18-cv-3644 (LGS), 2020 WL 4883807, at *5 (S.D.N.Y. Aug. 20, 2020).

Accordingly, the Court concludes that the following rates for the Fried Frank associates are

reasonable:  $350 per hour for Mr. Kleinman, a 2009 law school graduate who practices primarily

in commercial and intellectual property litigation, and who conducted witness examinations at the

trial; $300 per hour for Mr. Jacobs, a 2010 law school graduate who assisted the trial team with research and briefing; and $250 per hour for Ms. Gomez, a 2013 law school graduate with civil rights experience who also assisted the trial team.  (*See* Kleinman Decl. ¶¶ 4–6.)

Finally, as to Mr. Foote and the other paralegal staff, Plaintiffs propose $200 per hour (Mot. at 22), while Defendants propose $125 per hour for Mr. Foote and $100 per hour for the remaining staff.  (Opp. at 27.)  Given that Mr. Foote has been a senior legal assistant at Fried Frank since 1995 and served as the lead paralegal in this case, the Court concludes that $150 per hour is an appropriate rate for his work, and $125 is reasonable for the remaining legal staff.[3]  *See Decastro*, 2017 WL 4386372, at *6 (awarding $125 per hour for the work of paralegals, "consistent with the rates routinely applied to the work of paralegals in this District") (collecting cases).

### B.  Hours Expended (2006 to 2019 Appeal)

Plaintiffs seek compensation for 3,143.4 hours expended by Mr. Ackman;[4] 1,519.3 hours expended by Mr. Goldberg; and 1,428.1 hours expended by Fried Frank.  (Mot. at 23–24.)  This comes out to a total of 6,090.8 hours expended from the start of this litigation in 2006 until the 2019 appeal.  In support of the motion, Plaintiffs submitted billing records for Mr. Ackman (Ackman Decl. Ex. B, Doc. No. 492-2; Ackman Reply Decl., Doc. No. 523), Mr. Goldberg (Goldberg Decl. Ex. A, Doc. No. 494-1), and the Fried Frank attorneys (Kleinman Decl. Ex. A, Doc. No. 496-1).

---

[3] The $125 rate also applies to Breanna Williams, who is described as a "law clerk" and does not appear to have been a barred attorney at the time of her work on this case.  (*See* Kleinman Decl. ¶ 6g.)

[4] As explained further below, Plaintiffs initially sought 3,342 hours for Mr. Ackman.  (Mot. at 19, 23.)  In response to Defendants' opposition brief pointing out various errors in Mr. Ackman's time records, including at least fifty duplicative time entries (Opp. at 5–6), Plaintiffs acknowledged certain "clerical errors" in the records and submitted a corrected time sheet for Mr. Ackman, reducing his hours to 3,143.4.  (Reply at 2; Ackman Reply Decl., Doc. No. 523.)

Defendants argue that an across-the-board reduction of 30% to 50% to these hours is appropriate given the use of block billing, lack of contemporaneous records, wasteful litigation efforts, and excessive or unnecessary hours.  (Opp. at 4–19, 28.)  Having carefully reviewed Defendants' objections and the underlying records, the Court concludes that a percentage reduction to the hours is appropriate in this case.  Defendants' proposed reductions, however, are excessive.  Instead, the Court finds that a 15% across-the-board reduction is reasonable and supported by the following considerations.

### 1.  Unreliable Records

Defendants first contend that various errors in Mr. Ackman's time records suggest that his time entries are unreliable or were not kept contemporaneously.  (Opp. at 5.)  For example, Mr. Ackman's initial records stated that he delivered closing argument for the trial on January 8, 2014, even though the trial did not commence until January 13.  (See Ackman Decl. Ex. B, Entry 1/8/14.)  Defendants also identified approximately fifty identical time entries in Mr. Ackman's billing records.  (Opp. at 6.)  In response, Plaintiffs submitted revised billing records for Mr. Ackman with the duplicative or mistaken time entries deleted, reducing his claimed hours from 3,342 to 3,143.4 – an approximate reduction of 200 hours.  (Reply at 2; Ackman Reply Decl., Doc. No. 523.)

