UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X

JONATHAN NNEBE ET AL, individually and on
behalf of all others similarly situated,

                                        Plaintiffs,

        -Against-

                                                        06-CV-4991

MATTHEW DAUS, CHARLES FRASER, JOSEPH
ECKSTEIN, ELIZABETH BONINA, THE NEW
YORK CITY TAXI AND LIMOUSINE
COMMISSION, AND THE CITY OF NEW YORK,

                                        Defendants

X----------------------------------------------------------------X

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 1

  A.    Litigation History................................................................................................ 1

  B.    Proposed Settlement ........................................................................................... 5

    1.    The Class Definition ..................................................................................... 5

    2.    Settlement Amount ....................................................................................... 5

    3.    Settlement Administration and Dissemination of Notice to the Class........................ 7

    4.    Released Claims ............................................................................................ 8

III.    THE LEGAL STANDARD................................................................................... 9

IV.     DISCUSSION ..................................................................................................... 10

  A.    Certification of the Settlement Class is Appropriate .................................................. 10

  B.    The Court Should Preliminarily Approve the Settlement............................................. 11

    1.    The class representatives and class counsel have adequately represented the class. 13

    2.    The proposal was negotiated at arm's length............................................................ 15

    3.    The relief for the class is adequate............................................................................ 15

    4.    The proposal treats class members equitably relative to each other ......................... 18

    5.    The settlement is reasonable under the remaining Grinnell factors.......................... 20

V.      CONCLUSION.................................................................................................... 22

## I.    INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs now move this Court for an order preliminarily approving a proposed class action settlement agreement entered into by the parties after lengthy negotiations. The settlement follows nearly nineteen years of active and highly contested litigation and was achieved with the assistance of an experienced mediator, Stephen P. Sonnenberg, who oversaw four mediation sessions and facilitated continued ongoing discussions, as well as with the assistance of Magistrate Judge Ona T. Wang.  The Settlement Agreement is attached as Exhibit 1.

As set forth below, under the terms of the proposed settlement, Defendants have agreed to pay $140 million (inclusive of fees, costs, and expenses) to benefit a class of approximately 19,500 New York City taxi and for-hire vehicle drivers. The proposed settlement satisfies all the criteria for class certification and for settlement approval under Fed. R. Civ. P. 23(e). Accordingly, Plaintiffs request that the Court preliminarily approve the settlement, order distribution of the Class Notice, and schedule a final approval hearing for June 2025.

## II.    BACKGROUND

### A.    Litigation History

On June 28, 2006, Plaintiff Jonathan Nnebe filed a complaint alleging that Defendants violated his constitutional rights by summarily suspending his TLC license upon his arrest and then denying him a constitutionally sufficient post-suspension hearing. (Dkt. 1.)  Plaintiffs filed two amended complaints (on August 3, 2006, and October 27, 2006) adding class allegations and joining other affected drivers and the New York Taxi  Workers Alliance ("NYTWA") as plaintiffs. (Dkt. 15, 42.)  On November 22, 2006, Plaintiffs first moved for class certification. (Dkt. 47.)

Between November 2006 and May 2007, the parties conducted extensive discovery, including nine depositions, and litigated a number of discovery disputes. On July 17, 2007, the Parties filed cross motions for summary judgment. (Dkt. 96, 104.) On September 30, 2009, the Court held that NYTWA lacked standing, granted Defendants' motion for summary judgment (and denied Plaintiffs' motion) on Plaintiffs' federal claims, declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, and dismissed as moot the class certification motion. (Dkt. 156.)

On October 15, 2009, Plaintiffs filed a Notice of Appeal. (Dkt. 159.) On July 8, 2011, the U.S. Court of Appeals for the Second Circuit affirmed in part and vacated and remanded in part. On remand, both sides again moved for summary judgment. This Court denied these motions, concluding, principally based on opinions of OATH ALJs to whom post-suspension hearings had been transferred, that "The question of whether the City meaningfully considers evidence other than the fact of arrest is a factual one …[that] is genuinely in dispute." (Dkt. 209.) The Court set the case for a January 13, 2014 trial. Id.

A bench trial was held from January 13, 2014, through January 21, 2014. On August 8, 2014, the Court issued an Order, finding that whether a particular driver posed a direct and substantial threat to public safety played no role in the TLC's reinstatement decision. (Dkt. 323.) The Court also directed the Parties to brief whether, under the facts as found, the TLC's summary suspension process denied Plaintiffs procedural due process.

On April 28, 2016, the Court issued an Order holding that, save for claims as to pre-2007 pre-hearing notices, Plaintiffs had not proven a denial of procedural due process. (Dkt 366.) Plaintiffs sought to appeal from that Order's denial of injunctive relief in May 2016, *see* 28 U.S.C. § 1292(a), but the Second Circuit dismissed that appeal. (Dkt. 380.)

2

On September 19, 2017, Anthony Stallworth, several other drivers who had recently been subjected to TLC's suspension policy, and NYTWA commenced a related action and sought preliminary injunctive relief. (Stallworth Dkt. 1, 3.) On February 1, 2018, this Court dismissed the action. (Dkt. 37.) On February 12, 2018, the Stallworth plaintiffs filed a notice of appeal. (Dkt. 40.)

Soon after, on March 27, 2018, this Court issued a final order and judgment in Nnebe, awarding each individual plaintiff $1 in nominal damages based on the Court's determination that the pre-hearing notice sent to suspended drivers before 2007 was constitutionally deficient. The order adjudged and decreed that, for reasons previously stated, plaintiffs had failed to prove their other constitutional claims. (Dkt. 419-420.) On March 29, 2018, the Nnebe plaintiffs filed a notice of appeal. (Dkt. 421.)

The Nnebe and Stallworth actions were heard in tandem at the Court of Appeals. On July 19, 2019, the Court of Appeals ruled for Defendants on the issue of the constitutionality of summary suspension of a TLC license upon a licensee's arrest and ruled for Plaintiffs on the issue of the constitutionality of the post-suspension notice and hearing procedures. *Nnebe v. Daus*, 931 F.3d 66 (2d Cir. 2019). The Court remanded the cases, directing that this Court, with the parties' input, fashion a remedy. (Dkt. 423.) The Court also remanded class certification and damages issues.

Following remand, the parties engaged in lengthy settlement discussions. The City also changed its practices with respect to post-suspension hearings. The settlement discussions did not lead to a settlement, and on April 9, 2020, Plaintiffs moved for injunctive relief. (Dkt. 452.) On December 31, 2020, the Court granted in part and denied in part permanent injunctive relief. Dkt. No. 481. In its decision, the Court emphasized the already extant substantial changes in

Defendants' practices in response to the Second Circuit's ruling. These included: (1) new pre-hearing notices that expressly reference the Second Circuit ruling; (2) the promulgation of new hearing rules that codify that TLC bears the burden of proof at post- suspension hearings, affirm the central importance of driver-specific evidence of non-dangerousness, and shorten the time allowed for the TLC's process. The Court also ordered Defendants to shorten the time period for issuing post-suspension-hearing decisions.

On July 17, 2020, Plaintiffs once again moved for class certification. (Dkt. 462, 463.) On March 1, 2022, this Court granted in part, and denied in part, that motion (Dkt. 532.) Specifically, the Court granted a class on liability but denied a damages class. Id.

On July 25, 2023, the Court ordered that a damages trial be held for twenty (20) randomly selected class members, of whom ten (10) appeared at trial.  The trial commenced with jury selection on November 13, 2023. Counsel delivered opening statements the same day. Plaintiffs called twelve witnesses including the ten Trial Plaintiffs who appeared at the trial. Defendants called one witness. Closing arguments were held on November 16, 2023.

The jury delivered its verdict on November 16, 2023. It ruled in favor of each Trial Plaintiff and awarded damages ranging from $4,500 to $42,500 and averaging $18,950, not counting pre-judgment interest. (Dkt. 656-19.)  On December 22, 2023, the Court awarded each of the ten trial plaintiffs pre-judgment interest and entered judgment in their favor. (Dkt. 679.)

Following the November 2023 trial, the Parties agreed to mediate the case. The case was referred to Magistrate Judge Wang for settlement, and the Parties held multiple settlement calls with Magistrate Judge Wang throughout 2024. The Parties also engaged an experienced private mediator, Stephen Sonnenberg, with whom they met in person for four separate mediation sessions and communicated with in between mediation sessions.  Additionally, the Parties'

counsel had extensive direct negotiations.  Ultimately, after more than a year of negotiations, the Parties agreed to the settlement.

**B.    Proposed Settlement**

**1.    The Class Definition**

The Settlement Class is defined as "all TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until February 18, 2020." *See* Order dated March 1, 2022 (Dkt. 532). The Class excludes all persons who timely opt out of the Class under the terms of the Preliminary Approval Order as well as the 12 (twelve) individuals who opted out of the liability class. Id.  The Class includes approximately 19,500 members.[1]

**2.    Settlement Amount**

The Settlement provides for a Settlement Amount of $140 million (one hundred forty million dollars). *See* Ex. 1 (Settlement Agreement) ¶ 24.  This Settlement Amount (less approved attorneys' fees, costs, and incentive payments) will be distributed to class members pursuant to a plan of allocation summarized below.

---

[1]    There are some class members that may be duplicate entries in the class list (e.g. because the member's TLC license was suspended more than once and/or they appeared more than once but with different contact information, so it is unclear if they are the same person or two different class members).  To err on the side of caution, the parties are treating these potential duplicates as separate individuals for purposes of calculating the average settlement share. However, in calculating actual distribution, any class member who was suspended more than once will have the length of their suspensions added together, provided, however, that no suspension fewer than 32 days in length shall be included in such addition, as noted in ¶ 40 of the Settlement Agreement. Once claim forms and W-9 forms are submitted, the number of unique class members should become more clear.

|  | Number of Class Members (estimated) | Per Person Initial Distribution Cap (prior to deductions) |
|---|---|---|
| Suspended for **25** days or fewer | 1,462 | $700 |
| **26-31** total days suspended | 243 | $750 |
| **32 to 60** total days suspended | 895 | $21,000 |
| **61 to 90** total days suspended | 695 | $24,000 |
| **91 to 120** total days suspended | 926 | $27,000 |
| **121 to 210** total days suspended | 1,212 | $30,000 |
| **211 to 390** total days suspended | 870 | $33,000 |
| Suspended for **391 days or more** | 711 | $36,000 |
| No Suspension End Date | 1,239 | $17,000 |
| Did not request hearing | 11,256 | 37.5% of amounts distributed in accordance with the above categories |

Id. at ¶ 40.

In the motion for final approval, or in a separate motion should the Court so require, Plaintiffs will apply for an award of attorneys' fees of up to 25% of distributed awards and for reimbursement of reasonable expenses and costs, to be paid out of the Settlement Amount. Defendants will respond to, and reserve the right to oppose, the amount sought in Class Counsel's application for fees and costs. Plaintiffs will also apply for incentive payments for the named plaintiffs, and for prior trial plaintiffs subject to the opt out provisions for trial plaintiffs set forth in the stipulation of settlement at ¶¶ 49 and 63, in the amount of $15,000 each, which Defendants do not oppose.

### 3.    Settlement Administration and Dissemination of Notice to the Class

The Parties have selected Simpluris to administer the settlement.  Class Counsel have also worked with Simpluris in many cases over the last several years, where Simpluris has managed the class notice process with diligence and care.

The settlement will be distributed to settlement class members via First Class U.S. Mail, with an enclosed return envelope to each Class Member, as well as by electronic mail and text for class members for whom email addresses and phone numbers are available.  Settlement Agreement at ¶ 46.  The Administrator will update mailing addresses through the National Change of Address database before mailing (with all returned mail skip-traced and promptly re-mailed within ten (10) days of the Notice Date).  The Administrator also shall establish and maintain a website for information about the Settlement, which will include an online means of filing claims as an alternative to paper claim forms.  Settlement class members will receive mailed reminders (as well as by email and text message where email addresses and phone numbers are available).  Settlement payments will be mailed by check to settlement class members who submit claims to participate in the settlement.  Settlement class members will have sixty (60) days from the Notice Date in which to opt out or object to the settlement.  Settlement Agreement at ¶ 60.  Settlement class members will have one hundred and eighty (180) days to submit a claim for their settlement share.  For any notices that are returned as undeliverable, the Claims Administrator will make efforts to find an updated address and will remail the notice promptly if an updated address is obtained.

Following the initial distribution of funds, the Claims Administrator will make reasonable, good faith efforts to remind Settlement Class Members who have not cashed their

checks to do so within 120 (one-hundred and twenty) days, and it will work with settlement class members to reissue new checks and void the previous uncashed check as needed. Settlement Agreement at ¶ 43.

Additionally, following the initial distribution, a second distribution may proceed within (6) six months of the initial distribution to Settlement Class Members who have complied with the timely claims procedures upon the following conditions (subject to deductions set forth in Settlement Agreement at ¶ 41): If after the first distribution, more than $250,000 (two hundred fifty thousand dollars) of the Settlement Amount is unclaimed, sixty percent (60%) of the total amount remaining, up to a maximum of $22,500,000 (twenty-two million five hundred thousand dollars) of the unclaimed amount may be redistributed to Settlement Class Members who timely complied with the procedures set forth in the Settlement Agreement (to be distributed *pro rata*, with a cap of an additional thirty-five percent (35%) of the original Settlement Award per person). Ex. 1 (Settlement Agreement) at ¶ 42. The remaining forty percent (40%) of unclaimed Settlement Amount will revert to the City.  If less than $250,000 in settlement funds remain unclaimed after the initial distribution, that amount will revert to the City without any second distribution. Id. Any unclaimed settlement amounts in excess of $22,500,000 will revert to the City. Id.  If there are any unclaimed settlement amounts after the second round of distribution, those amounts will revert to the City. Id.

### 4.    Released Claims

If the Court grants final approval of the settlement, each member of the Settlement Class will be deemed to have released all Defendants from all claims that were asserted in this lawsuit.

## III.    THE LEGAL STANDARD

Class action settlements are favored.  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005).  However, Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  "Courts conducting this analysis must make a preliminary evaluation as to whether the settlement is fair, reasonable, and adequate." Reyes v. Summit Health Mgmt., 2024 WL 472841, at *2 (S.D.N.Y. Feb. 6, 2024) (internal quotations omitted).  "Preliminary approval of a proposed settlement is the first in a two-step process required by [Rule 23(e)] before a class action may be settled." Mock v. Tompkins Cmty. Bank, 2023 WL 6796426, at *1 (N.D.N.Y Oct. 13, 2023) (quoting In re NASDAQ Mkt.-Makers Antitrust Litig., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).  Pursuant to Rule 23, preliminary approval of a proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23 (e)(1); Everetts v. Personal Touch Holding Corp., 2024 WL 227811, at *1 (E.D.N.Y. Jan. 22, 2024).  In determining whether a settlement is fair, reasonable, and adequate, courts in the Second Circuit also consider the additional factors established in City of Detroit v. Grinnell Corp, 495 F.2d 448, 463 (2d Cir. 1974). See, e.g., Reyes, 2024 WL 472841, at *6.

Here, as set forth in Part IV(A), the settlement class should be certified.  Moreover, as set forth further infra, Part IV(B), all the requirements of Rule 23(e)(2) have been met. Specifically, the class representatives and class counsel have adequately represented the class, the proposed settlement was negotiated at arm's length, the relief is a good result for the class given the costs, risks, and delay of further litigation, and the contours of the proposed settlement, and the proposal treats all members of the Settlement Class equitably relative to one another. Fed. R.

Civ. P. 23 (e)(2).  Furthermore, as set forth infra, Part IV(C), the settlement also meets the additional Grinnell factors.

## IV.    DISCUSSION

### A.  Certification of the Settlement Class is Appropriate

The Court must confirm the propriety of the settlement class by determining if it meets requirements of Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b)." Reyes, 2024 WL 472841, at *2. Here, the Court has already found that the requirements for class certification have been met and has already certified Plaintiffs' claims under Section 1983 as a liability class. Dkt. 532. Thus, because the proposed settlement class includes those individuals who are already part of the certified class in this case, the Court will likely be able to grant final certification of the settlement class. See In re Am. Intern. Group., Inc. Sec. Litig., 689 F.3d 229, 240 (2d Cir. 2012) (finding that in the context of settlement, "concerns about whether individual issues would create 'intractable management problems' at trial drop out of the predominance analysis."); Mendez v. MCSS Rest. Corp., 2022 WL 3704591, at *4 (E.D.N.Y Aug. 26, 2022) ("Rule 23(e)(1) approves the two-part settlement approval practice that has become standard in this Circuit, providing that the district court direct notice to class members after determining that the court will likely be able to grant final approval of the settlement and certification of the settlement class.").

Plaintiffs are cognizant of the fact that the Court did not previously grant class certification with respect to damages under Fed. R. Civ. P. 23(b)(3), finding that individual issues predominated.  However, concerns about individual damages questions are less problematic in the context of settlement, and thus predominance is easier to satisfy. In re Am. Intern. Group., Inc. Sec. Litig., 689 F.3d at 240. To that end, while each class member would

need to testify about their individual circumstances at trial, for purposes of settlement, settlement class members' amounts will be calculated based on records of TLC (although class members will be permitted to challenge those records in accordance with paragraph 40 of the settlement stipulation.).  Specifically, the parties have agreed that settlement class members will receive individual settlement awards based on the length of time that their TLC license was suspended, whether they previously requested an individual damages hearing, and whether they reported the results of their criminal case to the TLC.[2] Ex. 1 (Settlement Agreement) at ¶ 40. Moreover, the agreed-upon schedule and payment amounts for settlement class members are consistent with the awards given by the jury during the November 2023 bellwether trial.  Consequently, while the presence of individual damages questions was the basis for denial of the application for certification of a damages class, any such concerns are not a barrier for certifying the settlement class.

**B.**      **The Court Should Preliminarily Approve the Settlement**

Under Fed. R. Civ. P. 23(e)(2), the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

　　(i) the costs, risks, and delay of trial and appeal;

　　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

　　(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

---

[2]      In the event that a Settlement Class Member contends that they notified TLC of the disposition of their criminal case, and TLC has no record of such notification, the Settlement Class Member shall proceed in accordance with paragraph 40 of the Settlement Agreement.

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

"In the notes accompanying [the 2018] amendments, the Advisory Committee acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness, and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018); Everetts, 2024 WL 227811, at *1. In deciding whether to preliminarily approve a class settlement and allow notice to the class, courts in the Second Circuit have traditionally looked at: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount to a possible recovery in light of all the attendant risks of litigation.  Grinnell, 495 F.2d at 463.  Here, both under the factors enumerated in Rule 23(e)(2) and the Grinnell factors traditionally considered by the Second Circuit, the proposed settlement clearly warrants preliminary approval.

### 1. The class representatives and class counsel have adequately represented the class

"In determining the adequacy of class representatives and counsel, courts consider 'whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" Rosenfeld v. Lenich, 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) (quoting Cordes & Co. Fin. Servs. v. AG Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007)). A class representative will be adequate if they vigorously pursued the claims of the class and have no interests that are antagonistic to the other class members. Id.

Here, as the Court recognized at the time it granted class certification, the Plaintiffs have adequately represented the interests of the class. Dkt. 532 at 23. Specifically, adequacy is proven "by the very fact that they have already litigated the constitutional deficiency of the post-suspension notice and hearing procedures – and won." Id. Moreover, their interests in the settlement are clearly aligned with those of the class. Absent settlement, Plaintiffs would have to prove their individual damages at trial, which could take years. Thus, Plaintiffs and the putative settlement class members all have the same interest in a certain and more immediate payment. See Denney v. Deutsche Bank AG, 443 F.3d 253, 269 (2d Cir. 2006) (finding named plaintiffs to be adequate representatives because they shared the goal of an immediate payment with the class).

With respect to class counsel, class counsel are adequate if they are experienced and have knowledge of complex class litigation. Id. at *5; Caccavale v. Hewlett-Packard Co., 2024 WL 4250337, at *11 (E.D.N.Y. Mar. 13, 2024). Courts also look at the conduct of the litigation (such as the stage of the litigation, the amount of discovery conducted, etc.) in deciding whether

13

counsel have sufficient information to properly represent the class's interests.  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

Daniel Ackman, David Goldberg, Shannon Liss-Riordan, and Bradley Manewith are class counsel. All four are highly experienced lawyers who practice in the area of civil rights litigation, and Attorneys Liss-Riordan and Manewith are highly experienced class action attorneys. See Ex. 2 (Liss-Riordan Decl.).  Moreover, Ackman and Goldberg have aggressively litigated this case for nearly two decades, which has provided them with more than sufficient information to represent the class's interest. Specifically, Ackman and Goldberg, along with former co-counsel, originally tried the case in January 2014, and they argued multiple appeals to the Second Circuit that ultimately resulted in the Second Circuit's finding that the TLC's post-arrest suspension procedures violated the class members' constitutional rights.  Following certification of the liability class, class counsel tried a bellwether case in November 2023, in which ten (10) of twenty (20) class members randomly selected by the Court appeared for a jury trial.[3]  The jury found in favor of all ten Plaintiffs whose cases were tried and awarded each of them substantial damages. Given their experience throughout this case, and in particular the knowledge they gained through the November 2023 bellwether trial, class counsel was well informed of the merits and risks of the damages portion of the case while negotiating the settlement. Class counsel drew upon their collective experience, both general and specific to this case, to achieve a settlement that will greatly benefit the class members.

---

[3]    Ten of the randomly-selected class members did not appear at trial.

### 2.    The proposal was negotiated at arm's length

The arm's-length character of the negotiation is an important factor in approving a class settlement. Moses v. New York Times Co., 79 F.4th 235, 243 (2d Cir. 2023).  In evaluating the quality of the negotiation, courts seek to ensure that the negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e) Advisory Committee Notes to 2018 Amendments.  To that end, the use of an experienced mediator "helps to ensure that the proceedings were free of collusion and undue pressure."  In re AOL Time Warner, Inc. Securities Litig., 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006). As described *supra*, the parties engaged in extensive arms-length negotiations with the assistance of Magistrate Judge Wang and multiple sessions with an experienced private mediator.

### 3.    The relief for the class is adequate

"Rule 23 (e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement." Hefler, 2018 WL 6619983 , at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). "In determining whether the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Id. (citing Rule 23(e)(2)).

#### a.    Risks of further litigation

"Courts favor settlement when it 'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'"  Rosenfeld, 2021 WL 508339, at *5 (quoting In re

15

Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 36 (E.D.N.Y. 2019)). "In considering the risks . . . , the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." Amigon v. Safeway Construction Enters. Co., 2024 WL 5040436, at *5 (E.D.N.Y. Dec. 9, 2024).

Here, Plaintiffs recognized the delay that was sure to transpire in going forward. The litigation has already spanned nearly 19 years. It would have taken many more years to complete individual damages trials for each of the approximately 8,000 class members who requested trials. Moreover, each class member would have had to prove by a preponderance of the evidence that: (1) they would have requested a reinstatement hearing and (2) that they would have secured reinstatement of their taxi license, if the Defendants had provided an adequate reinstatement hearing. *See* Dkt. 659-12 (Jury Verdict Sheet). They also would have needed to establish the amounts of damages they were entitled to receive. *Id.* While all ten Plaintiffs at the November 2023 bellwether trial were successful in proving their claims and damages, the fact remains that those ten class members were only ten out of the 20 initially selected by the Court, demonstrating a real risk that many class members would not ultimately participate in a damages hearing, despite having indicated willingness to do so. There is also a risk that different juries, looking at the specific facts and circumstances of particular individual class members' suspensions, would have reached different conclusions. Plaintiffs also faced risk of appeal, which could have threatened any verdicts and led to additional delays.

Moreover, for those class members who did not request an individual damages hearing before January 27, 2023, Defendants have argued that they may only recover nominal damages. See Dkt. 693. While the Court rejected this argument, in that it ruled they could pursue damages claims outside this case (Dkt. 720 at 17-18), it is one that Defendants could raise on appeal after

final judgment. Furthermore, regardless of the merit of that argument, there is substantial

uncertainty as to what is the tolled deadline for class members to file their own damages actions.

Plaintiffs and Class Counsel are unaware of any such actions being filed.  Thus, for those class

members who did not timely request an individual damages hearing in this case, there is a

significant risk that they would only receive nominal damages absent the settlement.

      In sum, after carefully considering these risks and the potential benefits of proceeding

further with this case, Plaintiffs' counsel concluded that the significant monetary relief obtained

here for taxi and for-hire drivers is in the best interests of the settlement class.

      **b.**      **The effectiveness of the proposed method of distributing relief**

      A plan for allocating settlement funds need not be perfect. <u>Rosenfeld</u>, 2021 WL 508339,

at *6.  Rather, it "need only have a reasonable, rational basis, particularly if recommended by

experienced and competent class counsel." <u>Id</u>. (internal quotations omitted).  For example, in

<u>Amigon</u>, 2024 WL 5040436, at *5, the Court found the proposed method for allocating funds,

which was based on the number of weeks each class member worked, to be reasonable.

      Here, each settlement class member will receive an individual settlement award based

upon the length of their suspension, whether they requested a hearing on the issue of damages,

and whether they reported the results of their criminal case to TLC.  Specifically, as outlined

above, each class member will be assigned to a group that correlates to the number of days they

were suspended, with each group being paid a particular amount. Ex. 1 (Settlement Agreement)

at ¶ 40. The proposed amounts for each group approximately correlate to how the jury awarded

damages to the plaintiffs at the November 2023 bellwether trial.  Furthermore, the parties have

agreed to a second distribution of 60% of any previously unclaimed funds between $250,000 and

$22.5 million on a similar *pro rata* basis with a cap of an additional thirty-five percent (35%) of

the original Settlement Award per person). Thus, there is a reasonable and rational basis for the parties' proposed method of distributing the settlement amount.

### c.    The terms of proposed attorneys' fees

In assessing whether the settlement is adequate, the court must also consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). At final approval, or in a separate motion should the Court so require, Class Counsel will seek attorneys' fees equaling no more than 25 percent of the settlement amounts claimed by Settlement Class Members. Ex. 1 (Settlement Agreement) at ¶ 48.  Defendants reserve the right to oppose the amount of Class Counsel's requested attorneys' fees, expenses, and costs.

### d.    Other Agreements by the parties

Rule 23(e)(3)(C)(iv) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the accompanying Settlement Agreement is the only agreement connected to this settlement.

### 4.    The proposal treats class members equitably relative to each other

Rule 23(e)(2)(D) requires courts to determine whether the settlement "proposal treats class members equitably relative to each other." In doing so, a court may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Rosenfeld, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23(e) Advisory Committee Notes to 2018 Amendments).

Here, the individual settlement awards will be apportioned on a *pro rata* basis based on the length of a Settlement Class Member's suspension whether they timely requested an

individual damages hearing, and whether they reported the results of their criminal case to TLC. By doing so, the Agreement seeks to fairly compensate those Settlement Class Members based on the relative value of their respective claims. As such, it is an equitable distribution plan. Amigon, 2024 WL 5040436, at*6 (*pro rata* distribution based on rate of pay and the number of weeks worked was equitable); In re Payment Card, 330 F.R.D. at 47 (finding that a *pro rata* distribution was sufficiently equitable).

Rule 23(e)(2)(D) also requires the Court to consider proposed incentive awards. As the Second Circuit reaffirmed in Moses, 79 F.4th at 253-56, incentive awards are permitted. The purpose of an incentive award is to "encourage class representatives to participate in class lawsuits," which benefit other individuals who have suffered the same harm. Id. at 253. Moreover, incentive awards "often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement." Id.

Here, in addition to their Individual Settlement Amounts, the agreement provides for the Named Plaintiffs and Trial Plaintiffs to receive an additional $15,000 each as Incentive Awards.[4] The Incentive Awards are justified because the Named Plaintiffs initiated this action (and by doing so lent their names to the action), engaged in discovery, and otherwise assisted Class Counsel throughout the litigation. Similarly, the Trial Plaintiffs' efforts benefited the class. Specifically, the Trial Plaintiffs were the only class members who were required to move forward with individual damages hearings. Their efforts preparing for and participating in the November 2023 bellwether trial significantly impacted the outcome of the trial, which in turn

---

[4] The Trial Plaintiffs will only receive an Incentive Award if they do not opt out of the settlement. If a Trial Plaintiff opts out of the settlement, he will receive the amount awarded to him by the jury but will not be eligible for an Incentive Award.

heavily influenced the final settlement.  Moreover, the requested amounts are within the range of awards that are regularly approved. See, e.g., Cruz Guerrero v. Montefiore Health Sys., Inc., 2025 WL 100889, at *11 (approving incentive awards for $15,000 and $10,000); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive payments of $30,000, $15,000, and $7,500 in class action settlement); In re Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour case); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec.21, 2010) aff'd, 519 F. App'x 1 (2d Cir.2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs).  As such, the requested incentive awards are also equitable.

### 5.    The settlement is reasonable under the remaining Grinnell factors

The court also must review the reasonableness of the settlement in light of the remaining Grinnell factors not covered by Fed. R. Civ. P. 23(e)(2). Soler, 2023 WL 2492977, at *5. Specifically, the court should analyze the ability of Defendants to withstand a greater judgment, and the range of reasonableness in the settlement amount.  Id.; Rosenfeld, 2021 WL 508339, at *7-8.  Here, neither factor is an obstacle to approving the settlement.

First, while the City of New York may be able to withstand a greater judgment, this fact does not render the settlement inadequate.  See Grottano v. City of New York, 2021 WL 5563990, at *6 (S.D.N.Y Nov. 29, 2021). Rather, this factor is neutral. See Stinson v. City of New York, 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017) (finding the City of New York's ability to withstand a greater settlement to be neutral in analyzing the reasonableness of a $75 million settlement).

Second, "in considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." <u>Rosenfeld</u>, 2021 WL 508339, at *8 (internal quotations omitted).  Assuming that each class member who requested an individual damages hearing was awarded the average amount awarded to the Trial Plaintiffs (i.e., $18,950), the total amount to be recovered through further litigation would be $156,394,350 ($18,950 x 8,253 Requesting Class Members who have not had their damages hearing yet), not including interest and/or attorneys' fees.  However, based on the November 2023 bellwether trial, where ten of the twenty randomly chosen class members did not proceed to trial, it is fair to assume that not every class member who previously requested a damages hearing would go forward if given the chance.  (<u>See</u> Dkt. 679.)  Instead, some would be awarded nominal damages. <u>Id.</u>  Likewise, unless they file their own complaint in a separate action[5], as things stand, the 11,256 class members who did not request a damages trial would be awarded nominal damages.

In sum, the Settlement Amount is an excellent result for the class.  It represents approximately 90% of what class members who previously requested a damages hearing would have recovered in damages, if they went forward to hearing and obtained the average recovery of the ten Trial Plaintiffs.  In addition, class members who did not previously request a damages hearing will also have an opportunity to participate in the settlement (albeit at 37.5% of the sum they could have recovered had they requested a damages hearing).  This recovery, however, will be significant for those class members, since their chances now of obtaining any recovery are limited.  Under the agreement, class members who submit claims may also be able to recover more than these amounts, should the settlement amount not be fully claimed.

---

[5]     Class Counsel are currently unaware of any class member pursuing damages through a separate action.

Clearly, the settlement falls within the range of reasonable outcomes and should receive preliminary approval.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted. Plaintiffs request that the Court allow the Claims Administrator to proceed to issue class notice and schedule the case for a final settlement approval hearing in June 2025.

Dated: March 14, 2025

Respectfully submitted,

JONATHAN NNEBE et al, individually and on behalf of all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan
Bradley Manewith
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
sliss@llrlaw.com
bmanewith@llrlaw.com

Daniel L. Ackman
LAW OFFICE OF DANIEL L. ACKMAN
28 Liberty Street, 6th Floor
New York, NY 10005
Tel: (917) 282-8178
d.ackman@comcast.net

David T. Goldberg
DONAHUE & GOLDBERG, L.L.P.
240 Kent Ave.
Brooklyn, NY 11249
Tel. (212) 334-8813
david@donahuegoldberg.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of the foregoing document was served on all counsel of record for the Defendants in this matter by ECF electronic filing on March 14, 2025.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan