UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN NNEBE, *et al.*,

Plaintiffs,

-v-

MATTHEW DAUS, *et al.*,

Defendants.

No. 06-cv-4991 (RJS)

MEMORANDUM
AND
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is Plaintiffs' unopposed motion for (1) the preliminary approval of the

proposed class settlement, (2) the issuance of notices to the proposed settlement class, and (3) the

scheduling of a settlement fairness hearing.  (*See* Doc. No. 740 ("Mot.") at 1.)  For the following

reasons, Plaintiffs' motion is GRANTED.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and history of this case, which

have been described at length in prior orders both by this Court and the United States Court of

Appeals for the Second Circuit.  *See, e.g.*, *Nnebe v. Daus*, 665 F. Supp. 2d 311, 315–19 (S.D.N.Y.

2009) ("*Nnebe I*"); *Nnebe v. Daus*, No. 06-cv-4991 (RJS), 2014 WL 3891343, at *2–12 (S.D.N.Y.

Aug. 8, 2014) ("*Nnebe II*"); *Nnebe v. Daus*, 184 F. Supp. 3d 54, 57–61 (S.D.N.Y. 2016) ("*Nnebe

III*"); *Nnebe v. Daus*, 510 F. Supp. 3d 179, 184−88 (S.D.N.Y. 2020) ("*Nnebe IV*"); *Nnebe v. Daus*,

No. 06-cv-4991 (RJS), 2022 WL 615039, at *1–4 (S.D.N.Y. Mar. 1, 2022) ("*Nnebe V*"); *see also*

*Nnebe v. Daus*, 644 F.3d 147, 150−55 (2d Cir. 2011) ("*Nnebe 2011 Appeal*"); *Nnebe v. Daus*, 931

F.3d 66, 70−79 (2d Cir. 2019) ("*Nnebe 2019 Appeal*"); *Nnebe v. Daus*, No. 21-173, 2022 WL

1220204, at *1 (2d Cir. Apr. 26, 2022) ("*Nnebe 2022 Appeal*").

This case involves claims brought by plaintiffs Jonathan Nnebe, Eduardo Avenaut, Khairul Amin, Anthony Stallworth, Parichay Barman, and Noor Tani (the "Named Plaintiffs"), and the New York Taxi Workers Alliance (together with the Named Plaintiffs, "Plaintiffs") against defendants Matthew Daus, Charles Fraser, Joseph Eckstein, Elizabeth Bonina, the New York City Taxi and Limousine Commission (the "TLC"), and the City of New York (together, "Defendants") challenging the prior policy of the TLC to summarily suspend drivers who were arrested for certain crimes. *See Nnebe V*, 2022 WL 615039, at *1–2. The Second Circuit determined in 2019 that the TLC's summary-suspension policy violated the drivers' due-process rights by failing to provide adequate notice and reinstatement hearing procedures for drivers to challenge the basis of their summary suspensions. *See id.* at *2. On remand, Plaintiffs moved to certify a class of all TLC-licensed drivers who were suspended under the TLC policy between June 28, 2003 and the present, but Plaintiffs did not dispute that the proper end date was February 18, 2020, which is when the TLC began sending constitutionally adequate notices to suspended drivers in line with the Second Circuit's 2019 mandate. *See id.* at *13. In March 2022, the Court granted that motion in part and certified a class as to liability, but not damages, pursuant to Federal Rule of Civil Procedure 23(b)(3) and (c)(4). *See id.* at *6–12.

Following certification of the liability class, the Court held a bellwether trial in November 2023 at which ten of twenty randomly selected class members appeared. The jury delivered verdicts in favor of all ten plaintiffs (the "Trial Plaintiffs") and awarded individual damages awards ranging from $4,500 to $42,500, for an average amount of $18,950, to compensate for lost earnings and emotional distress stemming from the suspension of each plaintiff's license. (*See* Doc. No. 656-19.) The Court reduced the verdict to judgment on December 22, 2023. (*See* Doc. No. 679.)

2

The Court also entered judgment with respect to the ten absent class members who declined to appear at the damages trial, awarding $1 in nominal damages to each.  (*See id.*)

After the Court denied Defendants' post-trial motions, the parties engaged in extensive settlement talks.  The parties have now reached an agreement to settle the case pursuant to the terms set forth in Exhibit 1 to the declaration of Shannon Liss-Riordan in support of Plaintiffs' motion (the "Settlement Agreement").  (*See* Doc. No. 741-1.)  In brief, the Settlement Agreement would require settlement class members and the Plaintiffs to release Defendants from "all liability, claims, or rights of action . . . which arise[] from the acts or omissions complained of in th[is] Action."  (*Id.* ¶ 30.)  In return, Defendants will pay a total settlement amount of $140,000,000 "inclusive of awards to Class Members, Attorneys' Fees, Expenses, and Costs, including but not limited to the costs of a Claims Administrator."  (*Id.* ¶ 24.)  Individual awards would be determined based on the number of days a settlement class member's license was suspended and whether the class member requested a reinstatement hearing, as follows:

|  | Number of Class Members (estimated) | Per Person Initial Distribution Cap (prior to deductions for attorneys' fees, expenses, and costs) |
| --- | --- | --- |
| Suspended for **25** days or fewer | 1,462 | $700 |
| **26-31** total days suspended | 243 | $750 |
| **32 to 60** total days suspended | 895 | $21,000 |
| **61 to 90** total days suspended | 695 | $24,000 |
| **91 to 120** total days suspended | 926 | $27,000 |
| **121 to 210** total days suspended | 1,212 | $30,000 |

3

| | | |
|---|---|---|
| **211 to 390** total days suspended | 870 | $33,000 |
| Suspended for **391 days or more** | 711 | $36,000 |
| No Suspension End Date | 1,239 | $17,000 |
| Did not request hearing | 11,256 | 37.5% of amounts distributed in accordance with the above categories |

(*Id.* ¶ 40.)

## DISCUSSION

Proposed class settlements are governed by Federal Rule of Civil Procedure 23(e), which proscribes a two-step process for district courts to follow. The Court must first determine that "giving notice" "to all class members who would be bound by the proposal" "is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). If the Court grants preliminary approval, the Court must provide the class with notice of, among other things, (1) the proposed settlement and (2) the date and time of a hearing at which class members and the settling parties may be heard regarding whether the Court should grant its final approval. *See* Fed. R. Civ. P. 23(c)(2).

"Even at the preliminary approval stage," and even when the motion is unopposed as it is here, "the Court's role in reviewing the proposed settlement is demanding because the adversariness of the litigation is often lost after the agreement to settle." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (internal quotation marks omitted). Nevertheless, the Court must "remain mindful . . . of the strong judicial policy in favor of settlements,

particularly in the class action context." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019).

## I.    Preliminary Approval of Settlement Agreement

The Court begins by considering, first, whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Although courts previously made a preliminary evaluation of whether the settlement appeared to be "fair, adequate, and reasonable, and not a product of collusion," *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000), Rule 23(e)(2) was amended to set forth four more specific criteria that courts must consider before preliminarily approving a settlement:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[] . . . ; and (D) the proposal treats class members equitably relative to one another.

Fed. R. Civ. P. 23(e)(2). The Advisory Committee Notes to the 2018 Amendment explain that these four factors are intended to supplement, rather than "displace," the nine factors previously identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which include:

> (1) the complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted) (the "*Grinnell* factors"). Accordingly, the Court considers the four factors specified in Rule 23(e)(2), followed by any remaining *Grinnell* factors to the extent applicable.

## 1.  Adequacy of Representation

In considering the adequacy of representation, courts typically ask "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted). Here, the Court concludes that the Named Plaintiffs and Plaintiffs' counsel have adequately represented the class.

First, the Court previously found that the Named Plaintiffs would adequately represent the class with respect to liability, *see Nnebe V*, 2022 WL 615039, at *11–12, and there are no apparent conflicts of interest between Named Plaintiffs and members of the liability class with respect to the proposed settlement.  True, the Court previously concluded that individual damages questions precluded designation of a damages class. *See id.* at *9.  But both the Named Plaintiffs and other class members now share an interest in obtaining an "immediate payment" from the settlement fund to compensate them for injuries that occurred many years ago. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268–69 (2d Cir. 2006) (considering potential conflict of interest between class members who "know the full extent of their loss" and those who did not).  Consequently, for purposes of preliminary approval, the Court is satisfied that the Named Plaintiffs' interests do not conflict with the interests of other class members.

Second, for the reasons stated in its March 2022 class-certification ruling, the Court finds that Plaintiffs' counsel – Daniel Ackman, David Goldberg, Shannon Liss-Riordan and, appearing in October 2023, Bradley Manewith – are all experienced class-action attorneys who have ably represented the class throughout this litigation and have now obtained jury verdicts in favor of the Trial Plaintiffs. *See Nnebe V*, 2022 WL 615039, at *12.  Two of these attorneys, Ackman and

Goldberg, have been involved with this case from the filing of the complaint and the first appeal, respectively. (*See* Doc. No. 1 at 12; Doc. No. 158.) Accordingly, the Court has little difficulty finding that this factor weighs in favor of preliminary approval.

### 2. *Arms' Length Negotiations*

The Court next looks to the "arms-length quality of the [settlement] negotiations" and finds that this factor supports preliminary approval. *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). The Court re-referred this case to Magistrate Judge Ona B. Wang for settlement purposes after the November 2023 trial, and Magistrate Judge Wang held multiple settlement calls with counsel throughout 2024. (*See, e.g.*, Doc. Nos. 686, 689, 716, 727, 732.) Plaintiffs also attest that the parties had four sessions with a private mediator, Stephen Sonnenberg. (*See* Mot. at 4.) The use of these two experienced and neutral mediators, over roughly one year, weighs in favor of preliminary approval. *See Soler v. Fresh Direct, LLC*, No. 20-cv-3431 (AT), 2023 WL 2492977, at *3 (S.D.N.Y. Mar. 14, 2023) (granting preliminary approval when "[t]he parties engaged in three full-day mediations, over the course of five months" with Stephen Sonnenberg, "an experienced and respected mediator"). While Plaintiffs' motion also references "extensive direct negotiations" (Mot. at 5), there is no sign of any fraud or collusion infecting the mediations. Accordingly, this factor weighs in favor of preliminary approval.

### 3. *Adequacy of Relief*

In determining whether the relief provided for the class in the proposed settlement is adequate, Rule 23(e)(2) specifies that courts must "tak[e] into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

identified under Rule 23(e)(3)," which does not apply here.  Fed. R. Civ. P. 23(e)(2)(C).  The remaining three factors, taken together, counsel in favor of preliminarily approving the Settlement Agreement.

The first consideration clearly weighs in favor of preliminary approval given the amount of time and resources it would take to complete damages trials for the nearly 8,000 class members who requested them.  (*See* Mot. at 16.)  The bellwether trials held in November 2023 occurred over the course of about two days and involved only the ten Trial Plaintiffs.  If the Court were to hold trials at a rate of five plaintiffs per day, it would take around 1,600 business days, or roughly six years, to complete damages trials, at the exclusion of other matters pending before the Court. Pursuing a litigated outcome would also involve risks because each plaintiff would be required to prove to the jury "by a preponderance of the evidence that he would have requested a reinstatement hearing and that he would have secured reinstatement of his taxi license, if the Defendants had provided an adequate reinstatement hearing," which could be difficult given the passage of time and the counterfactuals involved.  (Doc. No. 656-19 at 1 (emphasis omitted).)

As for the second factor, an effective method of distributing relief to a settlement class is one that generally "facilitates filing legitimate claims" and "deter[s] or defeat[s] unjustified claims" without being "unduly demanding."  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Here, the Settlement Agreement pre-identifies an award amount based on whether the driver requested a reinstatement hearing and, if so, the number of days the driver's TLC license was suspended; if the driver did not request a reinstatement hearing, he will receive a percentage of the amount distributed to those who did.  (*See* Doc. No. 741-1 ¶ 40.)  These categories generally track what a jury would be required to find at a trial before awarding individual damages and create a straightforward method that would ensure the "timely distribution

of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). The parties have also selected an experienced claims administrator, Simpluris, and provided a method through which any class member may dispute the category they fall into. (*See* Mot. at 7; Doc. No. 741-1 ¶ 40.) In addition, the Settlement Agreement provides that a second round of distribution may take place to disburse unclaimed funds to class members who timely submitted claims, thereby incentivizing the filing of claims. (*See* Mot. at 8.) In short, the proposed method certainly appears to be adequate.

Finally, with regards to the third factor, counsel for Plaintiffs represent that they "will seek attorneys' fees equaling no more than 25 percent of the settlement amounts claimed by Settlement Class Members," and Defendants have expressly reserved the right to object. (*See* Mot. at 18.) The Court will review, at a later time, Plaintiffs' fully briefed request for attorneys' fees and the necessary supporting documentation, which may be submitted as part of the anticipated motion for final approval of the settlement. Accordingly, "[g]iven that the terms of the [fee] award" have not yet been formally proposed and "are specifically reserved to the [C]ourt's discretion," the Court finds that "they pose no obstacle to preliminary approval." *Rosenfeld v. Lenich*, No. 18-cv-6720 (NGG) (PK), 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021). On the whole, the relief provided for in the Settlement Agreement appears to be adequate, which thus weighs in favor of preliminary approval.

### 4. Equitable Treatment

Turning to the final factor under Rule 23(e)(2), the Court must consider whether "the [settlement] proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In assessing this factor, courts ask whether the proposed settlement "takes appropriate

account of differences among [class members'] claims, and whether the scope of the release affect[s] class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

As described above, the Settlement Agreement uses two key metrics to determine each class member's award:  the amount of time a driver's TLC license was suspended and whether the driver requested a post-suspension reinstatement hearing.  If the driver requested a hearing, there are nine different subcategories based on the number of days the license was suspended; each category corresponds with a different damages amount intended to reflect the lost-earnings and emotional-distress damages awarded at the bellwether trials.  (*See* Doc. No. 741-1 ¶ 40.)  The ninth category, "No Suspension End Date," appears intended to prevent drivers who never reported the outcome of their criminal cases from obtaining a windfall relative to drivers who had their licenses suspended for 32 days or more.  (*See generally* Mot. at 18–19.)  Moreover, by apportioning the settlement funds on a *pro rata* basis, the proposal "fairly accounts for the key point of differentiation among class members' claims" and generally correlates to the relative value of each of their claims.  *Rosenfeld*, 2021 WL 508339, at *7.

That being said, Plaintiffs' motion does not explain in detail how the parties selected the first eight categories, such as why a driver whose license was suspended for 31 days would be entitled to only $750, while a driver whose license was suspended for 32 days would be entitled to $21,000.  (*See* Doc. No. 741-1 ¶ 40.)  The Court recognizes that "[i]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision," *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *9 (internal quotation marks omitted), and therefore determines that at this stage, these outstanding

questions are not reason enough to delay preliminary approval of the settlement. Nevertheless, the Court expects clarification on these points at the forthcoming fairness hearing.

Next, the Second Circuit has directed district courts to consider any proposed incentive awards as part of the equity determinations under Rule 23(e)(2)(D) to "ensure that such incentive payments will not result in unfair settlements." *See Moses*, 79 F.4th at 244. In particular, courts consider "the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting the prosecution of the litigation or in bringing to bear added value (*e.g.*, factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim and of course, the ultimate recovery." *Ayers v. SGS Control Servs., Inc.*, No. 03-cv-9078(RMB), 2008 WL 4185813, at *6 (S.D.N.Y. Sept. 9, 2008) (internal quotation marks omitted).

Here, the Settlement Agreement provides for incentive payments of $15,000 to the Named Plaintiffs and ten Trial Plaintiffs in addition to each plaintiff's respective settlement award. (*See* Doc. No. 741-1 ¶¶ 49, 63.) Together, these incentive payments represent only a tiny fraction of the $140 million settlement fund. On their face, the payments do not appear to be "excessive compared to the service provided by the" Named Plaintiffs and Trial Plaintiffs and thus do not weigh against preliminary approval. *Moses*, 79 F.4th at 245; *see also Cruz Guerrero v. Montefiore Health Sys., Inc.*, No. 22-cv-9194 (KHP), 2025 WL 100889, at *11 (S.D.N.Y. Jan. 15, 2025) (approving incentive awards of $15,000 and $10,000 from a $1.8 million settlement fund).

Before final approval, however, the Court will need to learn more about how the Named Plaintiffs "provid[ed] the background information that forms the basis of the lawsuit, engag[ed] in fact discovery, and devot[ed] considerable time and effort into the settlement process" to ensure the Named Plaintiffs "played an active role in the litigation." *Moses*, 79 F.4th at 245 (internal

11

quotation marks omitted); *see also Ayers*, 2008 WL 4185813, at *6 (declining to award incentive payment absent "specific evidence of [any] purported risk's magnitude" or "personal difficulties of consequence" (internal quotation marks omitted)). The Court observed firsthand the benefits that the ten Trial Plaintiffs provided. But Plaintiffs' motion only states that the Named Plaintiffs "lent their names to the action[], engaged in discovery, and otherwise assisted [c]lass [c]ounsel throughout the litigation" (Mot. at 19), even though the Court previously cautioned at the class-certification stage that "Plaintiffs have failed to proffer any allegation or evidence that the class representatives remain informed of the litigation or have any [continued] interest" in the case, *see Nnebe V*, 2022 WL 615039, at *11.

    5. *Remaining* Grinnell *Factors*

Finally, the Court considers the remaining *Grinnell* factors to the extent applicable "to fill in any gaps and complete the analysis" required for preliminary approval. *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-cv-456 (RPK) (LB), 2021 WL 7906584, at *5 (E.D.N.Y. May 25, 2021). Here, those factors are "[(1)] the stage of the proceedings and the amount of discovery completed, [(2)] the ability of the defendants to withstand a greater judgment, [(3)] the range of the settlement fund in light of the best possible recovery, and [(4)] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Amigon v. Safeway Constr. Enters., LLC*, No. 20-cv-5222 (PK), 2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024); *see also id.* (explaining that "the class's reaction to the proposed settlement" is not an applicable *Grinnell* factor at this stage).

Given the extensive procedural history in this case, the first factor clearly weighs in favor of preliminarily approving a settlement and affording relief. As the parties are aware, extensive

discovery has been completed, along with two motions for summary judgment, three trips to the Second Circuit, and a bellwether trial in 2023. (*See* Mot. at 2.)

Turning to the ability of Defendants to withstand a greater judgment, the proposed settlement amount of $140 million is significant. While the City of New York may theoretically be able to pay a higher amount, the Court is not privy to that information and no defendant, including the City (and its taxpayers), is "required to empty its coffers before a settlement can be found adequate." *Grottano v. City of New York*, No. 15-cv-9242 (RMB), 2021 WL 5563990, at *6 (S.D.N.Y. Nov. 29, 2021) (internal quotation marks omitted). Other courts considering the City of New York's ability to pay a higher sum have found this factor to be neutral, even for far lower settlement amounts. *See id.* (approving $12.5 million settlement with City of New York); *Stinson v. City of New York*, 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017) (approving $75 million settlement with City of New York). Accordingly, this factor does not weigh against preliminary approval.

Lastly, the Court's consideration of the best possible recovery for Plaintiffs, considered in light of the attendant risks of litigation, weighs in favor of preliminary approval. The bellwether trials resulted in an average jury verdict of $18,950; assuming that all remaining 8,253 class members who requested a damages hearing received a comparable outcome at trial, the total award would be approximately $156 million. (*See* Mot. at 21.) The parties' agreement to a total settlement amount just below that number, at $140 million, is eminently reasonable considering the time and resources that would be expended by both sides should all class members proceed with further litigation. In addition, the proposed settlement allows for members who did not request a damages trial to recover more than just nominal damages, thereby increasing their possible recovery. (*See id.*) Accordingly, the remaining *Grinnell* factors are either neutral, or weigh in favor of, preliminary approval.

13

*       *       *

For all these reasons, the Court finds pursuant to Federal Rule of Civil Procedure 23(e)(1)(B) that, upon considering the four factors identified in Rule 23(e)(2) and the applicable *Grinnell* factors, the Court "will likely be able to[] (i) approve the proposal."

## II.    Conditional Certification of Settlement Class

Next, the Court must consider whether it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Courts often conditionally certify classes for settlement purposes at the time they consider preliminary approval of a settlement, deferring final certification of the class until after a fairness hearing. *See Reyes v. Summit Health Mgmt., LLC*, No. 22-cv-9916 (VSB), 2024 WL 472841, at *2 (S.D.N.Y. Feb. 6, 2024); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 269–70 (2d Cir. 2006) (finding no abuse of discretion in common practice of conditionally certifying a class for settlement purposes only). Indeed, conditional certification serves several purposes, such as "avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time for the final approval hearing." *Almonte v. Marina Ice Cream Corp.*, No. 16-cv-660 (GBD), 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ("It is common to send notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B)."). Accordingly, though Plaintiffs' motion makes no distinction between conditional and final class certification, the Court finds it appropriate to defer final certification of the settlement class until after final approval of the settlement. (*See* Mot. at 10 (arguing only that "Certification of the Settlement Class is Appropriate").)

14

The four well-known requirements for class certification under Rule 23(a), which a party seeking certification must establish by a preponderance of the evidence, *see Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008), are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If these four requirements are met, the Court must also find that the proposed class falls into one of the three categories identified in Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that the Court find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This is commonly referred to as the "predominance" requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Plaintiffs seek approval of a settlement class that is identical to the class already certified for liability purposes: "all TLC-licensed drivers whose licenses were suspended by the TLC based on the driver having been arrested on a criminal charge any time between June 28, 2003, until February 18, 2020." (Mot. at 5 (internal quotation marks omitted).) Plaintiffs also specify that the proposed settlement class would exclude all persons who timely opt out as well as the twelve individuals who already opted out of the liability class. (*See id.*) There are approximately 19,500 members of the proposed settlement class. (*See id.*)

The Court adheres to its prior ruling that the proposed class satisfies the four requirements of Rule 23(a) by a preponderance of the evidence with respect to liability. *Nnebe V*, 2022 WL

615039, at *12.  The Court previously denied class certification with respect to damages after finding that Rule 23(b)(3) was not satisfied because individual issues would predominate over the common ones.  *See id.* at *9.  But these concerns are often ameliorated in the settlement context. As the Second Circuit has explained, "[i]n the context of a settlement class, concerns about whether individual issues would create intractable management problems at trial drop out of the predominance analysis because the proposal is that there be no trial."  *In re Am. Int'l. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted).  Applying that logic here, the Court finds that predominance no longer presents an obstacle to certification of a settlement class.

Accordingly, the Court conditionally certifies the proposed class for purposes of settlement only, pending final certification upon approval of the Settlement Agreement, and appoints Plaintiffs' counsel as class counsel and the Named Plaintiffs as class representatives.

## III.    Notice to Settlement Class Members

The Court now turns to the question of whether the proposed notice to the settlement class members is adequate.  As a general matter, "[d]ue process requires that the notice . . . fairly apprise the members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Maywalt v. Parker & Parsley Petrol. Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (alterations accepted and internal quotation marks omitted).  Because "the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement and dismissal)," and courts need only refer to Rule 23(c)'s more stringent requirements.  *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004).

Rule 23(c)(2)(B) specifies the following with regard to the *method* of providing notice:

> upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)[, ]the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). As for the notice itself, Rule 23(c)(2)(B) further provides that:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Court finds that the method of distributing notice and reminders to the class set forth in the Settlement Agreement, through first-class mail with an enclosed prepaid return envelope as well as the use of email and text message (to the extent available) and the creation of a website (*see* Mot. at 7), is the best notice practicable under the circumstances to fairly apprise class members of the proposed settlement and of their right to object at the fairness hearing. *See Soler*, 2023 WL 2492977, at *7 (finding that use of mail and text message, creation of a website, sending of reminders, and attempts to correct addresses on returned mail was "a reasonable method calculated to reach all class members").

Upon careful review of the proposed class notice and claim form itself, however, the Court has two primary concerns: (1) in some areas, the notice includes language that may create the false impression that the settlement is final; and (2) the notice arguably obscures information about the right to object to or opt out of the settlement. Accordingly, the Court has revised the notice and claim form and attaches as Exhibits 1 and 2 to this Memorandum and Order a redline and final

approved version for dissemination to the settlement class. Otherwise, the Court finds that the notice provides all pertinent information in a plain and concise manner in accordance with Rule 23(c)(2)(B).

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion is GRANTED. IT IS HEREBY ORDERED THAT the approved class notice and claim form shall be issued to the conditionally certified settlement class within fourteen days of this Memorandum and Order. The Court will hold a fairness hearing on Wednesday, August 13, 2025 at 10 a.m. in Courtroom 21C at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. The parties shall submit a motion for final approval of the Settlement Agreement, attaching all written objections received as exhibits and including Plaintiffs' requested attorneys' fees, by Wednesday, July 23, 2025. The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 740.

SO ORDERED.

Dated:   May 7, 2025
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation