

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**AMY J. WEINBLATT**
*Senior Counsel*
(212) 356-2179
aweinbla@law.nyc.gov

September 26, 2025

By ECF
Hon. Richard J. Sullivan
U.S. District Court, Southern District of New York (sitting by designation)
500 Pearl Street
New York, New York 10007

      Re:     Nnebe v. Daus, 06-CV-4991

Dear Judge Sullivan:

      We write as directed to respond to Class Counsels' incomplete submission of required contemporaneous time records in support of their fee application. Contemporaneous time records are required, not optional, yet Shannon Liss-Riordan, Bradley Manewith, Mel Gonzalez, and Zachary Rubin (all attorneys at Liss-Riordan's firm) did not submit *any* time records in support of their fees application. See, e.g., Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) ("the fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs") (citation omitted).

      Records that were submitted by David Goldberg and Dan Ackman contain improper block billing and reflect overstaffing (both at trial and by billing delegable tasks at partner rates) and excessive hours. See, e.g., Goldberg's time records at March 1, 7, 8, and 9 and August 9 and 10 of 2025 (Dkt 757 at 32 et seq.), where research could have been conducted by an attorney at a junior associate level and Ackman's time records at August 13, 16, 20, September 14, October 1, 15, November 21, 26, 27, and December 2, 4, 15, 16, 17, and 28 of 2019 for examples of block billing and entries on December 2, 2019; September 7, 2020; and January 13, 2021 for examples of duplicate entries/double billing. Dkt. 756-1. There was no need for four attorneys to attend the full trial, particularly when two of them charge $800 and $950 per hour. All these factors warrant significant reductions of plaintiffs' requested fees. See, e.g., H.C. v. New York City Dep't of Educ., 71 F.4th 120, 126 (2d Cir. 2023) ("In determining the first component of the lodestar—the number of hours reasonably expended—the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.' ... But the district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application'" (citations omitted)); Simmonds v. N.Y.C. Dep't of Corr., 2008 WL 4303474, 2008 U.S. Dist. LEXIS 74539 at *24 (S.D.N.Y. 2008) (reducing hours in fee request by forty percent); Daiwa Special Asset Corp. v. Desnick, 2002 U.S. Dist. LEXIS 23073, at *11-13, 2002 WL 31767817, at *13 (reducing requested fees and costs by half ). And Liss-Riordan's and

Manewith's applications improperly include charges for their travel expenses[1] as out-of-district counsel when New York City has no shortage of skilled class action lawyers. Pasini v. Godiva Chocolatier, 764 Fed. Appx. 94, 96 (2d Cir. 2019) ("under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time [and] travel costs" (citations and internal quotations omitted)).

Class Counsel also presented an incorrect "summary" of lodestar uncorrected by the recent submissions. Dkt. 747-3 at 19. Lodestar is the total number of hours reasonably spent by attorneys and other qualified staff multiplied by their reasonable rates (Interim Fees Order, Dkt. 533, at 5), and does not include costs or expenses. The necessary reasonableness determinations cannot be performed absent an evaluation of the underlying documentation. However, here Class Counsel proffer a lodestar for Liss-Riordan's firm of $1,837,057.57 that is unaccompanied by any contemporaneous time records for any attorney or paralegal and improperly includes claims of expenses ($207,541) and of costs that Class Counsel chose to pay on behalf of New York Taxi Workers Alliance ("NYTWA") ($181,265). The requested fee for paralegal staff ($670,500), is devoid of the paralegals' identities, credentials, experience, and time spent on any particular tasks. Dkt. 747-3. The recent submissions do not correct these flaws. See Dkts. 756-758. This is not a basis upon which the Court can calculate a presumptively reasonable fee.

The requested fees are inconsistent with the degree of success, as reflected in the time records. The settlement was informed by and based on the bellwether trial damages awards. While the Court opined and Defendants agree that the settlement is fair and reasonable, the amounts awarded by the jury were well below potential awards supported by Second Circuit case law. Each trial class member was awarded less in lost income damages than requested. More significantly, all awards for garden variety emotional distress fell short of what case law supports and what Class Counsel anticipated, as referenced both by Mr. Goldberg during the fairness hearing, see hearing transcript, Dkt. 759, at 105, and by Class Counsel during the trial. See Dkt. 661, 11/15/23 trial transcript, at 546-547 (Liss-Riordan citing decisions with garden-variety emotional distress damages between $30,000-$125,000). In decisions in this Circuit, over $100,000 is common for garden-variety emotional distress damages. See Lore v. City of Syracuse, 670 F.3d 127, 177 (2d Cir. 2012) ("This Court has ... affirmed awards of $125,000 each to plaintiffs for [garden variety] emotional distress..."). A decision cited by the Court during the trial referenced a range of $5,000 to $35,000 (citing Zapeda v. Half Time Bar and Grill Corp., 2023 WL 266504). Dkt. 661 at 545.

In contrast, five of the ten trial class members were awarded $500 or $1,000; three were awarded between $3,000 and $5,000; and two were awarded $7,500 and $10,000. See Dkt. 665. The average of $3,450 was well below potential awards for garden variety emotional distress damages. The fact that emotional distress damage awards were below potential was a primary reference point for settlement. But there is reason to think that class members could have fared as well or better in future damages trials. While Defendants likely would have overcome the obstacles they faced with entering Taxi and Limousine Commission ("TLC") records of actual earnings into evidence, Class Counsel likely would have prepared better and might have secured five- and six-figure jury verdicts for emotional distress. The relatively low emotional distress damages are

---

[1] Since Liss-Riordan and Manewith did not submit time records, it is impossible to determine whether the requested fees implicitly include time spent on travel and at what rate (typically travel would be billed at half the usual hourly rate).

consistent with the submitted time records, reflecting that Class Counsel spent approximately an hour before the trial researching this issue.[2]

So while the overall settlement figure is large, it bears repeating that there are 19,500 class members and the awards to individual class members were lower than they could have been. Thus the size of the settlement does not support the reasonableness of Class Counsel's fees request. The Second Circuit has cautioned that, "[e]specially in class actions, judges determining fee awards should not be unduly influenced by the monetary size of the class settlement or judgment; a large settlement can as much reflect the number of potential class members ... as it can indicate the prestige, skill, and vigor of the class's counsel." Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir. 1977). "[P]ercentage fees 'tended to yield too little for the client-class, and an unjustified 'golden harvest of fees' for the lawyer." McDaniel, 595 F.3d at 418 (citing Goldberger v. Integrated Res., 209 F.3d 43 (2d Cir. 2000), quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 468, 469 (2d Cir. 1974)). "Particularly in cases that result in a very large monetary award, the percentage method holds the potential to result in attorneys' fees many times greater than those that would have been earned under the lodestar ..." McDaniel, 595 F.3d at 418. See also Goldberger, 209 F.3d at 56; In re Citigroup Inc. Bond Litig., 988 F. Supp. 2d 371, 374 (S.D.N.Y. 2013) (citing Goldberger and noting "the Court's responsibility to avoid awarding plaintiffs' counsel a 'windfall' at the expense of the class—a special concern when 'the recovered fund runs into the multi-millions,'... In cases with exceptionally large common funds, courts often 'account[] for these economies of scale by awarding fees in the lower range.'") (citation omitted).[3] The McDaniel Court likewise noted its "longstanding concern for moderation" in the fees context, citing Goldberger, 209 F.3d at 53, 57, and the need for a "jealous regard to the rights of those who are interested in the fund." McDaniel, 595 F.3d at 426.

Additionally, had the undisclosed notice to class members asking whether they wanted an individual damages hearing simply urged class members to timely advise counsel of their interest in a hearing without conditioning it on relinquishing up to 33% of any damages, it is possible that the response rate—well under half of the class—would have been higher. The relatively low emotional distress damages, and the potentially reduced Class Member response, resulted in a poorer outcome and are inconsistent with the requested extraordinarily high fee award.

In addition, in considering an appropriate fee award, the Court should not consider the undisclosed agreement between Class Counsel and the 8,200 class members who requested a hearing to pay up to 33% of any damages award. See Ackman's July 23, 2025 declaration, Dkt. 747-4, at ¶ 21. First, Class Counsel should not be permitted to reference and rely on a document without producing it.[4] Second, Class Counsel appear to acknowledge that agreeing to this percentage was a condition precedent for timely requesting a damages hearing: "In addition, the form signed by class members requesting individual damages trials alerts the drivers that counsel would request as much as 33% of damages awards in attorneys' fees." Dkt. 747-4, at ¶ 21. And the submitted fees records reflect little time spent on this notice. See Dkts. 756 and 757.

---

[2] Ackman allegedly spent 0.7 hours researching emotional distress damages on May 1, 2025 and six (6) hours researching 12 topics, including this one, on December 7, 2022. See Dkt. 756. Goldberg did not conduct any research on this topic before the trial. See Dkt. 757.

[3] The Court must "'act as a fiduciary who must serve as a guardian of the rights of absent class members[.]'" McDaniel, 595 F.3d at 418 (quoting Grinnell Corp. II, 560 F.2d at 1099).

[4] The omitted document was the subject of Defendants' February 28, 2024 letter motion, which was denied on the same date. Dkts. 700-702.

Even if this document could be considered by the Court, it is not dispositive of the reasonable fee determination here; an agreement by a single plaintiff in a lawsuit to pay 33% or 25% of an individual recovery is generally not unusual or unreasonable,[5] but where there are thousands of agreements such that the aggregate would contribute to a total recovery of attorneys' fees of close to $35 million, the individual agreements become unreasonable. More importantly, an agreement does not supersede the Court's duty to determine a reasonable fee. In Hernandez v. Compass One, LLC, 2021 U.S. Dist. LEXIS 193461, 20-cv-7040 (S.D.N.Y. Oct. 6, 2021), the Court relied on Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), to hold that the Court is obligated to conduct a reasonableness analysis even where there is an agreement for fees between counsel and plaintiff.[6] The Court explained that "[t]he fee applicant must submit adequate documentation supporting the request ... the fact that there was a retainer in place in Fisher providing for counsel to be paid ... did not foreclose that court from directing that the allocation to counsel be independently reviewed for reasonableness." Hernandez, 2021 U.S. Dist. LEXIS 193461, at *8-9 (citing Fisher, 948 F.3d 593, where the Court remanded for a reasonableness evaluation); see also Vinegas v. Mitchell, 495 U.S. 82 (1990) (allowing contract for fee arrangement between plaintiff and attorney under 42 U.S.C. § 1988 to stand after reasonableness analysis had been performed by District and Circuit Courts).

Class Counsels' requested costs and expenses are also unreasonable and excessive. Even were travel expenses appropriate, their preference for first class travel and high end hotels should not be at the expense of Class Members or New York City taxpayers, and all expenses should be related to the case. For example, included in the exhibits is a receipt for $900 for airfare for Angie Urena and Chloe Gonzobay, neither of whom is a trial Class Member or witness. See Dkt. 758-4 at 10. Additional examples of unconscionable excess include a night in the Dominick Hotel in SoHo for Liss-Riordan on August 20-21, 2024, for $771.19, see Dkt. 758-7 at 38-39; a first-class one-way Amtrak ticket for an unidentified person from New York Penn Station to Providence, Rhode Island on October 10, 2024, for $571, see Dkt. 758-7 at 8[7]; a first-class flight for $1,200; and $148 for a Lyft ride.[8] These costs should not be deducted from Class Members' awards to provide luxuries to Class Counsel.

Moreover, the requested $28,922.98 for mediation, Dkts. 747-3 at ¶ 38 and 758-7 at 21-22, is improper; the Corporation Counsel's office agreed to undertake and pay half the costs for outside mediation only after Class Counsel agreed in phone calls and emails that Class Counsel would also bear half the costs and not bill for it later. See accompanying Declaration of Amy Weinblatt and email excerpts annexed thereto. Additionally, neither the City nor Class Members should pay for databases to which Class Counsel apparently has regular subscriptions, see Dkt 747-3, ¶ 38; Dkts. 758 at 2, 3, 5 (see, e.g., bill for $15,000.00 stating, "This reflects Lichten & Liss-Riordan's Leverage Services for the month of June 2025." Dkt. 758-5 at 2), and all travel and meal costs for out-of-district counsel should be denied.

Plaintiffs have also not proffered any basis for the implied argument that the interim fee award of $2.45 million for 13 years of work was insufficient or unreasonable; the analysis that

---

[5] See Goldberg Declaration, Dkt. 757, at 7.

[6] Hernandez and Fisher are Fair Labor Standards Act ("FLSA") cases, but since prevailing FLSA plaintiffs are entitled to reasonable fees, their holdings are analogous.

[7] At least one other travel receipt does not identify the traveler, see Dkt. 757-3 at 25, and it is unclear how many expenses are for individuals whose travel was unnecessary to the case.

[8] Liss-Riordan charged a flight at $1,200 and others at unreasonably high rates, flying first-class or the equivalent. See, e.g., Dkts. 684 at 57; 758-7 at 25; see also 758-7 at 4.

applied to that award is equally applicable at the conclusion of the case. See Interim Fees Order, Dkt. 533. The Court therein primarily reduced hours for attorneys who submitted time records by 15%; Defendants propose a 33.3% reduction here for those attorneys (Goldberg and Ackman) but 15% should be the minimum.

## Conclusion

Class Counsels' excessive fee application should be denied. Since contemporaneous time records are required and four attorneys and all paralegals failed to submit them, those submissions should be denied as the application is facially insufficient. If the Court is inclined to award these fees anyway, said fees should be awarded based on a lodestar or presumptively reasonable fees analysis, which would be $318,098.25 for Liss-Riordan's firm's attorneys and paralegals after reducing their hourly rates to those set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Third Motion for Attorneys' Fees and Costs, Dkt. 752, at 18 et seq., and then reducing the resulting total by two thirds for failure to submit required contemporaneous time records and overstaffing. See Dkt. 747-3, at 19. And $560,300 should be awarded to Goldberg (using a billing rate of $650 per hour) and $516,622.50 to Ackman (using a billing rate of $450 per hour) after reducing Goldberg's and Ackman's total claimed hours each by one third for improper block billing, billing delegable tasks at partner rates, overstaffing, and duplicate billing. If Goldberg's and Ackman's hours were instead reduced by 15% consistent with the Interim Fees Order, the totals would be $721,565 and $659,353.50, respectively.

The Court should also deduct all improper items from Class Counsel's application for costs and expenses. Class Counsel should not be awarded costs for mediation, costs for travel for counsel or for individuals who did not participate in the trial, any other costs for such individuals, or costs for subscription services. The Court should award $89,667.12 (the full amounts claimed for both Class Notice and the Campaign to Sign Up Drivers and half the claimed costs for November 2023 Bellwether trial, see Dkt. 747-3, ¶ 38), and deny all other costs and expenses listed therein and deny costs and expenses attributed to NYTWA, see Dkt. 747-3 at 19, since the submitted records do not support these claimed costs and expenses.[9]

Finally, no multiplier is warranted here. "Even in Goldberger, where counsel was praised by the district court as 'the cream of the profession' whose 'genius and dedication were vital ...' ... this Court upheld a fee award with no multiplier. 209 F.3d at 55-56." McDaniel, 595 F.3d at 424; Grottano v. City of New York, 15-CV-9242 (S.D.N.Y. July 15, 2022) (Berman, J.) (copy annexed as appendix to Defendants' Memorandum of Law, Dkt. 752-1). Should the Court use a multiplier, it should be consistent with other multipliers in cases against the City of New York. See, e.g., Stinson v. City of New York, 256 F. Supp. 3d 283, 296 (S.D.N.Y. 2017) (multiplier of 1.11 of the lodestar in civil rights class action); see also Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).

Respectfully,

/s/
Amy J. Weinblatt
Assistant Corporation Counsel

cc:  All counsel (by ECF)

---

[9] Defendants incorporate herein their opposition to Class Counsel's fee application, Dkt. 752.