"Requested fees must be supported with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done."  *Sprint Commc'ns Co. L.P. v. Chang*, No. 13-cv-3846 (RA), 2014 WL 6611484, at *6 (S.D.N.Y. Nov. 21, 2014) (alterations and internal quotation marks omitted).  Although Plaintiffs submitted revised records removing the duplicative time entries, the Court agrees that the presence of these various errors in Mr. Ackman's records casts some doubt on the reliability of the records as a whole.  Accordingly, while the Court disagrees with

11

Defendants' proposal that Mr. Ackman's hours should be reduced by 50%, the Court concludes that these deficiencies support some reduction in the claimed hours.

### 2.  Block Billing and Vagueness

Next, Defendants argue that certain of counsel's time entries are vague or contain block billing.  (Opp. at 7, 13, 14, 17–18.)  For example, Defendants point to at least seventy-seven time entries, amounting to at least 525 hours, in which Mr. Ackman block-billed for more than five hours (Opp. at 7), and various entries by Goldman and the Fried Frank attorneys that do the same in December and January 2014, around the time of the trial (Opp. at 14, 18).  Defendants contend that some of these block-billed entries mix attorney work with clerical tasks (Opp. at 7 n.4), involve work unrelated to this litigation, or obscure the work performed by Goldberg and Fried Frank related to the 2014 trial (Opp. at 14).  Defendants further argue that various time entries are "impermissibly vague" or contain redactions, hindering review.  (Opp. at 13, 18.)

"As a general rule, block billing is disfavored."  *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015).  This is particularly true for larger blocks of time (typically greater than five hours).  *Id.*  But "[b]lock billing is not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed, and billing descriptions that are fairly general, including terms such as 'case preparation' or 'meeting' may be sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed."  *Abdell*, 2015 WL 898974, at *4 (internal quotation marks omitted).  Because block billing "ha[s] a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application," courts typically employ a percentage reduction to account for vague or block-billed time entries.  *Miroglio S.P.A. v. Conway Stores,*

*Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (collecting cases) (applying 15% reduction to award based on block billing and vague entries).

Here, the Court concludes that some reduction is appropriate given the use of block billing across the various attorneys' time records, but agrees with Plaintiffs that the magnitude of the reduction suggested by Defendants is not proportional to the amount of block billing identified (especially considering that the records span many years).  Similarly, with some exceptions, the vague entries identified by Defendants generally still contain enough specificity to determine whether the time expended on the activity is reasonable.[5]

### 3. **Wasteful Litigation Efforts**

Defendants next argue that Plaintiffs' counsel should not be awarded for hours spent on "wasteful litigation efforts."  (Opp. at 8.)  These "wasteful" efforts, according to Defendants, include:  (1) attempting to expand the scope of the case following the first Second Circuit appeal and remand, such as by briefing tribunal bias and state law claims in their post-remand summary judgment papers, then filing a 21-page motion for reconsideration based solely on these claims, which the Court denied (Opp. at 8, 16); (2) pursuing a "borderline frivolous" appeal of the 2016 Memorandum and Order (Opp. at 9, 17); (3) again briefing issues related to bias, state law claims, and class certification, then – after commencing the *Stallworth* action – abandoning the state law claims and their previous attempts to have new plaintiffs intervene in the original action (Opp. at 9, 18); (4) commencing *Stallworth* as an "end run" around denial of the appeal, and drafting a nearly identical complaint and preliminary injunction motion in that case (Opp. at 10).  (*See also* Opp. at 16–17, 18.)

---

[5] For example, many of the Fried Frank entries containing redacted information still leave enough detail for the Court to assess the reasonableness of the time entry.  (*See* Murry Decl. Ex. I, Doc. No. 517.)

The Court agrees that some of Plaintiffs' efforts following the Second Circuit's first remand were unsuccessful (and, in some instances, wasteful) and should therefore not be compensated.  But, as Plaintiffs convincingly argue, much of the litigation in this case following the first appeal was needless and avoidable, occurring only because Defendants vehemently maintained before the Second Circuit that TLC's post-suspension hearing practices involved individualized assessments of dangerousness – delaying the liability determination until the second appeal in 2019.  (*See* Reply at 7.)  In other words, Defendants "could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable."  *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").  For this reason, while the Court will impose some reduction to account for Plaintiffs' unsuccessful efforts,[6] it declines to impose a reduction of the magnitude suggested by Defendants.

### 4.  **Other Excessive, Unnecessary, or Redundant Hours**

Defendants also attack other work that they claim was unnecessary or excessive.  First, Defendants argue that Plaintiffs should not be compensated for the hours that Mr. Goldberg and the Fried Frank attorneys spent preparing for a jury trial because the Court ultimately held a bench trial.  (Opp. at 14 –15, 18.)  Second, Defendants argue that the trial was overstaffed by partners with high billing rates; Mr. Goldberg, for example, billed for his time attending trial but had only one speaking role (closing argument).  (Opp. at 15.)  Third, Defendants argue that, over the course of the litigation, Plaintiffs submitted numerous unsolicited letters to the Court, and Defendants

---

[6] The Court notes, for example, that Plaintiffs were only partially successful on their first appeal; the Second Circuit affirmed this Court's conclusion that a pre-suspension hearing was not required.

contend that they should not have to bear the cost for Plaintiffs "letter-writing campaign." (Opp. at 12, 15.)

The Court is generally unconvinced that these efforts were excessive or wasteful. Plaintiffs' time spent preparing for a jury trial was reasonable given that both sides expected a jury; the decision to proceed with a bench trial was not made until January 13, 2014, after Defendants suggested it and Plaintiffs agreed. (Trial Tr., Doc. No. 316 at 41, 47–48.) The Court also disagrees that Mr. Goldberg's time spent at trial was unnecessary, particularly given his central role throughout the litigation. Finally, while some of Plaintiffs' unsolicited letters to the Court over the course of this long-running litigation may have been unnecessary, the so-called "letter-writing campaign" does not warrant a substantial reduction in hours claimed.

### 5. Reduction in Hours

As already noted, where a district court identifies hours that are "excessive, redundant, or otherwise unnecessary[,] . . . the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (explaining that a district court "need not set forth item-by-item findings concerning what may be countless objections to individual billing items" (internal quotation marks and citation omitted)).

For reasons detailed above, the Court concludes that an across-the-board reduction in hours is necessary to account for (1) unsuccessful litigation efforts, (2) unreliability in some of the records, and (3) block billing or vague entries. On the whole, however, Defendants' proposed reduction of 30–50% is too excessive to rectify these deficiencies, and the Court is particularly reluctant to penalize Plaintiffs for "wasteful" litigation efforts occurring after the Second Circuit's first remand, given that much of the ensuing litigation could have been avoided by Defendants.

Accordingly, the Court concludes that a 15% reduction to the hours claimed by Plaintiffs is appropriate.  *See Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 167 (2d Cir. 2014) (concluding that, where some hours expended "appear[ed] redundant, duplicative, or unnecessary," a "one-third discount was a reasonable response to the flaws identified in [the] records"); *Kirsch,* 148 F.3d at 173 ("[W]e see no abuse of discretion in . . . the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records.").

**C.  Costs**

Plaintiffs seek reimbursement for $30,596.32 in costs incurred by Mr. Ackman (Ackman Decl. ¶¶ 20–21) and $9,466.28 incurred by Fried Frank (Kleinman Decl. ¶ 29).  Defendants dispute the following items in the Ackman declaration:  (1) $1,883.54 in "appellate charges" and the $505 filing fee for the "frivolous" 2016 appeal; (2) $250 for a "Reply Brief" for which there is no receipt; and (3) two $505 filing fees for the unsuccessful appeals in *Stallworth*.  (Opp. at 29.)  Plaintiffs do not specifically address these arguments in their reply brief, and the Court agrees that these costs should not be compensated and will therefore exclude these disputed costs from their award.

As to Fried Frank's expenses, Defendants argue that they should not have to pay for 270 entries that are unsupported by receipts (totaling $6,796.50).  (Opp. at 29.)  But Defendants do not contend that the entries are unreasonable or even dispute that they occurred; they merely argue that the entries are unsupported.  (*See* Opp. at 29.).  The costs, however, were clearly itemized, and based on the Court's familiarity with this case, are reasonable.  (*See* Doc. No. 496-2.)  The Court will therefore permit Plaintiffs to recover these costs even though "plaintiffs could have done a better job coming forward with documentary corroboration of the fact of these expenses." *Themis Cap. v. Democratic Republic of Congo*, No. 09-cv1652 (PAE), 2014 WL 4379100, at *12 (S.D.N.Y. Sept. 4, 2014).

16

Accordingly, the Court awards $26,947.78 for costs incurred by Ackman and $9,466.28 incurred by Fried Frank.

**D. Fee Award (2006 through 2019 Appeal)**

Based on the above-referenced rates, hours, and percentage reduction, the Court awards Plaintiffs $2,453,986.00 in attorneys' fees and $36,414.06 in costs. The Court's adjusted lodestar calculation is broken down as follows:

| Attorney | Hours | Rate ($) | Compensation ($) |
|---|---|---|---|
| Daniel Ackman | 2671.89 | 450.00 | 1,202,350.50 |
| David Goldberg | 1291.41 | 650.00 | 839,413.25 |
| Gregg Weiner | 222.02 | 550.00 | 122,111.00 |
| Janice Mac Avoy | 2.13 | 550.00 | 1,171.50 |
| John Borek | 15.81 | 400.00 | 6,324.00 |
| Sarah Warren | 1.96 | 400.00 | 784.00 |
| Michael Kleinman | 377.32 | 350.00 | 132,062.00 |
| Yonatan Jacobs | 246.84 | 300.00 | 74,052.00 |
| Julia Gomez | 236.73 | 250.00 | 59,182.50 |
| Patrick Foote | 105.91 | 150.00 | 15,886.50 |
| Admin (Fried Frank) | 5.19 | 125.00 | 648.75 |
| **Total** | **5177.21** | | **$2,453,986.00** |

## IV.   FEE AWARD FOR INSTANT MOTION

Plaintiffs also seek a fee award for hours expended on the instant motion for attorneys' fees – so called "fees-on-fees." (Mot. at 24.) A plaintiff is entitled to an award "for time reasonably spent in preparing and defending an application for § 1988 fees." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999).

In their original motion, Plaintiffs sought $50,748 for 151.8 hours expended by Fried Frank
On the instant fee application.  (Mot. at 24, Kleinman Decl. ¶¶ 26, 29.)  Plaintiffs, however, did
not seek these fees for Mr. Goldberg or Mr. Ackman, stating that they would apply for these fees
in a later motion.  (Mot. At 25 n.15.)  The Court declined to allow Plaintiffs to bifurcate the fees-
on-fees request in this fashion, ordering Plaintiffs to submit to the Court the *total* amount of fees
they sought for the instant motion so the Court could assess its reasonableness.  (Doc. No. 526.)
Plaintiffs thereafter submitted a supplemental declaration with billing records related to the instant
motion, seeking an additional 113.4 hours for Mr. Ackman ($56,700 at a $500/hour rate) and 63.3
hours for Mr. Goldberg ($42,727.50 at a $675/hour rate).  (Supp. Ackman Decl., Doc. No. 527.)
Defendants submitted a supplemental opposition, and Plaintiffs replied.[7]  (Supp. Opp., Doc. No.
528; Supp. Reply, Doc. No. 529.)

In total, following the supplemental briefing, Plaintiffs seek approximately $150,175.50
for 328.5 hours of work related to the instant motion.  Defendants argue that this amount is grossly
excessive and should be reduced to $32,335.00 (amounting to a 78% reduction).  (Supp. Opp. at
7.)  In terms of raw hours, the Court acknowledges that the hours spent on this motion far exceed
what courts typically find to be a reasonable expenditure of time for a fee motion.  *See Murray ex
rel. Murray v. Mills*, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (finding 150 hours on a fee motion
to be "grossly amplified"); *Reiter v. Metro. Transp. Auth. of State of New York*, No. 01-cv-2762
(GWG), 2007 WL 2775144, at *20 (S.D.N.Y. Sept. 25, 2007) (concluding that spending 331.79
hours on a fee application "represents an attorney working 40 hour weeks for more than 8 weeks"

---

[7] In their reply, Plaintiffs argue that Defendants already had a chance to respond to Fried Frank's fees-on-fees request,
so the Court should strike any part of their supplemental opposition concerning the hours submitted for Fried Frank.
(Supp. Reply at 1–2.)  But this is the precise reason the Court ordered Plaintiffs to submit their *total* fees-on-fees
request across *all* attorneys.  Without disclosure of the total number of hours Plaintiffs claim to have expended on the
instant motion, Defendants were deprived of a meaningful review of the request at the time of their original opposition.
The Court therefore declines to strike any portion of Defendants' supplemental opposition.

and "far exceed[s] what is appropriate").  But this fee application covered approximately fifteen years of litigation, including a trial and two appeals, and represents less than 5% of the hours billed on the litigation.  *See Davis v. City of New Rochelle, N.Y.*, 156 F.R.D. 549, 561 (S.D.N.Y. 1994) ("[C]ourts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed.").  Thus, in the context of this litigation, the raw number of hours billed on this motion is not dispositive.

The Court, however, agrees with certain of Defendants' other objections to the fee award. Specifically, Defendants point out that (1) Fried Frank was mainly involved in this litigation around the 2014 trial, yet spent over 150 hours preparing the initial moving papers for this motion; (2) Ackman and Goldberg, who have prepared motions for attorneys' fees in their previous cases, also spent a significant amount of time on the initial memorandum and their declarations, likely representing duplicative work; and (3) Fried Frank billed approximately forty hours conducting legal research on attorneys' fees, even though the "legal basis for fee petitions is well-plowed acreage," *B.B. v. N.Y. City Dep't of Educ.*, 2018 WL 1229732, at \*7 (S.D.N.Y. Mar. 8, 2018).  (*See* Supp. Opp.)  The Court therefore agrees that a reduction is warranted – especially given the generally straightforward nature of a fee application – though not as drastic a reduction as the one proposed by Defendants.  *See, e.g.*, *Reiter*, 2007 WL 2775144, at \*18–21 (reducing fees-on-fees award by 40% for a complicated fee application, ultimately awarding $73,056.00 for 269.24 hours expended).

Accordingly, the Court concludes that a 30% reduction to the hours expended for this motion is appropriate, resulting in 229.95 hours expended.  The Court also reduces the claimed hourly rates as specified in Section III.A., *supra*.  This produces a fees-on-fees award of $96,400.50 that breaks down as follows:  (1) $31,878.00 for Fried Frank (106.26 hours at a blended

rate of $300 per hour); (2) $35,721.00 for Ackman (79.38 hours at $450 per hour); and (3) $28,801.50 for Goldberg (44.31 hours at $650 per hour).

V.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs' motion for attorneys' fees is GRANTED IN PART AND DENIED IN PART.   Plaintiffs are awarded $2,453,986.00 in attorneys' fees through the 2019 appeal; $96,400.50 in attorneys' fees for the instant motion; and $36,414.06 in costs.  The Clerk of Court is respectfully directed to terminate the motion pending at 06-cv-4991, Doc. No. 491 and 17-cv-7119, Doc. No. 108.

SO ORDERED.

Dated:          March 1, 2022
                New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation